UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

MARGARET M. BUCKLEY, CSJ, individually and on
behalf of all others similarly situated,  :

                                                  :

                             Plaintiff,  :  **CLASS ACTION**

                -against-  :  **COMPLAINT**

MARY T. BASSETT, M.D. as Commissioner of the New
Your State Department of Health, and DANIEL W.  :  Docket No:
TIETZ as Commissioner of the Office of Temporary
and Disability Assistance of the New York State  :
Department of Family Assistance,

                          Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff MARGARET M. BUCKLEY, CSJ, by her attorney, complains of defendants as follows:

### PRELIMINARY STATEMENT

    1. This is a class action for declaratory and injunctive relief brought against defendants as state Medical Assistance ("Medicaid") officials.

    2. Plaintiff is a Medicaid applicant who challenges defendant's policy and practice of failing to ensure that their local social services agencies provide applicants and recipients in immediate need of Medicaid and/or personal care services with adequate notice of their right to an expedited fair hearing and the time frames within which final administrative action must be taken.

    3. Plaintiff is also a Medicaid appellant, who requested an expedited fair hearing, but who has not received a final and definitive determination of her eligibility for Medicaid and personal care services by the seven business day deadline for defendants or their local social services agencies to take final

- 1 -

administrative action.

4. Plaintiff challenges the defendants' policies and practices of failing to render expedited fair hearing decisions, which conclusively determine appellants' Medicaid eligibility in a timely manner based a fully developed records, and of failing to ensure that their local social services agencies conclusively determine appellants' Medicaid eligibility in a timely manner when such matters are remanded by expedited fair hearing decisions.

5. Plaintiff brings this class action on behalf of herself and two proposed plaintiff classes.

6. The first proposed class consists of

All past, present and future Medicaid applicants and recipient in New York State

    (a) who were or will be in immediate need of Medicaid and/or personal care services, and

    (b) who were not or will not be provided at the time of their applications with notice of their right to an expedited hearing if their immediate need for Medicaid and/or personal care services is denied or not acted upon in a timely manner.

7. The second proposed class consists of:

All past, present and future Medicaid applicants and recipients in New York State

    (a) who requested or will request an expedited fair hearing to contest the denial or adequacy of Medicaid benefits, and

    (b) who participated or will participate directly or by representative in an expedited fair hearing during which the hearing officer has failed or will fail to develop complete records upon which to base final and definitive determinations of Medicaid eligibility, and

    (c) for whom "final administrative action" was not or will not be taken by the defendants or, on remand,

by their local agents within the three or seven business day deadline set forth in 42 C.F.R. §§ 431.244(a)(2) and 431.244(f)(2) and (3).

8. This action is closely related to *Lisnitzer v Zucker* wherein the Second Circuit concluded in the Medicaid context that "'final administrative action' must include a determination of entitlement to benefits. And, therefore, we conclude that such determination must be made within the mandated time."[1]

9. The *Lisnitzer* Judgment, 11-CV-4641, entered by this Court on May 4, 2021 and effective July 3, 2021,[2] requires, *inter alia*, that

The Judgment and Opinion of the Second Circuit shall apply to all Medicaid appellants whose fair hearings were pending on or after December 23, 2020, and whose Medicaid eligibility was not conclusively determined within 90 days of their fair hearing requests, exclusive of the authorized exceptions provided in 42 C.F.R. § 431.244.[3]

10. The *Lisnitzer* Judgment did not address defendants' obligation to provide written notice of the circumstances under which Medicaid applicants and recipients would be entitled to an expedited fair hearing or to final administrative action within the three and seven business day deadlines for expedited fair hearings involving the denial or adequacy of Medicaid benefits, supplies or services.

11. Plaintiff seeks declaratory and injunctive relief to compel defendants to inform applicants and recipients of their

---

[1] 983 F.3d 578, 584-585 (2d Cir. 2020).

[2] A copy of the May 4, 2021 *Lisnitzer* Judgment is appended hereto as Exhibit A.

[3] *Id.* ¶ 4 at p. 2.

right to an expedited fair hearing when their immediate need for Medicaid and/or personal care services is denied or not acted upon in a timely manner.

12. Plaintiff also seeks declaratory and injunctive relief to compel defendants to take final administrative action within the federal three and seven business day time limits when requests for expedited Medicaid fair hearings are granted.

## JURISDICTION AND VENUE

13. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1343 which grant jurisdiction to this Court in cases arising under the Constitution and laws of the United States without regard to the amount in controversy. Supplemental jurisdiction is conferred over the state law claims pursuant to 28 U.S.C. § 1367.

14. Plaintiff's action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

15. Plaintiff's claims are cognizable under the Supremacy Clause, the Medicaid Act, codified at 42 U.S.C. § 1396 *et seq.*, and 42 U.S.C. § 1983 which provides redress to all citizens who are deprived of rights, privileges and immunities secured by the U.S. Constitution or by acts of Congress.

16. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

17. Plaintiff MARGARET M. BUCKLEY, CSJ, currently resides in Kings County in the State of New York.

- 4 -

18. Defendant MARY T. BASSETT, M.D., is the Commissioner of the New York State Department of Health ("DOH") and by virtue of the New York Social Services Law has responsibility for DOH's compliance with law.

19. Defendant DANIEL W. TIETZ is the Commissioner of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance ("OTDA") and by virtue of the New York Social Services Law has responsibility for OTDA's compliance with law.

## CONSTITUTIONAL, STATUTORY AND REGULATORY FRAMEWORK
### The Administration of the Medicaid Program in New York State

20. Medicaid is a cooperative federal-state program authorized by Title XIX of the Social Security Act to assist needy individuals and families "whose income and resources are insufficient to meet the costs of necessary medical services."[4]

21. While participation in the Medicaid program is voluntary, participating states must comply with all requirements imposed by the Medicaid Act and all implementing regulations promulgated by the federal agency.[5]

22. In accordance with its constitutional duty to aid the needy, New York State has elected to participate in the Medicaid program with the "goal of making available to everyone, regardless of race, age, national origin or economic standing, uniform, high-

---

[4] 42 U.S.C. § 1396-1.

[5] 42 U.S.C. § 1396a.

quality medical care."[6]

23. To qualify for federal funding, participating states must submit a Medicaid State Plan to the federal agency for approval.[7]

24. Participating states can opt to administer the Medicaid program themselves or supervise the administration of the Medicaid program through local political subdivisions within each state.[8]

25. If a participating state decides to supervise the administration of the Medicaid program through local political subdivisions, it must designate a single state agency with the authority to ensure statewide conformity with state rules, regulations and policies.[9]

26. New York State has chosen to administer the Medicaid program through local social services districts, which are comprised of the City of New York and the remaining 57 counties in the state.[10]

27. DOH is the designated state agency authorized to submit and maintain New York's Medicaid State Plan to the United States Department of Health and Human Services ("federal agency"), establish Medicaid eligibility standards, promulgate applicable

---

[6] New York Social Services Law § 363. *See* N.Y. Const. Art. XVII § 1.

[7] *See* 42 U.S.C. §§ 1396, 1396a(b), and 1396b; 42 C.F.R. Part 430.

[8] *See* 42 U.S.C. § 1396a(a)(5).

[9] *See* 42 U.S.C. § 1396a(a)(1) and (5); 42 C.F.R. § 431.10.

[10] *See* New York Social Services Law §§ 56, 61, 65 and 365[1](a).

regulations, maintain a system of administrative fair hearings and issue final decisions in administrative appeals.[11]

28. OTDA is responsible for determining eligibility for care and services under the Medicaid program, supervising the administration of the Medicaid program through the local social services districts, hearing administrative appeals and making findings and recommendations to State DOH.[12]

### Determinations of Medicaid Eligibility

29. Ordinarily, a state must determine Medicaid eligibility within 45 days of receipt of an application.[13]

30. However, when a Medicaid applicant has an immediate need for personal care services, a "final eligibility determination [must] be made within seven days of the date of a complete medical assistance application."[14]

31. More specifically, a "social services district must determine whether the applicant is eligible for Medicaid, including Medicaid coverage of community-based long-term care services, and notify the applicant of such determination" "[a]s soon as possible . . . but no later than seven calendar days after receipt of a complete Medicaid application[.]"[15]

---

[11] *See* New York Social Services Law §§ 363-a and 364[2].

[12] *See* New York Social Services Law §§ 17, 20, 22, 29, 34 and 364[1].

[13] *See* 42 C.F.R. § 435.912(c)(3)(ii); 18 N.Y.C.R.R. § 360-2.4(a)(1).

[14] New York Social Services Law § 366-a[12].

[15] 18 N.Y.C.R.R. § 505.14(b)(7)(iii).

Case 1:22-cv-01436-JMA-ARL Document 1 Filed 03/15/22 Page 8 of 102 PageID #: 8

32. Similarly, a "social services district must . . . determine" "[a]s soon as possible . . . but no later than 12 calendar days after receipt of a complete Medicaid application" "whether the applicant, if determined eligible for Medicaid, would be eligible for personal care services and, if so, the amount and duration of the personal care services that would be authorized . . ."[16]

### The Due Process Right to a Medicaid-Related Fair Hearing

33. The receipt of Medicaid benefits is a statutory entitlement protected by the Fourteenth Amendment to the United States Constitution.[17]

34. A Medicaid State Plan "must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."[18]

35. Notice and an opportunity to be heard are the cornerstones of due process.

36. A participating state's "hearing system must meet the due

---

[16] 18 N.Y.C.R.R. § 505.14(b)(7)(iv)(b). These procedures are also delineated in DOH's Administrative Directive 16 OHIP/ADM 02, available online at: https://www.health.ny.gov/health_care/medicaid/publications/docs/adm/16adm2.pdf and https://www.health.ny.gov/health_care/medicaid/publications/docs/adm/16adm2att.pdf [last accessed: March 14, 2022].

[17] *See Goldberg v Kelly*, 397 U.S. 254 (1970); *Almenares v Wyman*, 452 F.2d 1075, 1080 (2d Cir. 1971), *cert. denied* 405 U.S. 944 (1972); Granato v Bane, 74 F.3d 406 (2d Cir. 1996); *Stenson v Blum*, 476 F.Supp. 1331 (S.D.N.Y. 1979), affd. 628 F.2d 1345 (2d Cir. 1980), *cert. denied* 449 U.S. 885 (1980); *see also* 42 C.F.R. § 431.205(d).

[18] 42 U.S.C. § 1396a(a)(3).

- 8 -

process standards set forth in *Goldberg v Kelly*, 397 U.S. 254 (1970)" and the additional standards specified in 42 C.F.R. Part 431.[19]

37. At the time of application and when a claim for Medicaid eligibility, benefits, supplies or services has been denied, a state must inform applicants, *inter alia*, of their right to a fair hearing, of the method for obtaining a hearing and of "the time frames in which the agency must take final administrative action, in accordance with § 431.244(f)."[20]

38. A state must "take final administrative action" by rendering fair hearing decisions which are "based exclusively on evidence introduced at the hearing."[21]

39. The fair hearing record must consist of the transcript of recording of testimony and exhibits, or an official report containing the substance of what happened at the hearing, all papers and requests filed in the proceeding and the recommendation or decision of the hearing officer.[22]

40. In New York's Medicaid State Plan, defendants,

as a condition of receipt of Federal funds under title XIX of the Social Security Act, . . . agree[d] to administer the [Medicaid] program in accordance with the provisions of this State plan, the requirements of titles

---

[19] 42 C.F.R. § 431.205(d).

[20] 42 C.F.R. § 431.206(b)(1), (2) and (4), and (c)(1) and (2). *See* New York Social Services Law § 22[12]; 18 N.Y.C.R.R. §§ 355.2(b), 358-2.2(a), 358-3.3(a)(2) and 358-4.1(b).

[21] 42 C.F.R. § 431.244(a) and (f). *See* 18 N.Y.C.R.R. § 358-6.1(a) and 358-6.4(a).

[22] *See* 42 C.F.R. § 431.244(b); 18 N.Y.C.R.R. § 358-5.11(a).

XI and XIX of the [Medicaid] Act, and all applicable Federal regulations *and other official issuances of the Department (emphasis added)*.[23]

41. In one such official issuance, the federal agency, construing the requirements of § 1902(a)(3) of the Social Security Act [codified at 42 U.S.C. 1396a(a)(3)] and 42 C.F.R. Part 431 Subpart E [entitled "Fair Hearing Rights for Applicants and Recipients"], informed participating states with respect to the issuance of fair hearing decisions that

> a conclusive decision in the name of the State agency shall be made by the hearing authority . . .
>
> The officially designated hearing authority may adopt the recommendations of the hearing officer, or reject them and reach a different conclusion on the basis of the evidence, or refer the matter back to the hearing officer for a resumption of the hearing if the materials submitted are insufficient to serve as a basis for a decision. . . . *Remanding the case to the local unit for further consideration is not a substitute for "definitive and final administrative action" (emphasis added)*.[24]

42. With respect to the latter term, the federal agency informed participating States that

> the requirement for . . . definitive and final administrative action means that all requests for a hearing are to receive prompt attention and *will be carried through all steps necessary to completion (emphasis added)*.[25]

43. The "state agency 'must take final administrative action . . . [o]rdinarily, within 90 days from . . . the date the agency

---

[23] See appended Exhibit B.

[24] § 2903.2[A] of the *State Medicaid Manual* appended hereto as Exhibit C.

[25] § 2902.10 of the *State Medicaid Manual* appended hereto as Exhibit C.

receives a request for a fair hearing.'"[26]

44. However,

> when the standard 90-day period "could jeopardize the individual's life, health or ability to attain, maintain, or regain maximum function," 42 C.F.R. § 431.224(a)(1), the agency must take final administrative action within shorter time frames, such as three or seven working days, depending on the nature of the claim, §§ 431.224(a)(2), 431.244(f)(3).[27]

45. In *Lisnitzer*, 983 F.3d at 585, the Second Circuit concluded that

> In light of the stated purpose of expedited hearings, § 431.224(a)(1), it seems obvious that the accompanying final administrative action must include an eligibility determination. Otherwise, the need for further proceedings would jeopardize the life or health of Medicaid applicants who qualify for such expedited hearings.

### The Fair Hearing Process in New York State

46. Consonant with federal requirements, Medicaid fair hearings in New York State are conducted by impartial hearing officers who have not been involved in any way with the contested action.[28]

47. Such hearing officers are charged to ensure a complete record at the hearing, review and evaluate evidence, make findings of fact, prepare an official report containing the substance of what transpired at the hearing and render a recommended decision to

---

[26] *Lisnitzer*, 983 F.3d at 581, quoting 42 C.F.R. § 431.244(f)(1)(ii). *See* 18 N.Y.C.R.R. § 358-6.4(a).

[27] *Lisnitzer*, 983 F.3d at 581.

[28] *See* 18 N.Y.C.R.R. § 358-5.6.

the DOH Commissioner or the Commissioner's designee.[29]

48. In developing a complete fair hearing record, a hearing officer is empowered to elicit sworn testimony, administer oaths, require document production, issue subpoenas, direct the attendance of witnesses and require that an independent medical assessment be made as part of the record when the fair hearing involves medical issues such as diagnosis, an examining physician's report or a medical review team's decision.[30]

49. The fair hearing decision must be supported by substantial evidence and must be based exclusively on the content of the fair hearing record.[31]

50. The fair hearing decision must make findings of fact, determine the issues and state reasons for the determinations and direct specific action to be taken by the social services agency, where appropriate.[32]

51. Medicaid appellants, who have an "urgent need for medical care, services or supplies" or who challenge "a denial or discontinuance of or inadequate personal care services," are entitled to "[p]riority in scheduling of your hearing and determination."[33]

---

[29] *See* 18 N.Y.C.R.R. § 358-5.6(a), (b)(7) and (9).

[30] *See* 18 N.Y.C.R.R. § 358-5.6(b)(1), (3), (4) and (8); *Lisnitzer*, 983 F.3d at 581.

[31] *See* 18 N.Y.C.R.R. §§ 358-5.9(b) and 358-6.1(a).

[32] *See* 18 N.Y.C.R.R. § 358-6.1(a).

[33] 18 N.Y.C.R.R. § 358-3.2(b)(9) and (10).

52. A "fair hearing which is subject to priority processing"

must be scheduled as soon as practicable after the
request therefor is made. In determining the date for
which the hearing will be scheduled, consideration must
be given to the nature and urgency of the appellant's
situation, including any date before which the decision
must be issued to allow for meaningful resolution of the
issue under review.[34]

53. Upon issuance, the fair hearing decision is final and

binding on local social services districts which are then obliged

to take "definitive and final administrative action" promptly.[35]

54. "Under current New York procedure," DOH "may issue a fair

hearing decision that remands the case to the local [social

services] district to resolve the ultimate question of Medicaid

eligibility to its local social services districts to resolve."[36]

55. The Second Circuit has allowed the defendants to delegate

to their local agents the obligation to take "final administrative

action," provided the local agencies "do so within the applicable

time limit for final administrative action."[37]

56. The Second Circuit has recognized that such delegation

may not be the simplest. And we tend to agree with the
United States that resolving Medicaid eligibility in a
single fair hearing at the hearing authority level would
serve the interests of efficiency and accountability.

But, that said, we think New York's approach is
permissible under the federal requirements, as long as
final administrative action occurs within 90 days. The
hearing decisions regulation requires such action be

---

[34] 18 N.Y.C.R.R. § 358-5.2(b)(1).

[35] *See* 18 N.Y.C.R.R. §§ 358-6.1(b) and 358-6.4(a).

[36] *Lisnitzer*, 983 F.3d 586.

[37] *Id.*

taken by "[t]he agency," 42 C.F.R. § 431.244(f), not any particular unit within the agency, *see id*. Since the agency can delegate to local districts the responsibility to make initial eligibility determinations, *see* 42 C.F.R. § 431.10(c), (d), we believe it can remand to local districts to make final eligibility determinations, as well, so long as the agency meets the deadlines for final administrative action set by § 431.244(f).[38]

## STATEMENT OF FACTS

### Defendants' Policies and Practices

57. Defendants and their local social services agencies do not provide applicants and recipients in immediate need of Medicaid and/or personal care services with adequate notice of their right to an expedited fair hearing and the time frames within which final administrative action must be taken.

58. When Medicaid appellants request expedited fair hearings ·to challenge the denial or adequacy of their Medicaid benefits, supplies or services, defendants permit their hearing officers to close fair hearing records without developing complete records upon which to render decisions which conclusively determine appellants' eligibility.

39. Upon review of such incomplete fair hearing records, the DOH Commissioner or her designee then issues fair hearing decisions which remand matters back to the local agencies for further consideration before taking final administrative action by conclusively determining appellants' eligibility for Medicaid benefits, supplies or services.

40. Defendants do not take final administrative action within

_____

[38] *Id*. 983 F.3d at 586-587.

three or seven business days after receipt of requests for expedited fair hearings because they fail to render fair hearing decisions which conclusively determine appellants' eligibility for Medicaid benefits, supplies or services.

59. When defendants issue expedited fair hearing decisions, which remand matters back to local social services agencies, defendants do not require or compel their local agents to render conclusive determinations of appellants' eligibility for Medicaid benefits, supplies or services within three or seven business days after receipt of such hearing requests.

### Facts of the Named Plaintiff

60. Plaintiff MARGARET M. BUCKLEY, CSJ, ("Sister Buckley") is an 88 year old member of the religious congregation of the Sisters of St. Joseph who resides in a Brooklyn convent.

61. On February 17, 2022, with the assistance of her social workers, Sister Buckley's "immediate need" Medicaid application and request for personal care services, with supporting papers were faxed to defendants' local social services agency, the New York City Human Resources Administration ("HRA").

62. HRA failed to determine Sister Buckley's "immediate need" Medicaid eligibility within seven days (that is, February 24, 2022) and failed to determine her "immediate need" eligibility for personal care services within 12 days (that is, March 1, 2022).

63. HRA failed to provide Sister Buckley with notice of her right to request an expedited fair hearing to appeal the city agency's constructive denials of her Medicaid application and

request for personal care services on an "immediate need" basis.

64. On March 3, 2022, with her social workers' assistance, Sister Buckley asked defendants to conduct and decide an expedited fair hearing to review HRA's constructive denials of her immediate need for Medicaid and personal care services and to render conclusive determinations of her eligibility for Medicaid and personal care services within the seven business day time limit.

65. On March 8, 2022, defendants' hearing officer, who was also the DOH Commissioner's Designee, conducted an expedited fair hearing by telephone with Sister Buckley's social work representatives.[39] HRA failed to participate in or submit any evidence for the hearing.

66. On March 11, 2022, the sixth business day after Sister Buckley's March 3, 2022 expedited hearing request, the DOH Commissioner's Designee issued two similar fair hearing decisions,[40] both of which concluded that

> The Agency's failure to process the Appellant's 2/17/22 Immediate Needs for Medical Assistance was not correct and is reversed.

> 1. The Agency is directed to take "final administrative action" pursuant to <u>Lisnitzer v. Zucker</u> 11-CV-04641 (E.D.N.Y.) and process the 2/17/22 Immediate

---

[39] Due to her hearing impairment, Sister Buckley was unable to participate in the telephone hearing. She had requested that the fair hearing be held in her home but defendants failed to do so, notwithstanding the preliminary injunction entered in a statewide class action, entitled *Varshavsky v Perales*, Index No. 91-40767, Order Granting Intervention, Class Certification and Preliminary Injunctive Relief (Sup. Ct. New York Co. March 5, 1992) (appended as Exhibit D), <u>affd</u>. 202 A.D.2d 155 (1st Dept. 1994).

[40] These decisions are appended hereto respectively as Exhibits E and F.

Needs application pursuant to 16 OHIP/ADM 02 forthwith.[41]

67. As of the close of business on March 14, 2022, the seventh business day deadline for taking final administrative action on her expedited fair hearing request, neither Sister Buckley nor her representatives have been informed of any determination of her eligibility for Medicaid or for personal care services.

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) against defendants as state Medicaid officials on behalf of a two proposed classes.

69. The first proposed class consists of

All past, present and future Medicaid appellants in New York State

(a) who were or will be in immediate need of Medicaid and/or personal care services, and

(b) who were not or will not be provided at the time of their applications with notice of their right to an expedited hearing if their immediate need for Medicaid and/or personal care services is denied or not acted upon in a timely manner.

70. The second proposed class consists of:

All past, present and future Medicaid applicants and recipients in New York State

(a) who requested or will request an expedited fair hearing to contest the denial or adequacy of Medicaid benefits, and

(b) who participated or will participate directly or by representative in an expedited fair hearing during which the hearing officer fails to develop a complete record upon which to base a final and definitive determination of eligibility, and

---

[41] Exhibit E, at p. 12; Exhibit F, at p. 13.

(c) for whom "final administrative action" was not or will not be taken by the defendants or their local agents within the three or seven business day deadline set forth in 42 C.F.R. §§ 431.244(a)(2) and 431.244(f)(2) and (3).

71. The two proposed plaintiff classes are so numerous that joinder of all members is impractical.

72. There are questions of fact common to the first proposed class, to wit, whether the defendants have developed adequate notices which inform applicants and recipients of their right to an expedited fair hearing if their immediate need for Medicaid and/or personal care services is denied or not acted upon in a timely manner, and whether the defendants ensured that their local agencies provide such notices to all applicants and recipients in immediate need of Medicaid and/or personal care services.

73. There are questions of law common to the first proposed class to wit, whether defendants' failure, directly or by delegation, to provide adequate notice to applicants and recipients of their right to expedited fair hearings if their immediate need for Medicaid and/or personal care services is denied or not acted upon in a timely manner:

(a) violates the due process rights of the proposed class [U.S. Const. amend. 14; N.Y. Const. art. I § 6]; and/or

(b) violates the federal and state right of the proposed class to receive adequate written notice at the time of their applications and when their Medicaid claims are denied [42 U.S.C. § 1396a(a)(3), 42 C.F.R. § 431.206(b)(1), (2) and (4), and (c)(1) and (2), New York Social Services Law § 22[12]; 18 N.Y.C.R.R. §§

355.2(b), 358-2.2(a), 358-3.3(a)(2) and 358-4.1(b)]; and/or

(c) violates the assurances contained in the New York Medicaid State Plan regarding compliance with all applicable Federal regulations and other official issuances of the federal agency, and thus violates 42 U.S.C. § 1396a(a)(1); and/or

(d) conflicts with the aforementioned federal laws and regulations and is thus preempted by the Supremacy Clause [U.S. Const. art. VI, cl. 2.].; and/or

(e) violates defendants' affirmative duty to aid the needy [N.Y. Const. art. XVII § 1; New York Social Services Law § 363].

74. There are questions of fact common to the second proposed class, to wit, whether defendants' hearing officers fail to develop complete fair hearing records upon which definitive and final Medicaid eligibility determinations are based, whether defendants take final administrative action in a timely manner on expedited fair hearing requests, and whether defendants ensure that, upon remand, their local social services agencies take final administrative action in a timely manner on expedited fair hearing requests.

75. There are questions of law common to the second proposed class, to wit, whether the failure of defendants' hearing officers to develop complete fair hearing records upon which definitive and final Medicaid eligibility determinations are based, and whether defendants, directly or by delegation, fail to take final administrative action in a timely manner on expedited fair hearing requests:

(a) violate the due process rights of the proposed class [U.S. Const. amend. 14; N.Y. Const. art. I § 6]; and/or

(b) violate the federal statutory and regulatory right of the proposed class to "definitive and final administrative action." [42 U.S.C. § 1396a(a)(3), 42 C.F.R. § 431.244(f) and *State Medicaid Manual* §§ 2902.10 and 2903.2[A]; and/or

(c) violate the assurances contained in the New York Medicaid State Plan regarding compliance with the official issuances of the federal agency, and thus violates 42 U.S.C. § 1396a(a)(1); and/or

(d) conflict with the aforementioned federal laws and regulations and is thus preempted by the Supremacy Clause [U.S. Const. art. VI, cl. 2.]; and/or

(e) violate defendants' affirmative duty to aid the needy [N.Y. Const. art. XVII § 1; New York Social Services Law § 363].

76. Plaintiff's claims are typical of the claims of the two proposed classes. All claims arise from defendants' same course of conduct and administrative practices.

77. Plaintiff will fairly and adequately protect the interests of the two proposed classes. She is represented on a *pro bono* basis by PETER VOLLMER, an attorney with extensive class action experience in the courts of this state and in the Eastern District of New York. He will diligently and expeditiously press the claims of the plaintiff classes.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Indeed,

only a class remedy will afford relief to those who have been or will be victimized by the challenged governmental policies and practices.

79. Due to the complexity of the issues raised by this action and the indigency and/or infirmity of the plaintiff classes, it is unlikely that a substantial number of individual proceedings would be brought by the members of the proposed class.

## AS AND FOR A FIRST CAUSE OF ACTION

80. Plaintiff repeats and realleges ¶¶ 1 through 79.

81. Defendants' policy and practice, which fails to provide adequate written notice of the right to an expedited fair hearing to Medicaid applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, violates the due process rights of plaintiff and those similarly situated. U.S. Const. amend. XIV; N.Y. Const. art. I § 6; 42 C.F.R. § 431.205(d).

## AS AND FOR A SECOND CAUSE OF ACTION

82. Plaintiff repeats and realleges ¶¶ 1 through 79.

83. Defendants' policy and practice, which fails to provide adequate written notice of the right to an expedited fair hearing to Medicaid applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, violates federal and state law and regulation. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.206(b) and (c); New York Social Services Law § 22[12]; 18 N.Y.C.R.R. §§ 355.2(b), 358-2.2(a), 358-3.3(a)(2) and 358-4.1(b).

## AS AND FOR A THIRD CAUSE OF ACTION

84. Plaintiff repeats and realleges ¶¶ 1 through 79.

85. Defendants' policy and practice, which fails to provide adequate written notice of the right to an expedited fair hearing to Medicaid applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, violates the terms of New York's Medicaid State Plan, and thus violates 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. Part 430.

## AS AND FOR A FOURTH CAUSE OF ACTION

86. Plaintiff repeats and realleges ¶¶ 1 through 79.

87. Defendants' policy and practice, which fails to provide adequate written notice of the right to an expedited fair hearing to Medicaid applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, is preempted by 42 U.S.C. § 1396a(a)(1) and (3), 42 C.F.R. §§ 431.205(d) and 431.206(b) and (c), and thus violates the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

## AS AND FOR A FIFTH CAUSE OF ACTION

88. Plaintiff repeats and realleges ¶¶ 1 through 79.

89. Defendants' policy and practice, which fails to provide adequate written notice of the right to an expedited fair hearing to Medicaid applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, violates defendants' affirmative duty to

aid the needy. N.Y. Const. art. XVII § 1; New York Social Services Law § 363.

## AS AND FOR AN SIXTH CAUSE OF ACTION

90. Plaintiff repeats and realleges ¶¶ 1 through 79.

91. Defendants' policies and practices, which fail to require hearing officers in expedited fair hearings to develop complete records upon which final and definitive Medicaid eligibility determinations are rendered in a timely manner, and which fail to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions, violate the due process rights of plaintiff and those similarly situated. U.S. Const. amend. XIV; N.Y. Const. art. I § 6; 42 C.F.R. § 431.205(d).

## AS AND FOR A SEVENTH CAUSE OF ACTION

92. Plaintiff repeats and realleges ¶¶ 1 through 79.

93. Defendants' policies and practices, which fail to require hearing officers in expedited fair hearings to develop complete records upon which final and definitive Medicaid eligibility determinations are rendered in a timely manner, and which fail to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions, violate federal law, regulation and policy. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.224(a)(2) and 431.244(f)(2) and (3); *State Medicaid Manual* §§ 2902.10 and 2903.2[A].

### AS AND FOR AN EIGHTH CAUSE OF ACTION

94. Plaintiff repeats and realleges ¶¶ 1 through 79.

95. Defendants' policies and practices, which fail to require hearing officers in expedited fair hearings to develop complete records upon which final and definitive Medicaid eligibility determinations are rendered in a timely manner, and which fail to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions, violate the terms of New York's Medicaid State Plan, and thus violate 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. Part 430.

### AS AND FOR A NINTH CAUSE OF ACTION

96. Plaintiff repeats and realleges ¶¶ 1 through 79.

97. Defendants' policies and practices, which fail to require hearing officers in expedited fair hearings to develop complete records upon which final and definitive Medicaid eligibility determinations are rendered in a timely manner, and which fail to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions, are preempted by 42 U.S.C. § 1396a(a)(1) and (3), 42 C.F.R. §§ 431.205(d) and 431.244(f) and *State Medicaid Manual* §§ 2902.10 and 2903.2[A], and thus violate the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

### AS AND FOR A TENTH CAUSE OF ACTION

98. Plaintiff repeats and realleges ¶¶ 1 through 79.

99. Defendants' policies and practices, which fail to require hearing officers in expedited fair hearings to develop complete records upon which final and definitive Medicaid eligibility determinations are rendered in a timely manner, and which fail to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions, violate defendants' affirmative duty to aid the needy. N.Y. Const. art. XVII § 1; New York Social Services Law § 363.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

100. Plaintiff repeats and realleges ¶¶ 1 through 99.

101. By virtue of the foregoing, defendants have deprived plaintiff and the two proposed plaintiff classes of "rights, privileges, or immunities secured by the Constitution and laws" which are cognizable and enforceable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully asks this Court to:

A. Assume jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

B. Enter an order pursuant to Fed.R.Civ.P. 23(a) and (b)(2) that this action may be maintained as a class action on behalf of the two proposed plaintiff classes.

C. Enter a permanent injunction, pursuant to 28 U.S.C. § 2202, 42 U.S.C. § 1983 and Fed.R.Civ.P. 65, prohibiting defendants from

(1) failing to ensure the provision of adequate written notice of the right to an expedited fair hearing to Medicaid

applicants and recipients at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services are denied, and

(2) failing to require hearing officers in expedited fair hearings to develop complete records upon which to base final and definitive Medicaid eligibility determinations in a timely manner, or failing to ensure that their local social services agencies timely render final and definitive Medicaid eligibility determinations on remand from expedited fair hearing decisions.

D. Enter a final judgment, pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 54 and 57, declaring that the contested policies and practices, as implemented by defendants and their local social services agencies,

(1) deprive plaintiff and those similarly situated Medicaid applicants and recipients of adequate written notice of their right to an expedited fair hearing in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Article I § 6 of the New York State Constitution and the due process standards set forth in *Goldberg v Kelly*, 397 U.S. 254 (1970), as mandated by 42 C.F.R. § 431.205(d); and

(2) deprive plaintiff and those similarly situated Medicaid appellants of their right to final administrative action on an expedited basis in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Article I § 6 of the New York State Constitution and the due process standards set forth in *Goldberg v Kelly*, 397 U.S. 254 (1970), as

mandated by 42 C.F.R. § 431.205(d); and

(3) conflicts with federal law, regulation and official policy as set forth at 42 U.S.C. § 1396a(a)(1) and (3), 42 C.F.R. §§ 431.205(d), 431.206(b) and (c) and 431.244(f), and *State Medicaid Manual* §§ 2902.10 and 2903.2[A], and is thereby preempted by Article VI, clause 2 of the United States Constitution; and 42 U.S.C. § 1396a(a)(1) and (3);

(4) violates the terms of New York's Medicaid State Plan, and thus violates 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. Part 430; and

(5) violates defendants' affirmative duty to aid the needy as set forth in Article XVII § 1 of the New York State Constitution New York Social Services Law §§ 22[12] and 363, and 18 N.Y.C.R.R. §§ 355.2(b), 358-2.2(a), 358-3.3(a)(2) and 358-4.1(b).

E. Enter a final judgment, pursuant to 28 U.S.C. § 2202 and Fed.R.Civ.P. 65, ordering defendants and their successors to:

(1) identify all Medicaid applicants and recipients who since March 15, 2019 were not given adequate written notice of the circumstances under which they would be entitled to an expedited fair hearing at the time of application and when their claims for Medicaid eligibility, benefits, supplies or services were denied;

(2) provide to all identified Medicaid applicants and recipients adequate written notice of the circumstances under which they would be entitled to an expedited fair hearing if their claims for Medicaid eligibility, benefits, supplies or services were denied or not acted upon in a timely manner;

(3) identify all Medicaid appellants since March 15, 2019 whose fair hearings were expedited but for whom final administrative action was not taken with the expedited time frames.

(4) provide written notification to all such Medicaid appellants of their right to the reopening of the fair hearing for completion of the fair hearing record and the issuance of an amended fair hearing decision, which conclusively determines their Medicaid eligibility, benefits, supplies or services;

(5) develop an implementation plan, in consultation with plaintiff's counsel and defendants' relevant fair hearing staff, which provides for

(a) the training of all hearing officers who are assigned to conduct expedited Medicaid fair hearings on their diligent exercise of all available powers to ensure the full development of fair hearing records, including their heightened duty when an appellant lacks representation; and

(b) the training of all supervisory and principal hearing officers, who are assigned to oversee the conduct of expedited Medicaid fair hearings and/or to decide fair hearings, on their diligent review of fair hearing records to ensure the full development of all relevant facts in order to render final and definitive determinations of Medicaid eligibility, benefits, supplies or services within the federal expedited time frames;

(c) the production and distribution of written materials on the full development of fair hearing records to all hearing officers who are assigned to conduct expedited Medicaid

- 28 -

fair hearings; and

(d) the management of hearing officer calendars to ensure that expedited Medicaid fair hearings are scheduled in a manner that allows sufficient time for the full development of fair hearing records; and

(e) the establishment of an oversight mechanism to monitor the implementation plan, including an informal grievance procedure for use by appellants, appellants' representatives, class counsel and hearing officers in order to resolve individual problems related to the implementation plan; and

(f) the distribution of periodic monitoring reports to plaintiff's counsel of sufficient design and content to permit plaintiff's counsel to ascertain whether defendants are in compliance with the terms of the final judgment.

F. Grant an award of reasonable attorney's fees, together with costs and disbursements, pursuant to Fed.R.Civ.P. 54(d), 42 U.S.C. § 1988 and/or Article 86 of the New York Civil Practice Law and Rules to plaintiff's counsel.

G. Grant such additional and further relief as this Court may deem just and proper.

Dated: Sea Cliff, New York    Law Office of Peter Vollmer, P.C.
       March 15, 2022       By:

Peter Vollmer

Peter Vollmer, Esq. (PV-2749)
19 Hawthorne Road
Sea Cliff, New York 11579
(516) 277-1156

TO: MARY T. BASSETT, M.D., Commissioner
    New York State Department of Health
    Empire State Plaza
    Corning Tower, Room 2438
    Albany, New York 12237
    Defendant

    DANIEL W. TIETZ, Commissioner
    Office of Temporary and Disability Assistance
    New York State Department of Family Assistance
    40 North Pearl Street
    Albany, New York 12243
    Defendant

    LETITIA JAMES,  Attorney General of the State of New York
    New York State Department of Law
    28 Liberty Street
    New York, New York 10005
    Attorney for Defendants Bassett and Tietz

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                       :

LESLIE LISNITZER, individually and on behalf   :
of all others similarly situated,
                                         :

             Plaintiff,              :     JUDGMENT
                                         :     11-CV-4641 (JFB)(ARL)

             – against –        :

HOWARD ZUCKER, M.D., as Commissioner   :
of the New York State Department of Health,
and MICHAEL HEIN, as Commissioner of the   :
Office of Temporary and Disability Assistance
of the New York State Department of Family   :
Assistance,
                                         :

             Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FILED
CLERK

11:27 am, May 04, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

      Pursuant to the Judgment and Opinion of the United States Court of Appeals for the

Second Circuit ("Second Circuit"), dated and entered on December 23, 2020:

      1.    In view of the defendants' commitment to abide by the Second Circuit's Opinion in

all respects, the plaintiff class previously certified by this Court by Judgment filed and entered on

February 1, 2019 is decertified based upon the Declarations filed on behalf of defendants on

February 18, 2021.

      2.    When an appellant contests the denial or adequacy of eligibility for Medicaid

benefits ("Medicaid") and requests a fair hearing concerning a Medicaid eligibility determination

rendered by a local social services district or agency, a "final administrative action" as described

in 42 C.F.R. § 431.244(f) entails a final determination of Medicaid eligibility and must be made

ordinarily within 90 days of the fair hearing request.  The failure to do so violates 42 U.S.C. §

1396a(a)(3), as construed and implemented by 42 C.F.R. § 431.244(f).  The 90-day deadline shall

not apply to members of the certified class in *Varshavsky v. Perales*, 202 A.D.2d 155 (1st Dep't

1994), who have been awarded aid-continuing Medicaid benefits pending the outcome of their

fair hearing appeals.

      3.    Such final determinations may be included in the decision after fair hearing or issued

by a local social services district or agency after further administrative action as directed by the

fair hearing decision.

      4.    The Judgment and Opinion of the Second Circuit shall apply to all Medicaid

appellants whose fair hearings were pending on or after December 23, 2020, and whose Medicaid

eligibility was not conclusively determined within 90 days of their fair hearing requests,

exclusive of the authorized exceptions provided in 42 C.F.R. § 431.244.

      5.    Any application by plaintiff for reasonable attorneys' fees and expenses pursuant to

42 U.S.C. § 1988, Article 86 of the New York Civil Practice Law and Rules, or any other

relevant fee provision, shall be served and filed within 90 days of the date hereto, or within 90

days of the disposition of any appeal of this Judgment.

      6.    This Judgment shall take effect sixty (60) days after the date hereof.

The Clerk is directed to furnish a filed copy of the within to all parties.

                     SO ORDERED.

                     /s/ Joseph F. Bianco

                     JOSEPH F. BIANCO
                     UNITED STATES CIRCUIT JUDGE
                     (sitting by designation)

Dated:      May 4, 2021
              Central Islip, New York

**EXHIBIT B**

**STATE PLAN UNDER TITLE XIX**
**OF THE SOCIAL SECURITY ACT**
**MEDICAL ASSISTANCE PROGRAM**

OMB No. 0938-0193

**STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT**
**Medical Assistance Program**

**New York**
**i**

**TABLE OF CONTENTS**

| SECTION | PAGE NUMBERS |
|---|---|

State Plan Submittal Statement............................................................................1

SECTION 1 – SINGLE STATE AGENCY ORGANIZATION.......................................2

    1.1    Designation and Authority............................................................2

    1.2    Organization for Administration...................................................2

    1.3    Statewide Operation...................................................................7

    1.4    State Medical Care Advisory Committee.......................................9

    1.5    Pediatric Immunization Program.................................................9a

TN   #87-47                         Approval Date  **November 21, 1991**

Supersedes TN    #UNKNOWN    Effective Date  **October 1, 1987**
                   (AT 80-38)

 **Medicaid Administration**

OMB Control Number 0938-1148.
OMB Expiration date: 10/31/2014

| State Plan Administration Designation and Authority | A1 |
|---|---|

42 CFR 431.10

**Designation and Authority**

State Name:  | New York State |

As a condition for receipt of Federal funds under title XIX of the Social Security Act, the single state agency named below submits the following state plan for the medical assistance program, and hereby agrees to administer the program in accordance with the provisions of this state plan, the requirements of titles XI and XIX of the Act, and all applicable Federal regulations and other official issuances of the Department.

Name of single state agency:  | Department of Health |

Type of Agency:

- ○ Title IV-A Agency
- ● Health
- ○ Human Resources
- ○ Other

Type of Agency  |  |

The above named agency is the single state agency designated to administer or supervise the administration of the Medicaid program under title XIX of the Social Security Act. (All references in this plan to "the Medicaid agency" mean the agency named as the single state agency.)

The state statutory citation for the legal authority under which the single state agency administers the state plan is:

| NY Social Services 363-a, PHL 201 |

The single state agency supervises the administration of the state plan by local political subdivisions.

● Yes  ○ No

The state statutory citation for the legal authority under which the agency supervises the administration of the plan on a statewide basis is:

| NY Social Services 363-a, PHL 201, PHL 206, 366-a, (2) (a) |

The state statutory citation under which the single state agency has legal authority to make rules and regulations that are binding on the political subdivisions administering the plan is:

| NY Social Services 363-a, PHL 201, PHL 206 |

☑ The certification signed by the state Attorney General identifying the single state agency and citing the legal authority under which it administers or supervises administration of the program has been provided.

 **Medicaid Administration**

| An attachment is submitted. |
|---|

The state plan may be administered solely by the single state agency, or some portions may be administered by other agencies.

The single state agency administers the entire state plan under title XIX (i.e., no other agency or organization administers any portion of it).

○ Yes    ◉ No

☒ Waivers of the single state agency requirement have been granted under authority of the Intergovernmental Cooperation Act of 1968.

The waivers are still in effect.

◉ Yes    ○ No

**Enter the following information for each waiver:**

[Remove]

Date waiver granted (MM/DD/YY): [06/11/14]

The type of responsibility delegated is (check all that apply):

☐ Determining eligibility

☒ Conducting fair hearings

☐ Other

Name of state agency to which responsibility is delegated:

[ NYS Office of Temporary and Disability Assistance (OTDA). ]

Describe the organizational arrangement authorized, the nature and extent of responsibility for program administration delegated to the above named agency, and the resources and/or services of such agency to be utilized in administration of the plan:

Consistent with relevant federal and state law with respect thereto and as designated by the Department of Health (DOH), when fair hearings are requested, OTDA: provides such hearings for all non- MAGI Medicaid applicants or beneficiaries with respect to their Medicaid eligibility and any adverse agency action with respect thereto; issues final administrative decisions on behalf of the DOH Commissioner; takes such steps as may be necessary to enforce DOH's final determinations and decisions.

The methods for coordinating responsibilities among the agencies involved in administration of the plan under the alternate organizational arrangement are as follows:

DOH communicates Medicaid eligibility and policy directives to OTDA and trains OTDA personnel on such matters. DOH maintains policies and procedures reasonably necessary to monitor and evaluate the effectiveness and efficiency of the activities performed by OTDA with regard to conducting fair hearings. DOH retains oversight of the State Plan and has a process to monitor the entire appeals process, including the quality and accuracy of the final decisions made by OTDA. OTDA makes and issues the final decision (for non-MAGI cases) on behalf of the Department of Health (DOH) pursuant to DOH statues, regulations and policies. In legal force and effect, the decisions are final DOH decisions. DOH regulations set forth the Commissioner's authority to review any issued fair hearing decision and correct any error of law or fact and/or any other error occurring in the production of any decision. OTDA conducts all non-MAGI Medicaid fair hearings including service related

 # Medicaid Administration

> appeals. DOH will ensure that every applicant and beneficiary is informed, in writing, of the fair hearing process and how to contact OTDA and how to obtain information about fair hearings from that agency. OTDA is required to comply with all federal and state laws, regulations and policies. The regulatory citation for Fair Hearings is 18 NYCRR Parts 358 and 360.

Add

☐ The agency that administers or supervises the administration of the plan under Title X of the Act as of January 1, 1965, has been separately designated to administer or supervise the administration of that portion of this plan related to blind individuals.

The entity or entities that have responsibility for determinations of eligibility for families, adults, and for individuals under 21 are:

☒ The Medicaid agency

☐ Single state agency under Title IV-A (in the 50 states or the District of Columbia) or under Title I or XVI (AABD) in Guam, Puerto Rico, or the Virgin Islands

☐ An Exchange that is a government agency established under sections 1311(b)(1) or 1321(c)(1) of the Affordable Care Act

The entity that has responsibility for determinations of eligibility for the aged, blind, and disabled are:

☐ The Medicaid agency

☐ Single state agency under Title IV-A (in the 50 states or the District of Columbia) or under Title I or XVI (AABD) in Guam, Puerto Rico, or the Virgin Islands

☐ An Exchange that is a government agency established under sections 1311(b)(1) or 1321(c)(1) of the Affordable Care Act

☒ The Federal agency administering the SSI program

Indicate which agency determines eligibility for any groups whose eligibility is not determined by the Federal agency:

☒ Medicaid agency

☐ Title IV-A agency

☐ An Exchange

The entity or entities that have responsibility for conducting fair hearings with respect to denials of eligibility based on the applicable modified adjusted gross income standard are:

☒ Medicaid agency

☐ An Exchange that is a government agency established under sections 1311(b)(1) or 1321(c)(1) of the Affordable Care Act

☐ An Exchange appeals entity, including an entity established under section 1411(f) of the Affordable Care Act

The agency has established a review process whereby the agency reviews appeals decisions made by the Exchange or Exchange appeals entity or other state agency, but only with respect to conclusions of law, including interpretations of state or federal policies.

◉ Yes    ○ No

| State Plan Administration Organization and Administration | A2 |
|---|---|

42 CFR 431.10
42 CFR 431.11

Attachment 1.1-A

 # Medicaid Administration

---

**Organization and Administration**

Provide a description of the organization and functions of the Medicaid agency.

The Office of Health Insurance Programs (OHIP) and the Office of Health Benefit Exchange are two separate offices, out of a total of twelve offices under the authority of the Commissioner of the Department of Health. OHIP is responsible for administering New York's Medicaid program by collaborating with stakeholders across the health care industry including other state agencies, local and federal government agencies, providers, members, and community-based organizations to optimize the health of Medicaid members. The Fair hearing process for the MAGI population is within and conducted by the Office of Health Benefit Exchange.

OHIP encompasses eight distinct divisions.

Division of Finance and Rate Setting
This division is responsible for all functions within OHIP related to rate setting, including managed care rates.

Division of Program Development and Management
This division is responsible for all policy and strategic planning including waiver and State Plan Amendments, and policy related to medical, dental, pharmacy (including EPIC), behavioral health and transportation management.

Division of Health Plan Contracting & Oversight
This division is responsible for managed care organization (MCO) contracting, oversight of health plan compliance with applicable federal and state regulations.

Division of Long Term Care
This division is responsible for the managed long term care program which includes oversight of the growth of the program as well as other care coordination models.

Division of OHIP Operations
This division is responsible for fee-for-service (FFS) program management and operations for medical and dental prior approval, pended claim reviews, utilization edit development, rate loading and payment file maintenance, provider enrollment and the electronic health records incentive program.

Division of Health Reform and Health Insurance Exchange Integration
The division is responsible for administering New York's Medicaid program by collaborating with stakeholders across the health care industry including other state agencies, local and federal government agencies, providers, members, and community-based organizations. The division interprets, develops and implements federal and state legislation. The division also establishes policies, guidelines and instructions by writing directives to local districts for all Medicaid populations including MAGI, Non-MAGI and persons who are aged, blind, or disabled. With division oversight, the local districts process applications and determine eligibility for non-MAGI, Presumptive eligibility for Pregnant Women and Children. Local districts also process renewals for the aforementioned populations, as well as, the MAGI population until the MAGI renewals are transitioned to the SBM. MAGI applications are processed by the Office of Health Benefit Exchange with division guidance.

Division of OHIP Systems
This division is responsible for the oversight of the MMIS (eMedNY system) contract and the technical support of the development of the Health Exchange.

Division of Human Resources and Administration
This division interacts with OHIP management in planning, coordinating, developing and implementing all activities related to OHIP human resources

Upload an organizational chart of the Medicaid agency.

Attachment 1.1-A



# Medicaid Administration

---

**An attachment is submitted.**

Provide a description of the structure of the state's executive branch which includes how the Medicaid agency fits in with other health, human service and public assistance agencies.

> The Executive Branch of New York State is headed by the Governor. The Executive Branch is the part of the government that has the sole authority and responsibility for the daily administration of the State's business. New York State's governmental activities are carried out by several departments within the Executive Branch. The New York Department of Health is one of these agencies. The Department of Health (DOH) coordinates policy and activities specifically to protect, improve and promote the health, productivity and well being of all New Yorkers. The Department of Health is responsible for the Medicaid program. Separate from DOH and it's own distinctive agency the Office of Mental Health determines Medicaid eligibility for seriously emotionally disturbed children up to the age of 21 within the 1915(c) waiver. Separate from DOH and it's own distinctive agency the Office of People with Developmental Disabilities determines Medicaid eligibility for developmentally disabled adults and children, within the 1915(c) waiver. OTDA administers public assistance programs, including cash assistance, Supplemental Nutrition Assistance Program (SNAP), and Home Energy Assistance Program (HEAP).The Office of Health Benefit Exchange is a separate and distinct office within the Department of Health.

**Entities that determine eligibility other than the Medicaid Agency (if entities are described under Designation and Authority)**

Remove

Type of entity that determines eligibility:

   ○ Single state agency under Title IV-A (in the 50 states or the District of Columbia) or under Title I or XVI (AABD) in Guam, Puerto Rico, or the Virgin Islands

   ○ An Exchange that is a government agency established under sections 1311(b)(1) or 1321(c)(1) of the Affordable Care Act

   ● The Federal agency administering the SSI program

Provide a description of the staff designated by the entity and the functions they perform in carrying out their responsibility.

> Pursuant to a 1634 agreement, the Social Security Administration determines Medicaid eligibility for Supplemental Security Income recipients.

Add

**Entities that conduct fair hearings other than the Medicaid Agency (if entities described under Designation and Authority)**

Remove

Type of entity that conducts fair hearings:

   ○ An Exchange that is a government agency established under sections 1311(b)(1) or 1321(c)(1) of the Affordable Care Act

   ○ An Exchange appeals entity, including an entity established under section 1411(f) of the Affordable Care Act

Provide a description of the staff designated by the entity and the functions they perform in carrying out their responsibility.

Add

Supervision of state plan administration by local political subdivisions (if described under Designation and Authority)

Is the supervision of the administration done through a state-wide agency which uses local political subdivisions?

○ Yes  ● No

 # Medicaid Administration

The types of the local subdivisions that administer the state plan under the supervision of the Medicaid agency are:

- ◉ Counties
- ○ Parishes
- ○ Other

Are all of the local subdivisions indicated above used to administer the state plan?

◉ Yes     ○ No

Indicate the number used to administer the state plan:     **58**

Description of the staff and functions of the local subdivisions:

Local Department of Social Services employees are civil servants qualified to be appointed to various positions. They receive and process Medicaid applications pursuant to New York State laws and regulations. They determine financial eligibility, categorical classification, continued financial eligibility, and income maintenance review for the Aged, Blind, Disabled, Presumptive eligibility for Pregnant Women, Children and non-MAGI categories, as well as, renewal determinations of MAGI categories until such time as the categories can be transitioned to the Health Benefit Exchange.

| State Plan Administration: Assurances | A3 |
|---|---|

42 CFR 431.10
42 CFR 431.12
42 CFR 431.50

**Assurances**

☑ The state plan is in operation on a statewide basis, in accordance with all the requirements of 42 CFR 431.50.

☑ All requirements of 42 CFR 431.10 are met.

☑ There is a Medical Care Advisory Committee to the agency director on health and medical services established in accordance with meeting all the requirements of 42 CFR 431.12.

☑ The Medicaid agency does not delegate, to other than its own officials, the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters.

Assurance for states that have delegated authority to determine eligibility:

☑ There is a written agreement between the Medicaid agency and the Exchange or any other state or local agency that has been delegated authority to determine eligibility for Medicaid eligibility in compliance with 42 CFR 431.10(d).

Assurances for states that have delegated authority to conduct fair hearings:

■ There is a written agreement between the Medicaid agency and the Exchange or Exchange appeals entity that has been delegated authority to conduct Medicaid fair hearings in compliance with 42 CFR 431.10(d).

■ When authority is delegated to the Exchange or an Exchange appeals entity, individuals who have requested a fair hearing are given the option to have their fair hearing conducted instead by the Medicaid agency.

Assurance for states that have delegated authority to determine eligibility and/or to conduct fair hearings:

 **Medicaid Administration**

> ☑ The Medicaid agency does not delegate authority to make eligibility determinations or to conduct fair hearings to entities other than government agencies which maintain personnel standards on a merit basis.

### PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 40 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20130917

**EXHIBIT C**

STATE MEDICAID MANUAL

TABLE OF CONTENTS

*Part 1    Grants to States For Medical Assistance Programs - Section 1000

Part 2     State Organization - Section 2000

Part 3     Eligibility - Section 3000

Part 4     Services - Section 4000

*Part 5    Early and Periodic Screening, Diagnosis, and Treatment of Individuals Under the
           Age 21 - Section 5000

Part 6     Payments for Services - Section 6000

Part 7     Quality Control - Section 7000

*Part 8    Program Integrity - Section 8000

Part 9     Utilization Control - Section 9000

Part 11    Medicaid Management Information Systems - Section 11000

Part 13    State Plan Procedures and Preprints - Section 13000

Part 15    Medicaid Eligibility Determination and Information Retrieval System -Section
           15000

* TO BE ISSUED AT A LATER DATE

03-90          STATE ORGANIZATION AND GENERAL ADMINISTRATION          2900.2

2900      FAIR HEARINGS AND APPEALS

Section 1902(a)(3) of the Social Security Act requires that States "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." Regulations implementing this section of law are found at 42 CFR 431 Subpart E. In addition, certain court decisions further amplify and modify the law and regulations governing the provision of notices and hearings to Medicaid applicants and recipients. Where appropriate, those decisions are cited .

2900.1      Basic Responsibility (42 CFR 431.200 and 431.205).--Establish policies and procedures for assuring a system of fair hearings that meet all the requirements of the regulations and instructions.

Notify and make available to the applicant or recipient the hearing procedures required by regulations and these instructions, if any of the following events occur:

         o   denial of eligibility,
         o   the claim is not acted upon with reasonable
             promptness,
         o   termination of eligibility or covered services,
         o   suspension of eligibility or covered services, or
         o   reduction of eligibility or covered service


2900.2      Publication And Distribution Of Hearing Procedures (42 CFR 431.206(a)). --Issue and publicize your hearing procedures. The publication and wide distribution of hearing procedures in the form of rules and regulations or a clearly stated pamphlet to appellants, recipients, and other interested groups and individuals helps to emphasize the purposes and importance of the procedure and to inform aggrieved individuals about the existence and use of this procedure. It not only contributes to the fairness and orderliness of the hearing, but also emphasizes the principles of equity and due process throughout the administration of medical assistance.

2900.3    Information And Referral For Legal Services (42 CFR 431.206(b)(3)).--Advise individuals appealing an agency decision of their right to be represented by a person or organization of their choice.  You are not required to provide legal services.  Legal aid societies, neighborhood legal services, lawyers in private practice, and perhaps other sources may be able and willing to provide representation for Medicaid applicants and recipients.  In order to carry out the intent of the regulation, agencies should keep informed about such services and be prepared to advise appellants about them.

Because of the difficulties many recipients have in representing themselves in fair hearings, you have a special responsibility to assist persons in being represented by others and to help establish that such representation is not a violation of State law concerning non-legal representation, in those States where this has been an issue.  Advise the appellant of any legal services which may be available to him (see §2909) and any provisions you have for payment of legal fees for representation at fair hearings.

2900.4    Informing Individuals of their Appeal Rights (42 CFR 431.206).--Notify in writing any applicant or recipient of the right to a hearing and the procedure for requesting a hearing at the time of application and at the time of any action by the agency.  (See §2900.1 defining the action requiring Notice of Appeal Rights.)

You may give written notification on the application form or on other forms you routinely send to applicants and recipients. If you publish an agency pamphlet describing the provisions of your Medicaid program, include an explanation of the applicant's and recipient's appeal rights.

For applicants and recipients not familiar with English, include a translation into a language understood by the applicant or recipient of the appeal rights available to them. This should be done for all written communications with such applicants and recipients. You should also orally explain, in understandable language, the applicant's and recipient's appeal rights at the time of any face to face interview conducted by the agency.

2901.    NOTICE AND OPPORTUNITY FOR A FAIR HEARING

2901.1    Advance Notice of Intent to Terminate, Reduce or Suspend Medicaid (42 CFR 431.211 and 431.213).--

    A.    Advance Notice.

        1.    10-Day Advance Notice.--Whenever you propose to terminate, reduce or suspend Medicaid covered services, mail advance notice of the pending action to the recipient at least 10 days prior to the time of the anticipated action, except as provided in subsections A2 and B.  With respect to eligibility factors known in advance, such as attainment of age 18 or increased hours or wages of employment, (42 CFR 435.112), send the notice even earlier, thus allowing more time to resolve any issue or questions.

03-90    STATE ORGANIZATION AND GENERAL ADMINISTRATION    2901.1(Cont)

    2.    30-Day Advance Notice.--Give an applicant or recipient 30 days advance notice whenever you propose to deny, terminate, reduce, or suspend eligibility or covered services because of data disclosed through a matching program covered under the Computer Matching and Privacy Protection Act of 1988 (P.L. 100-503).

This legislation amended the Privacy Act to establish procedures governing computer matches between Federal source agencies and State agencies.  Adverse action resulting from a covered matching program cannot be taken until the adverse data have been independently verified.  This verification can be satisfied by verification from the source agency or from the applicant or recipient. Independent verification may be done during the advance notice period, except for data covered by 42 CFR 435.952 and 435.955 which must be verified prior to notification.  Where the information involves income or resources, the law requires that at least the following must be verified:

      o    The applicant's/recipient's total income and/or total value of owned assets;

      o    The applicant/recipient has or did have access to the assets or income;

      o    Confirmation of the period of time when the applicant/recipient owned the asset or earned the income.

Before you may deny, suspend, terminate, or reduce benefits to an applicant/recipient as a result of information produced from a matching program, the following conditions must be met:

      o    The applicant/recipient must receive a written notice identifying the adverse data you propose using and the action you propose to take because of this data;

      o    The applicant/recipient must be given 30 days advance notice of the opportunity to contest the data and findings before you may take adverse action; and

      o    You must allow the 30-day period to expire before taking adverse action against the applicant or recipient.

If the individual contests SDX data and alleges receiving an ongoing SSI check, ask the individual to bring in the most recent SSI notice or a copy of the next check as verification.  Continue Medicaid eligibility based on receipt of SSI if the recipient does so. Contact SSA for verification of SDX data only if the recipient contests the data but is completely unable to provide evidence to refute the SDX and you are otherwise unable to verify the SDX data.

   B.    Less Than 10 days Advance Notice.--In the following circumstances advance notice may be reduced or is not necessary. Advance notice may be reduced to 5 days in cases where you have facts indicating action should be taken because of probable fraud by the recipient.

You do not have to send advance notice if:

   o    You have factual information that the recipient has died;

   o    The recipient has stated in writing that he no longer wishes Medicaid or the information he has given requires termination of Medicaid and the recipient knows that is the result of giving the information;

   o    The recipient has been admitted to an institution where he is ineligible under the State Plan for services. For example, in a State which does not provide Medicaid to inpatients over 65 years old, in a mental institution, a recipient admitted to such an institution is not eligible for such services;

   o    The recipient moves to another State (or another county in county administered programs) and has been determined eligible for Medicaid in the new jurisdiction; and

   o    The recipient's whereabouts are unknown. You may determine that the recipient's whereabouts are unknown if mail sent to the recipient is returned as undeliverable.

2901.2    Notice When a Change in Level of Care Occurs.--In the following circumstances send a notice reflecting a change in the level of care an institutionalized recipient receives:

   o    The recipient continues to be a patient of the institution,

   o    The change in level of care was ordered by the recipient's physician, and

   o    The change in level of care is to a lower level of care covered by the program.

If all of the preceeding conditions are met, notice may be sent on the date of action.

If all of the conditions above are not met, send advance notice as required by §2901.1.

2901.3    Opportunity for a Fair Hearing --All applicants and recipients sent a notice as required by §2901.1 may request a Fair Hearing. Except as provided elsewhere in this section grant a timely request for a hearing and render a decision in the name of the agency.

2902.3 (Cont.)    STATE ORGANIZATION AND GENERAL ADMINISTRATION    08-88

In providing an opportunity for a Fair Hearing, regulations at §431.221 require that you must establish a reasonable time period not to exceed 90 days from the date notice of action is mailed to request a hearing.

A period of not less than 20 days after mailing a notice of action ensures that applicants and recipients have sufficient time in which to request a hearing. HCFA considers a period of less than 20 days for appeal as unreasonable, because delays in receipt of the notice provide too little time in which to make a timely appeal.

Make every effort to assist applicants and recipients to exercise their appeal rights.  For example, you may need to help applicants or recipients who do not have anyone else to assist them in preparing for a hearing.  If you provide an informal conference, make it clear to the applicant or recipient that such a conference is not part of the hearing process.

You do not have to grant a hearing if the sole issue being appealed is a State or Federal law or policy, including a change in law or policy adversely affecting some or all applicants or recipients. See §2902.3 for a discussion of the distinction between issues of fact and issues of policy.

2902.    HEARINGS

2902.1    Request for a Hearing--A request for a hearing must be in writing and signed by the applicant or recipient, or the authorized representative of the applicant/recipient.

In the case of authorized representatives, you must have evidence that the individual claiming to represent the applicant/recipient has been authorized to do so.

Oral inquiries about the opportunity to appeal should be treated as requests for appeal for purposes of establishing the earliest possible date for an appeal.

If you provide a conference to applicants or recipients who have been sent notices of action the applicant may request a hearing without first having a conference and such conference may not substitute for the hearing.

Promptly acknowledge every hearing request received.

2902.2    Continuation and Reinstatement of Services Pending a Hearing Decision--

    A.    Required Continuation or Reinstatement.--Continue to provide or reinstate Medicaid services until a hearing decision has been rendered in the following circumstances.

    1.    Continue Services.--If you mail the 10 day or 5 day notice as required and the recipient requests a hearing before the date of action, continue Medicaid services.

08-88        STATE ORGANIZATION AND GENERAL ADMINISTRATION    2902.4

    2.    Reinstate services if:

        o    You take action without the advance notice required;

        o    The recipient's whereabouts are unknown (agency mail is returned as undeliverable) but during the time the recipient is eligible for services the recipient's whereabouts become known, or

        o    The recipient requests a hearing within 10 days of mailing the notice of action; and

        o    You determine that the action results from other than the application of Federal or State law or policy.

    B.    Optional Reinstatement.--You may reinstate services if the recipient requests a hearing not more than 10 days after the date of action.

    C.    When Maintained for Reinstated Services May be Stopped.--You must continue to provide services maintained or reinstated after an appeal until a hearing decision is rendered unless the hearing officer, at the hearing, determines that the sole issue is one of Federal or State law or policy. When the hearing officer determines the appeal is one of law or policy, you may discontinue services but only after promptly informing the recipient in writing that services will be discontinued pending the hearing decision.

2902.3    Dismissal of A Hearing Request.--

    A.    Dismissal.--You may dismiss a request for a hearing when:

        o    The claimant or his representative requests in writing that the request for hearing be withdrawn; or

        o    The claimant abandons his right to a hearing as described in subsection B.

    B.    Abandonment.--The hearing request may be considered abandoned when neither the claimant nor his representative appears at scheduled hearing, and if within a reasonable time (of not less than 10 days) after the mailing of an inquiry as to whether he wishes any further action on his request for a hearing no reply is received.

2902.4    Nature Of The Issue.--Determine whether the appeal involves issues of law or policy, or issues of fact or judgement. The decision will affect whether a hearing is granted and whether Medicaid will be continued pending the hearing decision. The distinction between issues of fact or judgment and issues of State law or agency policy will not usually be difficult to make. Issues of fact or judgement include issues of the application of State law or policy to the facts of the individual situation.

    A.    Issues of Law or Policy.--An example of an issue involving application of agency policy to the individual situation may arise from the use of spenddown. If there is a question whether the formula for computing spenddown was correctly applied in an individual case, it is an issue of fact or judgment and assistance must be continued. If the individual challenges the use of spenddown, he is questioning the policy itself, and assistance would not need to be continued during the fair hearing process.

2902.4 (Cont.)    STATE ORGANIZATION AND GENERAL ADMINISTRATION    08-88

An example of an issue of agency policy is the alleged inadequacy of the State program, e.g., the failure to include eyeglasses or dental care in the services for which recipients are eligible. Such inadequacies are grounds for requesting a fair hearing. However, the agency is not in a position to rule in favor of the appellant without a change in agency policy or, in some instances, in State law. You are not required to continue assistance during appeals of this type.

B.    Issues of Fact or Judgment.--Examples of situations where issues of fact or judgment may arise are:

o    An agency decision of permanent and total disability. There may be a difference of opinion as to whether the condition is such as to justify a finding of disability (team's judgment) as defined in 42 CFR 435.541 or there may be a question as to the "facts" in the medical report; or

o    Whether a father works a sufficient number of hours to exclude the family from being eligible on the basis of excess hours or earnings (42 CFR 435.112).

2902.5    Group Hearings (42 CFR 431.222).--Joint or group hearings when more than one individual protests identical issues of agency policy (if the State grants a hearing in such circumstances) may be economical for the agency and beneficial to the aggrieved individuals. A joint or group hearing makes available to each appellant the opportunity for presenting his case with others when all have the same complaint. For example, a number of recipients may ask for a hearing on the State's decision to delete from coverage a certain drug because it has not been proven effective.

If there is disagreement between agency and appellant as to whether the appeal concerns policy and identical facts or the facts of his personal situation, and thus whether it may be included in a group hearing, the hearing officer makes the decision. When an appellant's request for a fair hearing involves issues in addition to the one serving as a basis for the group hearing, you should sever his appeal from the group and handle separately. Likewise, a claimant scheduled for a group hearing may withdraw and request an individual hearing.

In a group hearing, accord individual appellants the right to make individual presentations and to be represented by their own representatives. Set up procedures to assure an orderly process in a group hearing.

2902.6    Convenience of the Claimant Considered (42 CFR 431.240(a)(1)-- Consider the convenience of the claimant in setting the date, place, and time for the hearing. Give written notice for the claimant with adequate preliminary information about the hearing procedure. The agency has not discharged its responsibility unless it has done what it can to enable a claimant who has requested a hearing to attend the hearing in person and to be represented by a person of his own choosing. There may be instances in which the claimant is housebound, hospitalized or in a nursing home, or lives far from the office in which hearings are usually held. In these and other hardship instances, make special plans, as necessary, for the convenience of the claimant. For instance, the hearing may be held in the claimant's home. You may also conduct the hearing by telephone when the claimant is unable to attend in person. Telephone hearings must follow all of the due process required of in person hearings.

2902.7    Impartiality Of Official Conducting The Hearing (42 CFR 431.240(a)(3)).--The State official or panel conducting the hearing shall not have been connected in any way with the previous actions or decisions on which the appeal is made. For example, a field supervisor who has advised the local agency in the handling of a case would be disqualified from acting as the hearing officer, however a different field supervisor could serve.

2902.8    Claimant's Right To A Different Medical Assessment (42 CFR 431.240(b)).--An appeal on medical issues may involve a challenge to the Medical Review Team's decision regarding disability; or there may be disagreement about the content of reports concerning the appellant's physical or mental condition or the individual's need for medical care requiring prior authorization. When the assessment by a medical authority, other than the one involved in the decision under question, is requested by the claimant and considered necessary by the hearing officer, obtain it at agency expense. The medical source should be one satisfactory to the claimant. The assessment by such medical authority shall be given in writing or by personal testimony as an expert witness and shall be incorporated into the record.

2902.9    Rights Of Claimants During Hearings (42 CFR 431.242).--Provide the appellant or his representative an opportunity to examine all materials to be used at the hearing. Non-record or confidential information which the claimant or his representative does not have the opportunity to see is not made a part of the hearing record or used in a decision on an appeal. If the hearing officer reviews the case record, or other material, including the hearing summary proposal by agency staff, such material must also be made available to the appellant or his representative. The hearing officer must enable the appellant and his witnesses to give all evidence on points at issue and the appellant and his representative to advance arguments without undue interference. Give the appellant the opportunity to confront and cross-examine witnesses at the hearing and to present evidence in rebuttal. Do not use application of the rules for the conduct of the hearing to suppress the appellant's claim. Allow the claimant to present his case in the way he desires. For example, some claimants wish to tell their own story or have a relative or friend present the evidence for them and others may be represented by legal counsel or other spokesman. Make provisions to secure an interpreter when an appellant can't speak English.

2902.10    Prompt, Definitive And Final Action (42 CFR 431.244(f).--The requirement for prompt, definitive, and final administrative action means that all requests for a hearing are to receive prompt attention and will be carried through all steps necessary to completion. The requirement is not met if the State dismisses such a request for any reason other than withdrawal or abandonment of the request by the claimant or as permitted elsewhere in these instructions. Adhere to the time limit of 90 days between the date of the request for the hearing and the date of the final administrative action except where the agency grants a delay at the appellant's request, or when required medical evidence necessary for the hearing can not be obtained within 90 days. In such case the hearing officer may, at his discretion, grant a delay up to 30 days.

## 2903.    HEARING DECISION

2903.1    Basis for Hearing Officer Recommendation, Decision, And Opportunity to Examine Offical Record (42 CFR 431.244).--The hearing officer's recommendation or decision shall be based only on the evidence and testimony introduced at the hearing. The record of the proceedings, which consists of the transcript or recording of the hearing testimony, any exhibits, papers or requests filed in the appeal, including the documents and reasons upon which the determination being appealed is based, and the hearing officer's written recommendation or decision shall be available to the claimant or his representative at a convenient time and at a place accessible to him or his representative, to examine upon request. If any additional material is made part of the hearing record it too shall be made available.

2903.2    Hearing Decision And Notification to Claimant (42 CFR 431.232, 233, 244(b)and(d) and 431.245).--

A.    General.--A conclusive decision in the name of the State agency shall be made by the hearing authority. That authority may be the highest executive officer of the State agency, a panel of agency officials, or an offical appointed for the purpose. No person who has previously participated at any level in the determination upon which the final decision is based may participate in the decision. For example, a person who participated in the original determination being appealed may not participate in the appeal; nor may a person who participated in a local hearing participate in the agency hearing.

The officially designated hearing authority may adopt the recommendations of the hearing officer, or reject them and reach a different conclusion on the basis of the evidence, or refer the matter back to the hearing officer for a resumption of the hearing if the materials submitted are insufficient to serve as basis for a decision except where the appeal involves the issue of disability and SSA has issued a disability determination which is binding on the program. Remanding the case to the local unit for further consideration is not a substitute for "definitive and final administrative action."

B.    Hearing Records.--All hearing recommendations or decisions must be based exclusively on evidence introduced at the hearing. The record must consist only of:

o    The transcript or recording of testimony and exhibits, or an official report containing the substance of what happened at the hearing; and

o    All papers and requests filed during the appeal; and

o    The recommendation or decision of the hearing officer.

C.    Local Evidentiary Hearing--Where you provide a local evidentiary hearing, include the following information in the decision and take the action described.

o    Inform the applicant or recipient of the decision;

o    Inform the applicant or recipient that he has the right to appeal the decision to the State agency within 15 days of mailing the decision;

o    Inform the applicant or recipient of his right to request that the appeal be a de novo hearing, subject to the limit set forth in paragraph A;

08-88    STATE ORGANIZATION AND GENERAL ADMINISTRATION    2903.4

o    The decision shall state the specific reasons for the decision, identify the supporting data, and be issued promptly to the claimant in writing; and

5.    The State shall discontinue services after the decision if it is adverse to the recipient.

D.    State Agency Hearing.--

o    Unless the claimant specifically requests a de novo hearing, the hearing may consist of a review of the local evidentiary hearing, by the agency hearing officer to determine whether the local hearing decision was supported by substantial evidence.

o    A person who participated in the local decision may not participate in the State agency hearing.

o    In the final decision give the specific reasons for the decision, identify the supporting data, and issue it promptly to the claimant in writing.

o    In the notice of decision advise the claimant of the right of judicial review if it is prescribed by State statute specifically authorizing review of agency decisions on the basis of the record of administrative proceedings, or if there is other provision for judicial review under State law.

2903.3    State Agency Responsibility In Carrying Out The Hearing Decision ( 42 CFR 431.244(f)).--

A.    General.--The hearing authority's decision is binding upon the State and Local agencies. You are responsible for assuring that the decision is carried out promptly. Various methods, such as report by the local agency on action taken, or follow-up by State office staff, may be used.

B.    Final Administrative Action.--Section 431.244(f) requires that you take final administrative action within 90 days of the request for hearing. In implementing this regulation it is reasonable to allow additional time to meet this standard when a delay beyond 90 days is due to claimant requests or untimely receipt by the hearing authority of documentation needed to render a decision which had been requested timely. Any delay can not exceed 30 days.

C.    Corrective Action--If the hearing decision is favorable to the claimant, or if the agency decides in favor of the claimant prior to a hearing, promptly take action to reinstate Medicaid eligibility and process any unpaid providers claims within the standard set forth in B.

2903.4    Accessibility Of Hearing Decisions To Local Agencies And The Public (42 CFR 431.244(g)).--Select a method for informing all local public welfare agencies of all hearing decisions and of making such decisions available to all interested members of the general public. The method may provide for a summary presentation. Where several decisions centered around the same question, it is permissible to treat one decision with some detail, and then indicate in a much more abbreviated fashion for each of the subsequent decision that it raises the same question and follows the precedent of the initial case. Such information must be preserved in a manner consistent with requirements for safeguarding information concerning applicants and recipients in 42 CFR 431 Subpart F.

2903.5      Responsibility for Hearings Under Medicaid (431.243).--If the hearing involves an issue of eligibility and the Medicaid agency is not responsible for eligibility determinations, the State agency that is responsible for determining eligibility must participate in the hearing.

The two agencies should work out the precise arrangement between them for conducting such hearings. In doing so, the Medicaid agency may use the hearing process employed by the State agency which made the eligibility determination; the hearing officer in such cases will make a recommendation to the Medicaid agency. That agency is responsible for presenting to the hearing officer the agency's justification for the decision it made, and the evidence upon which it is based.

The decision rendered as a result of a hearing described in this situation will be made in the name of the Medicaid agency. The Medicaid agency is responsible for the implementation of the decision. However, none of the procedures allowed by this section may be used to deny a claimant any of the due process rights contained elsewhere in these instructions.

2904.      REOPENING AND RECOVERY

2904.1      Reopening Final Determinations Of Eligibility.--Reopening a final determination permits the correction of errors in that determination. It is particularly suited to changing a determination which was reasonable when rendered but is now unreasonable because new evidence concerning the determination has been submitted which may alter that determination. However, unrestricted reopening would seriously impair due process, administrative efficiency and that certainty in determinations which applicants and recipients have the right to expect. Consequently, reopening should be permitted only when there is good cause to question the accuracy of a determination. The following discussion sets out procedures which you may wish to follow in designing rules to govern reopening of fair hearing determinations.

    A.    Who May Reopen An Initial, Revised Determination Or Hearing Decision.--You may reopen and revise any determination you have issued within the time limits and for the reasons described below.

    B.    Action Permitting Reopening--

        o    Written request by the applicant, recipient or his representive, within the time limit, alleging good cause for reopening a previously final determination, or

        o    You may, on your own notion, reopen a determination when you have information documenting that the previous determination is incorrect or there is other good cause.

    C.    Definition of Good Cause for Reopening.--

        1. New and Material Evidence.--Any evidence which was not considered when the previous determination was made and which shows facts that may result in a conclusion different from the previous decision, even though the previous determination was entirely resonable when it was made.

It is also possible that the evidence may justify or require that further development be undertaken before making a revised determination.

      2.    Clerical Error.--Any mechanical, computer or human mistakes in mathematical computations. For example, errors in computing resources, income, or spenddown requirements for Medicaid eligibility.

      3.    Error on the Face of the Evidence.--Any error in making a Medicaid determination which causes that determination to be incorrect at the time it is made. For example, evidence is on file to show that the applicant's resources meet the State's standard for eligibility yet the application is denied.

    D.    Time Limit for Reopening.--You may reopen a previously final Medicaid determination within 1 year of that determination when the conditions in paragraph C are met, except when the determination involves fraud. In such cases there is no time limit.

    E.    Reopening at any time.--You may reopen a previously final Medicaid determination at any time if you have evidence that the determination was obtained through fraud.

2904.2    Recovery.--

    A. You may recover from the recipient money you paid for services provided the recipient if:

        o   The services were provided as a result of §2902.2A1, and

        o   The recipient's appeal is unsuccessful.

    B.    Inform the recipient of this provision at the time a hearing is requested if you employ recovery.

**EXHIBIT D**

At an I.A.S. Part 31 of the Supreme
Court of the State of New York, at the
Courthouse located at the Civic Center
in the County of New York, State of New
York, on the $5'$ ~ day of March, 1992

P R E S E N T :

                HON. BEVERLY S. COHEN
                JUSTICE OF THE SUPREME COURT

-----------------------------------------x
BASYA VARSHAVSKY, BARBARA SCOTT,
JANE DOE, and EMILY HEMMERLING on          : Index No. 91-40767
behalf of themselves and all others          (Cohen, J.)
similarly situated,                        :
                                             ORDER GRANTING INTER-
                          Plaintiffs,      : VENTION, CLASS CERTIFI-
                                             CATION AND PRELIMINARY
        -and-                              : INJUNCTIVE RELIEF

ESTELLE GELLER, SYLVIA LEWIS and           :
FLORENCE FINK, ANNA GRZESLO, DONALD
KELLER, THOMASINA WHEELER, DOROTHEA        :
PERLEY, DOROTHY NAZINITSKY and AGNES
TRINKWALDER, on behalf of themselves       :
and all others similarly situated,
                                           :
        Proposed Plaintiff-Intervenors,
                                           :
        -against-
                                           :
CESAR PERALES, as Commissioner of the
New York State Department of Social        :
Services, and MARK LACIVITA, as Acting
Assistant Director, New York State         :
Department of Social Services, Office
of Fair Hearing Administration             :
Administration,
                                           :
                          Defendants.
                                           :
-----------------------------------------x

        Plaintiffs having moved for an Order (1) preliminarily

enjoining defendants from canceling their program of providing

hearings at the home or institutional setting of "homebound"

appellants, (2) certifying a class of all applicants and recipients of public assistance benefits residing in New York State who have requested or will request fair hearings and who, because of mental or physical disabilities, cannot travel to a central fair hearing location without substantial hardship or medical detriment, and (3) granting leave to intervene and temporary restraining orders for various individual plaintiffs; and

Upon reading and filing:

Plaintiffs' order to show cause for class certification and preliminary injunction dated March 12, 1991; plaintiffs' memorandum of law in support of class certification, preliminary injunction and intervention dated March 18, 1991; the order to show cause to intervene Anna Grzeslo and for other relief, dated June 24, 1991; defendants' memorandum of law in opposition to the motion for class certification and preliminary injunction dated July 15, 1991; plaintiffs' reply memorandum of law in support of the motion for intervention class certification and preliminary injunction dated July 31, 1991; the reply affirmation of Valerie Bogart in support of plaintiffs' motion for intervention, class certification and preliminary injunction, verified July 31, 1991; the order to show cause for intervention of Thomasina Wheeler, dated August 1, 1991; defendants' supplemental memorandum of law in opposition to the motion for class certification and preliminary injunction dated August 22, 1991; the affidavit of Henry Pedicone submitted by defendants, verified August 22, 1991;

2

plaintiffs' supplemental reply memorandum of law in support of the motion for class certification and preliminary injunction dated August 28, 1991; the second reply affirmation of Valerie Bogart in support of plaintiffs' request for class certification and preliminary injunction verified August 29, 1991; the supplemental affidavit of Henry Pedicone dated August 28, 1991; the notice of motion for intervention of Dorothy Nazinitsky, Dorothea Perley and Agnes Trinkwalder; and all other papers and proceedings heretofore had in this action, and

Interim or Temporary Restraining Orders having been entered March 15, 1991, May 9, 1991, June 24, 1991, August 1, 1991 and September 12, 1991 and November 1, 1991; and

UPON oral argument on August 1, 1991, August 29, 1991, and September 30, 1991 by Legal Services for the Elderly, Valerie Bogart, of counsel for plaintiffs, and Brooklyn Legal Services Corporation B, Marc Cohan, of counsel for plaintiffs, and by Robert Abrams, Attorney General of the State of New York, Andrea Osborne, for defendants, and due deliberation having been had, and the Court having issued an opinion dated November 20, 1991 and

SUFFICIENT CAUSE APPEARING THEREFORE, it is hereby

ORDERED, that proposed plaintiff intervenors ESTELLE GELLER, SYLVIA LEWIS, FLORENCE FINK, ANA GRZESLO, THOMASINA WHEELER, DOROTHEA PERLEY, DOROTHY NAZINITSKY, and AGNES TRINKWALDER are permitted to intervene in this action and shall be representative of the plaintiff class; and it is further

3

ORDERED, that a class is certified pursuant to Article 9 of the C.P.L.R., consisting of all applicants for and recipients of public assistance benefits residing in New York State:

a)   who have requested or will request administrative hearings, or who would request or would have requested administrative hearings but for transportation difficulties; and

b)   who, because of mental or physical disabilities, could not or cannot travel to or participate in an administrative hearing at a central hearing location without substantial hardship or medical detriment; and

c)   whose hearing either had not been held on or before November 1, 1990, or whose hearing has been held on or after November 1, 1989 and did not result in a fully favorable decision or fully favorable outcome upon remand by defendants to the local agency before, during, or after the hearing; and it is further

ORDERED, plaintiffs' motion for a preliminary injunction is granted, and defendants are enjoined from holding hearings for members of the certified plaintiff class except to the extent set forth in.

**Hearings Without Aid-Continuing Status**

(1)   Within 20 days of the date of this order defendants shall identify all hearings requested by those members of the plaintiff class:

(a)   for which the plaintiff or his or her representative made a "request for home hearing;"

(i)   As used in this Order "home" refers to

4

any site where the appellant is staying or living, permanently or temporarily, including but not limited to the home of the appellant or of a relative or friend, a hospital, nursing home, adult home or any other institution or location. As used herein "home hearing" refers to a hearing held at any such location.

(ii)   As used in this Order, "requests for home hearings" include oral or written requests made with the original hearing request, with an amendment to a pending hearing request, with a request for adjournment made prior to or at a regularly scheduled hearing, or with a request to re-open or vacate a default;

and

(b)   which were requested or are hereafter requested:

(i)   to contest the termination, suspension or reduction in benefits or services, where the appellant does not or will not have "aid continuing" status because she or he requested the hearing more than 10 days after the date of the notice, or

(ii)   to contest the denial of an application for or an increase in benefits, services, equipment or supplies, or for any other issue for which "aid continuing" status would not be provided pursuant to 18 NYCRR § 358-3.6.

and

(c)   which had not been held before November 1, 1990.

5

(2) For all home hearing requests described in
paragraph (1), defendants shall hold a home hearing on or before
March 31, 1992 or within 45 days of the request for such hearing,
whichever date is later, unless prior to that date:

(a) defendants have assigned full "aid
continuing" status effective beginning 45 days after the date of
the hearing request or on September 30, 1991, whichever date is
later, or

(b) each of the issue(s) for which the hearing
was requested has (have) been or is (are) resolved fully in the
plaintiff class member's favor by any of the following:

(i) after conference or redetermination by
the local agency on remand from defendants before the requested
hearing is held or decided, or

(ii) by defendants' decision without a
hearing, or

(iii) by decision after a "speaker-phone
hearing" in accordance with paragraph (5) herein.

(c) For purposes of this order, a decision after
speaker-phone hearing which reverses the contested agency
determination and remands any issue of the hearing to the local
agency for redetermination, conference, or additional
investigation is not "<u>fully favorable</u>" unless the outcome after
remand is fully favorable on all issues. Defendant shall retain
jurisdiction over such decisions and monitor the outcome on
remand. If the outcome is less than fully favorable, defendant

6

shall schedule a home hearing without requiring the class member to request another hearing to contest the less than fully favorable outcome on remand

        (d)   Defendant shall retain jurisdiction over any hearing which it remands in whole or part to the local agency for conference or redetermination before the hearing and monitor the outcome.   If the outcome is less than fully favorable, defendant shall schedule a speaker-phone hearing without requiring the class member to request another hearing to contest the less than fully favorable outcome on remand.

        (3)   Defendants shall reopen those hearings described in paragraph (1) which have been held since November 1, 1990, but which did not result in a fully favorable hearing decision or fully favorable outcome upon remand before, during or after the hearing.   Defendants shall schedule home hearings in these cases according to the procedures in paragraph (2), (4) and (5) of this Order.

        (4)   For all home hearing requests described in paragraph (1) where the appellant is entitled to priority in scheduling pursuant to 18 N.Y.C.R.R. § 358-3.2(b), defendants shall schedule the speaker-phone hearing, and if required by this Order the home hearing, on a priority basis pursuant to 18 N.Y.C.R.R. § 358-3.2(b) and 358-5.2.

        (5)   A "speaker-phone hearing" is a hearing at which the Administrative Law Judge and agency representative participate in person at the central hearing site, the appellant

7

participates by speaker-phone from his or her home, and the appellant's representative, if any, participates at his or her choice of the central hearing site or the appellant's home.

(a) Notice. At least ten days prior to any speaker-phone and/or home hearing, defendants shall send notice of the hearing to the plaintiff and his or her representative, if any.  Said notice shall include notice of the date and time of the hearing, and shall explain procedures for the hearing including how to introduce evidence at the hearing.  Said notice shall also explain that a home hearing will be or is being scheduled if the phone hearing cannot be held or because it could not be held, or because the phone hearing does or did not result in a fully favorable outcome whether by decision or after remand.

(b) Defendants shall ensure that appellants at speaker-phone hearings have a meaningful opportunity to exercise all procedural rights accorded to any hearing appellant by law or regulation including but not limited to those listed in paragraph (8).

(6) Implied home hearing requests. Within 30 days of the date of this order defendants shall identify all hearings requested by those members of the plaintiff class which meet all of the criteria specified in paragraph (1) except that a home hearing was not expressly requested, but instead an oral or written statement was made by or on behalf of the plaintiff to any of defendant's employees indicating that the plaintiff could not travel to the hearing due to physical or mental impairment.

8

(a)   For those hearings identified pursuant to paragraph (6) which have been held and resulted in a decision which is less than fully favorable, defendants shall reopen the decisions.

(b)   Defendants shall schedule a "home" hearing for every plaintiff class member whose hearing is reopened pursuant to paragraph (6)(a) and for every class member identified in paragraph (6) whose hearing has not been held as of the date of this Order.  Said home hearings shall be held according to the same procedures described in paragraphs (2) - (5) except that the time limit for defendants to hold these hearings shall be extended to April 30, 1992 or within 45 days of the request for such hearing, whichever date is later.

### Hearings with Aid-Continuing Status

(7)   Within 20 days of the date of this order defendants shall identify all hearings requested by those members of the plaintiff class:

(a)   which had not been held before November 1, 1990; and

(b)   for which the plaintiff or his or her representative made a "request for home hearing" as defined in paragraph (1)(a) herein; and

(c)   for which the plaintiff has been assigned "aid continuing" status.

(8)   Within thirty days of the date of this Order, defendants shall develop and submit to counsel for the plaintiff

9

class and to the Court proposed procedures for conducting "speaker-phone hearings."  Plaintiffs shall file a response to the proposed procedures within 15 days, after which the Court will approve or modify the procedures.  These procedures shall include, but are not limited to:

(a)  Provisions assuring that case records and/or hearing files are provided to appellants prior to the hearing.

(b)  Provisions assuring that appellants receive, in advance of the hearing, copies of all exhibits to be submitted by the local agency at the hearing.

(c)  Provisions assuring that unrepresented appellants have an opportunity to submit documents for inclusion in the hearing record at or after the hearing by mail or in any other manner.

(d)  Provisions assuring that appellants receive adequate Notice of speaker-phone hearings setting forth the date and time, and explaining the procedures for the "speaker-phone" hearing.

(e)  Provisions assuring that phone hearings be provided only to appellants who can communicate by telephone from their home, considering hearing, physical and speech impairments.

(f)  Provisions assuring that the hearing is fully recorded on tape.

(g)  Provisions assuring that all speakers are identified to the appellant and that appellant can hear each speaker.

10

(h)   Provisions assuring that the appellant can confer with his or attorney privately, and that discussions off the record can be held.

(i)   Provisions assuring that interpreters will translate the testimony of and proceedings for non-English speaking appellants.

(j)   Provisions assuring that if appellants do not answer the phone, that the phone hearing will be rescheduled.

(k)   Provisions assuring that the preliminary statement of the appellant's rights given by the Administrative Law Judge at all hearings is adapted to the special circumstances of the speaker-phone hearing.

(l)   Provisions assuring that "speaker-phone" equipment is available at each hearing site and has been tested, and that the use and function of this equipment will be monitored systematically.

(9)   Defendants are enjoined from scheduling, holding, or dismissing any hearing as abandoned, or terminating the "aid-continuing" status of any hearing for plaintiffs identified pursuant to paragraph (7) at a site other than the appellant's home except as provided in this paragraph.

(a)   After the Court has approved the procedures developed pursuant to paragraph (7), defendants may hold hearings in accordance with the procedures described in paragraphs (2), (4) and (5) of this order pertaining to "speaker-phone" and "home" hearings, except that the time limits set forth in

11

paragraph (2) do not apply to hearings with "aid continuing" status.

(b)   Defendants shall reopen those hearings described in paragraph (7) which have been held since November 1, 1990 and did not result in a fully favorable decision or fully favorable outcome after remand before, during or after the hearing, and restore aid-continuing status.  Defendants shall schedule home hearings in these cases according to the procedures in paragraphs (2), (4) and (5).

(c)   For all hearings held pursuant to this paragraph defendants shall order that "aid continuing" status continue through:

(i)   decision rendered after a home hearing, if a decision after a "speaker-phone" hearing is less than "fully favorable" as defined in paragraph (1)(c) herein, or if the speaker-phone hearing is not or cannot be held for any reason including but not limited to the appellant's lack of a telephone or inability to communicate by phone; or

(ii)   confirmation that a remand of any hearing issue by defendants to the local agency, whether before the phone hearing or by decision after the phone hearing, resulted in a fully favorable outcome.

> **Defendants to Provide Information Regarding Availability of Phone and Home Hearings to Class Members who Request Hearings**

(10)   Defendants shall ask every person who calls to request a hearing or adjournment whether the appellant is able to

12

travel to the hearing by public transportation.  If the person requesting the hearing states that the appellant cannot travel by public transportation, defendants shall advise the caller of the following:

(a)   That the appellant is entitled to reimbursement or, if necessary, advance payment for travel by taxi, car service, ambulette or other appropriate means;

(b)   The procedures for obtaining such reimbursement or advance payment;

(c)   The procedures for arranging travel by special transportation including Access-A-Ride;

(d)   The availability of a speaker-phone hearing if the appellant is unable to travel;

(e)   The availability of a home hearing if a speaker-phone hearing is not feasible or if the speaker-phone hearing results in an adverse decision.

(11)   Defendants shall call or write every person who submits a written request for hearing or adjournment indicating that the appellant is unable to travel to the hearing or requesting a home hearing.  The defendants shall advise the appellant and his or her representative of the following:

(a)   That the appellant is entitled to reimbursement or, if necessary, advance payment for travel by taxi, car service, ambulette or other appropriate means;

(b)   The procedures for obtaining such reimbursement or advance payment;

13

(c)    The procedures for arranging travel by special transportation including Access-A-Ride;

(d)    The availability of a speaker-phone hearing if the appellant is unable to travel;

(e)    The availability of a home hearing if a speaker-phone hearing is not feasible or if the speaker-phone hearing results in an adverse decision.

**Notice to Counsel for Plaintiff Class**

(12)   Within 30 days of the date of this Order, defendants shall provide counsel for the plaintiff class copies of the following information for all hearings and class members described in paragraphs (1), (6) and (7) of this Order:

(a)    Copy of the hearing request form(s) and/or the following information:

(i)    the name, address, phone number and case number of the appellant and of any representative;

(ii)    the date of the hearing request;

(iii)    the date of the home hearing request, if different, and if the home hearing request was implied rather than express as described in paragraph (6), the form of the request;

(iv)    the fair hearing number;

(v)    the issue of the hearing and type of benefit;

(vi)    the aid continuing status.

(b)    Documents verifying the status and outcome of

14

the hearing or remand, including:

(i)    the date(s) of any hearings scheduled or held and type of hearing (speaker-phone/home),

(ii)    a copy of any speaker-phone hearing decision which defendant claims is "favorable" so that no home hearing is required.

(iii)    a copy of any determination on pre- or post-hearing remand, if defendant claims that any hearing issue(s) was or were resolved on remand so that no speaker-phone or home hearing on the issue(s) is or are required.

(13)    Defendants are ordered to notify counsel for plaintiffs in writing at intervals of 60 days of the date of this Order of:

(a)    any new home hearing requests received or identified which defendants had not reported, including all information listed in par. (12);

(b)    the current hearing and aid-continuing status of each case reported pursuant to par. (12) and (13)(a);

(c)    the outcome of any speaker-phone hearing, decision without hearing, home hearing, or remand to the local agency before, during or after the hearing for each case reported pursuant to par. (12) and (13)(a);

(d)    all steps taken to comply with the provisions of this Order, including all written materials issued in conjunction with compliance with this Order.  Such written materials shall include but are not limited to internal

15

memoranda, instructions, training materials, manual or manual sections, and copies of any forms and form letters.

(14)  <u>Notice to Class Members</u>. Except as provided in this Order, notice to class members is not required.

(15)  Nothing herein shall be construed by defendants to limit or reduce plaintiffs' fair hearing rights conferred by federal and state law and regulations, or to preclude individual members of the plaintiff class from seeking relief other than that provided herein on alternate grounds.

S O   O R D E R E D

_____
J. S. C.

16

**EXHIBIT E**

OAH-4482/30B (Rev. 6/10)

From: **New York State Office of Temporary and Disability Assistance**        **TRANSMITTAL OF FAIR HEARING DECISION**
    **P.O. Box 1930**                                    **TO SOCIAL SERVICES AGENCY**
    **Albany, NY 12201 - 1930**

---

Fair Hearing #: **8419213H**                     Primary Agency: **New York City MAP**
Hearing Date:   **03/08/22**                        Appellant: **MARGARET BUCKLEY**
Decision Date:  **03/11/22**                                  **1725 BRENTWOOD RD, BLDG 4, 2ND FL**
Case #:         **00022260368A**                            **BRENTWOOD, NY 11717-7558**
Category/Subcategory: **MA/HOLD**           Representative: **P. O. O. R.**
                                                             **EUGENE DOYLE**
                                                             **102-12 164TH AVENUE**
                                                             **HAMILTON BEACH, NY 11414-4401**
                                             Other Agencies: **NYS6**

---

```
**************************************
*                                    *
* ENCLOSED IS THE DECISION RENDERED  *
*     IN THE ABOVE FAIR HEARING      *
*                                    *
**************************************
```

    If this decision reverses or does not affirm the action intended to be taken by your Agency and directs your Agency to take certain other action, you must do so and so notify the Appellant forthwith (as quickly as possible). The Appellant has been advised to contact the state's Compliance Unit if compliance is not effected within ten (10) days after receipt of this decision.

    In accordance with the provisions of Title 18 NYCRR, if this decision indicates that the social services official has misapplied provisions of the law, State regulation, or such official's own state-approved policy, the social services official is required to review other cases with similar facts for conformity with the principles and findings in the decision.

    If you have questions about directions contained in this decision, please contact:

        New York State Office of Temporary and Disability Assistance
        Office of Administrative Hearings
        Compliance Unit
        P. O. Box 1930
        Albany NY 12201 - 1930

The following agencies have been notified of the issuance of this fair hearing decision:

HRA MAP FAIR HEARINGS,DAVID SPEGAL
HRA MAP FAIR HEARINGS,

**STATE OF NEW YORK**　　　　　　　　　　**REQUEST:** March 3, 2022
**DEPARTMENT OF HEALTH**　　　　　　　　**CASE #:** 00022260368A
　　　　　　　　　　　　　　　　　　　　**CENTER #:** HCSP
　　　　　　　　　　　　　　　　　　　　**FH #:** 8419213H

---

|  |  |
|---|---|
| In the Matter of the Appeal of | : |
| | : **DECISION** |
| Margaret Buckley | **AFTER** |
| | : **FAIR** |
| | **HEARING** |
| from a determination by the New York City | : |
| Department of Social Services | |
| | : |

---

## JURISDICTION

Pursuant to Section 22 of the New York State Social Services Law (hereinafter Social Services Law) and Part 358 of Title 18 NYCRR (hereinafter Regulations), a fair hearing was held on March 8, 2022, in New York City, before Thelma Lee, Administrative Law Judge.  The following persons appeared at the hearing:

　　　　For the Appellant

　　　Gene Doyle, Appellant's representative (via telephone).
　　　Karina Palmieri, LMSW (via telephone)

　　　　For the Social Services Agency

　　　No appearance or Waiver of Appearance

## ISSUE

Was the Agency's   failure to act on the Appellant's   2/17/22 application for  an Immediate Need of Medical Assistance correct?

## FINDINGS OF FACT

An opportunity to be heard having been afforded to all interested parties and evidence having been taken and due deliberation having been had, it is hereby found that:

1.　　　The Appellant, age 88, is a single individual and a member of the religious congregation of the Sisters of St. Joseph.  She is currently residing at St. Joseph College Convent, located in Brooklyn, New York along with six other sisters of  this religious order.
2.　　　On 2/17/22 an application for an Immediate Need for Medical Assistance was submitted on the Appellant's behalf to the Agency .

FH# 8419213H

3.      A Medical Request for Home Care (M-11q) signed on 2/14/22 by Dr. Nga Yu Cheung was submitted to the Agency.  The doctor stated that the Appellant suffers from interstitial lung disease, frailty, hypothyroidism, osteoporosis and macular degeneration and required PCS assistance with her activities of daily livings (ADLs) due to her severe fragility and age- related debility.  The Appellant can ambulate with a rollator with decreased endurance.

4.      The application indicated that the Appellant's monthly income was $795.00 from Social Security, $51.06 per month from the Teachers Insurance and Annuity Association of America (TIAA)  She was not in receipt of any resources and has coverage under the Medicare Savings Program as a Qualified Medicare Beneficiary.

5.      The following documentation  was also provided on 2/17/22: the Immediate Need Transmittal to the Home Care Services for the Appellant, the Medicaid application and Supplemental A signed by the Appellant on 2/3/22, the Attestation for Immediate Need signed by the Appellant on 2/17/22 and authorization for the release of Health Information pursuant to HIPPA.

6.       The cover letter to the application   requested that the Agency determine the Appellant's MA eligibly as soon as possible but no later than 2/24/22 that is seven days from the receipt   of the accompanying documents.  There was  a request for the Agency to evaluate and determine the PCS eligibility and scope of care as soon as possible but no later than 3/2/22 or 12 days from receipt of these documents.

7.      The Agency did not notify the Appellant that the 2/17/22 Immediate Needs application was incomplete within four days of the receipt of the application and eligibility documents as required by the regulations governing expedited Medical Assistance applications..

8.      The Agency has not commenced or completed a medical/nursing/social assessment of the Appellant's personal care needs within 12 days of the receipt of the 2/17/22 application as described at 16 OHIP/ ADM 02 pertaining to Immediate Need for Medical Assistance.

9.      The Appellant requested this fair hearing on March 3, 2022.

10.     This Decision is related to Fair Hearing #8419223R, which pertains to the Agency's Home Care Unit and it's failure to process this identical 2/17/22 Immediate Needs for Medical Assistance application.

**APPLICABLE LAW**

Regulations at 18 NYCRR 358-3.7(a) provide that an appellant has the right to examine the contents of the case record at the fair hearing.  At the fair hearing, the agency is required to provide complete copies of its documentary evidence to the hearing officer.  In addition, such documents must be provided to the appellant and appellant's authorized representative where such documents were not provided otherwise to the appellant or appellant's authorized

3

FH# 8419213H

representative in accordance with 18 NYCRR 358-3.7.  18 NYCRR 358-4.3(a).  In addition, a representative of the agency must appear at the hearing along with the case record and a written summary of the case and be prepared to present evidence in support of its determination.  18 NYCRR 358-4.3(b).  Except as otherwise established in law or regulation, in fair hearings concerning the discontinuance, reduction or suspension of Medical Assistance or Services, the Agency must establish that its actions were correct.  18 NYCRR 358-5.9(a).

Section 358-3.3(a)(1) of the Regulations provides that, except as provided in subdivision (d) a recipient has a right to a timely and adequate notice when a social services agency:

    (i)    proposes to take any action to discontinue, suspend, or reduce a Public Assistance grant, Medical Assistance Authorization or services.

An adequate notice is a notice of action, an adverse action notice or an action taken notice which sets forth the action that the Agency proposes to take or is taking, and if a single notice is used for all affected assistance, benefits or services, the effect of such action, if any, on a recipient's other assistance, benefits or services.

Section 505.14(a)(1) of the Regulations defines "Personal Care Services" to mean assistance with nutritional and environmental support functions and personal care functions, as specified in 18 NYCRR §§ 505.14(a)(5)(i)(a) and 505.14(a)(5)(ii)(a). Such services must be essential to the maintenance of the patient's health and safety in his or her own home, as determined by the social services district in accordance with Section 505.14; ordered by the attending physician; based on an assessment of the patient's needs and of the appropriateness and cost-effectiveness of services specified in 18 NYCRR § 505.14(b)(3)(iv); provided by a qualified person in accordance with a plan of care; and supervised by a registered professional nurse.

Immediate Needs Personal Care Services.  16 OHIP/ADM-02 provides the following:

I.    Purpose:  The purpose of this Office of Health Insurance Programs Administrative Directive (OHIP ADM) is to advise local departments of social services (LDSS) of the requirements to provide expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for Personal Care Services (PCS) or Consumer Directed Personal Assistance Services (CDPAS). The directive also advises local districts of expedited procedures for determining PCS or CDPAS eligibility for Medicaid applicants and recipients with an immediate need for either service. The directive defines an applicant/recipient (A/R) with an immediate need for PCS or CDPAS, outlines the requirements that need to be met in order for local districts to perform an expedited eligibility determination and details the time frame for the assessment for PCS or CDPAS.

II.    Background:  Social Services Law Section 366-a(12) requires the Department to develop expedited procedures for social services districts' determinations of Medicaid eligibility for applicants with an immediate need for PCS or CDPAS. The statute requires that the final Medicaid eligibility determination be made within seven days of the date of a complete Medicaid application. For Medicaid applicants with immediate needs for PCS or CDPAS who are

FH# 8419213H

determined eligible for Medicaid and PCS or CDPAS, such services are required to be provided pending the individual's enrollment in a managed care plan or managed long-term care plan. For individuals who are either exempt or excluded from enrollment in a managed care or managed long-term care plan, personal care services are provided under the Personal Care Services Program. Department regulations at 18 NYCRR Sections 505.14(b) and 505.28 were amended to set forth the requirements for an expedited determination of Medicaid eligibility for Medicaid applicants with an immediate need for PCS or CDPAS and expedited procedures for PCS or CDPAS assessments for Medicaid applicants and recipients with immediate needs for either service.

These new regulations do not establish a new "immediate needs" program. As noted above, they instead require expedited Medicaid eligibility determinations and expedited PCS and CDPAS assessment determinations for Medicaid applicants and recipients with immediate needs for either service.

III.     Program Implications:

A.     Medicaid Applicants:

Pursuant to the provisions of the newly adopted regulations, districts are required to perform expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for PCS or CDPAS [18 NYCRR Sections 505.14(b)(7), for PCS, and 505.28(k), for CDPAS]. A Medicaid applicant with an immediate need for PCS or CDPAS may be either an individual not currently authorized for any type of Medicaid coverage, or an individual authorized only for community-based coverage that does not include coverage for long-term care services such as personal care services. These individuals must provide the district with a physician's order for PCS or CDPA and a signed attestation, on a form required by the Department, attesting that: they have an immediate need for PCS or CDPAS; they have no informal caregivers; they are not receiving needed assistance from a home care services agency; they have no third party insurance or Medicare benefits available to pay for needed assistance; and adaptive or specialized equipment or supplies are not in use to meet, or cannot meet, their need for assistance.

As soon as possible, but no later than four calendar days after receipt of a Medicaid application or request for an increase in Medicaid coverage to include community-based long-term care, together with the physician's order and signed attestation of immediate need, the district is required to determine whether the Medicaid applicant has submitted a complete Medicaid application. The four-day period starts the day after receipt of the three documents (application/request, physician's order, and signed attestation form). A complete Medicaid application means a signed Medicaid application and all documentation necessary for the district to determine the applicant's Medicaid eligibility. If the applicant has not submitted a complete Medicaid application, the district must notify the applicant of the additional documentation that the applicant must provide and the date by which the applicant must provide the documentation.

FH# 8419213H

Once a complete Medicaid application is received, the district must determine Medicaid eligibility within seven calendar days and send notification to the applicant. The seven-day period starts the day after all documentation is received.

For purposes of the eligibility determination, an applicant who would otherwise be required to document his or her accumulated resources may attest to the current value of any real property and to the current dollar amount of any bank accounts. After the determination of Medicaid eligibility, if the district has information inconsistent with the information attested to by the applicant, and the inconsistency is material to the individual's Medicaid eligibility, the district will request documentation adequate to verify resources.

Concurrent with the determination of Medicaid eligibility for a Medicaid applicant with an immediate need for PCS or CDPAS, the district must determine whether the applicant would be eligible for PCS or CDPAS, if determined financially and otherwise eligible for Medicaid [505.14(b)(7)(iv); 505.28(k)(4)].

As soon as possible but no later than twelve calendar days after receipt of a complete Medicaid application, the district must obtain or complete a social assessment and nursing assessment and determine whether the Medicaid applicant, if determined eligible for Medicaid, would be eligible for PCS or CDPAS and, if so, the amount and duration of services that would be authorized. To perform the PCS or CDPAS assessment, the district must follow the applicable regulatory requirements in Section 505.14, for PCS, or 505.28, for CDPAS, except that no referral to the local professional director ("LPD") is required in 24-hour cases or in any other case in which the regulations otherwise require such referrals to the LPD. In no event shall PCS or CDPAS be authorized unless the Medicaid applicant is determined to be eligible for Medicaid, including Medicaid coverage of community-based long-term care services.

Administrative Directive 16 ADM-02 - Immediate Need for Personal Care Services and Consumer Directed Personal Assistance Services - provides expedited procedures for social services districts' determinations of Medicaid eligibility for applicants with an immediate need for PCS or CDPAS, in pertinent part:

III. PROGRAM IMPLICATIONS

A. Medicaid Applicants Pursuant to the provisions of the newly adopted regulations, districts are required to perform expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for PCS or CDPAS [18 NYCRR Sections 505.14(b)(7), for PCS, and 505.28(k), for CDPAS]. A Medicaid applicant with an immediate need for PCS or CDPAS may be either an individual not currently authorized for any type of Medicaid coverage, or an individual authorized only for community-based coverage that does not include coverage for long-term care services such as personal care services. These individuals must provide the district with a physician's order for PCS or CDPA and a signed attestation, on a form required by the Department, attesting that: they have an immediate need for PCS or CDPAS; they have no informal caregivers; they are not receiving needed assistance from a home care services agency; they have no third party

FH# 8419213H

insurance or Medicare benefits available to pay for needed assistance; and adaptive or specialized equipment or supplies are not in use to meet, or cannot meet, their need for assistance………

For purposes of the eligibility determination, an applicant who would otherwise be required to document his or her accumulated resources may attest to the current value of any real property and to the current dollar amount of any bank accounts. After the determination of Medicaid eligibility, if the district has information inconsistent with the information attested to by the applicant, and the inconsistency is material to the individual's Medicaid eligibility, the district will request documentation adequate to verify resources…….

IV. REQUIRED ACTION

A. Attestation of Immediate Need and Information Regarding Expedited Procedures to be Provided to Medicaid Applicants

Written information regarding the expedited Medicaid eligibility determination process and expedited PCS or CDPAS assessment process must be provided to Medicaid applicants. A new informational notice entitled "Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services: Informational Notice and Attestation Form" (OHIP-0103) (see the Attachment to this directive), is to be used for this notification and includes the required attestation of immediate need form. The OHIP-0103 must be provided with the Access NY Health Insurance Application (DOH4220) and also when Access NY Supplement A (DOH-4495A or DOH-5178A, for local districts using the Asset Verification System) is required to be completed for a Medicaid recipient requesting Medicaid coverage of community-based long-term care. The Department will include information about immediate need for PCS or CDPAS on its website along with information about the procedures and forms for requesting these services. Individuals completing the combined Temporary Assistance and Medicaid application (LDSS-2921) are instructed to complete the Access NY Health Insurance Application (DOH-4220) if they are in need of PCS or CDPAS services.

The informational notice entitled "Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services: Informational Notice and Attestation Form" (OHIP-0103) includes the A/R's attestation that there is an immediate need for Personal Care Services or Consumer Directed Personal Assistance Services and that:

• no voluntary informal caregivers are available, able and willing to provide or continue to provide needed assistance to the applicant;
• no home care services agency is providing needed assistance to the applicant;
• adaptive or specialized equipment or supplies including but not limited to bedside commodes, urinals, walkers or wheelchairs, are not in use to meet, or cannot meet the applicant's need for assistance; and
• third party insurance or Medicare benefits are not available to pay for needed assistance.

FH# 8419213H

The attestation of immediate need must be signed by either the Medicaid A/R, the A/R's spouse or a legal representative of the A/R……..

 B. Expedited Medicaid Eligibility Determination Procedures for Medicaid Applicants with an Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services

When an applicant with an immediate need for PCS or CDPAS submits a signed Access NY Health Insurance Application (DOH-4220), or Access NY Supplement A (DOH4495A or DOH-5178A, as applicable) for recipients not currently authorized for Medicaid coverage of community-based long-term care services, together with a signed attestation of immediate need form (OHIP-0103) and a physician's order, the applicant meets the criteria for an expedited eligibility determination for Medicaid coverage of PCS or CDPAS and an expedited assessment for PCS or CDPAS, as appropriate.

For Medicaid applicants with an immediate need for PCS or CDPAS, the district must first determine the Medicaid category of the individual…….

 For applicants in the SSI-related category of assistance (age 65 and older, certified blind and certified disabled), resource documentation is required to determine Medicaid eligibility for long-term care services. For purposes of expediting the eligibility determination process, an SSI-related applicant with an immediate need for PCS or CDPAS may attest to the current value of any real property (including the equity value of the homestead) and the current value of any bank accounts. All other resource documentation requirements for Medicaid coverage of long-term care services remain the same.

Married applicants with a community spouse who is not applying for or in receipt of services through a managed long term care plan, waiver services under section 1915(c) of the Social Security Act, or nursing home care, and who may qualify for services through a managed long term care plan, shall have eligibility determined under the spousal impoverishment provisions pending the outcome of the assessment for managed long term care and enrollment into a managed long term care plan. If an assessment subsequently determines the individual ineligible for managed long term care, the district must re-determine the individual's Medicaid eligibility and send a timely notice of any change in eligibility.

Based on the applicant's category, the district must determine if the application and documentation submitted with the application, includes all the information and documentation necessary for a complete eligibility determination. As soon as possible, but no later than four calendar days after the receipt of the application and accompanying documentation, the district must notify the applicant of any additional documentation that the applicant must provide and the date by which the applicant must provide the documentation……..

 Once a complete Medicaid application is submitted, including all information and

FH# 8419213H

documentation necessary for a complete eligibility determination, the local district must make a Medicaid eligibility determination and send the appropriate eligibility notice as soon as possible, but no later than seven calendar days after receipt of the complete application. The seven-day period starts the day after receipt of the complete application…….

If after an eligibility determination is made, the local district has information that is inconsistent with the attested information and the inconsistency is relevant to the individual's Medicaid eligibility, the local district shall request documentation to verify the inconsistency in question. If upon further review of the provided information, the individual is determined to be ineligible for Medicaid or the individual does not provide the requested documentation within the required time period, proper notice regarding the individual's ineligibility must be sent with 10-day notice of the change. The district may pursue any Medicaid incorrectly paid back to the date of the expedited eligibility determination. This includes situations where following an assessment for managed long term care, a married individual is determined to not qualify for managed long term services and the change from spousal impoverishment budgeting to SSI-related budgeting no longer qualifies the individual for Medicaid. Timely notice must be provided to the individual. If the individual remains eligible for Medicaid but with a spenddown liability, such coverage change is to be made prospectively following 10-day notification of the change (the first day of the month following the 10-day notice period). In this situation, when pursuing a recovery for Medicaid incorrectly paid back to the date of the expedited eligibility determination, the recovery amount is limited to the amount of the individual's spenddown liability.

Upon submission of a Medicaid application by an individual with an immediate need for personal care, a referral for a PCS/CDPAS assessment is to be made immediately. The usual district procedures are followed to refer the individual for a PCS/CDPAS assessment……..

B.    **Medicaid Recipients**:

Department regulations at 18 NYCRR Section 505.14(b)(8), for PCS, and 505.28(l), for CDPAS, also provide for expedited procedures for Medicaid recipients with an immediate need for PCS or CDPAS. **A Medicaid recipient with an immediate need for PCS or CDPAS includes** an individual who is exempt or excluded from enrollment in a managed long term care plan or managed care entity, or **an individual who is not exempt or excluded from enrollment in such a plan or provider but who has not yet been enrolled**.

The Medicaid recipient could be an individual who was formerly a Medicaid applicant in immediate need of PCS or CDPAS and who was determined, pursuant to the expedited Medicaid eligibility determination and PCS or CDPAS assessment procedures outlined above, to be eligible for Medicaid as well as PCS or CDPAS. **The district must promptly notify such recipients of the amount and duration of PCS or CDPAS to be authorized and <u>issue an authorization for, and arrange for the provision of such services, which must be provided as expeditiously as possible.</u> For recipients who are not exempt or excluded from enrollment in a managed care entity, the district would authorize services to be provided until the recipient is enrolled in such an entity.**

FH# 8419213H

The Medicaid recipient could also be any other Medicaid recipient who is eligible for Medicaid coverage of community-based long-term care services and who seeks an expedited PCS or CDPAS assessment because the recipient believes he or she is in immediate need of such services. Such individuals must present a physician's order for services and a signed attestation on the Department required form that they have an immediate need for PCS or CDPAS. **The local district is required, as soon as possible but no later than twelve calendar days after receipt of the physician's order and the signed attestation form, to assess the recipient's eligibility for PCS or CDPAS and determine whether the recipient is eligible for services and, if so, the amount and duration of services to be authorized**.

To perform the PCS or CDPAS assessment, the district must follow the applicable regulatory requirements in Section 505.14, for PCS, or 505.28, for CDPAS, except that no referral to the local professional director ("LPD") is required in 24-hour cases or in any other case in which the regulations otherwise require such referrals to the LPD.

**If the recipient is determined to be eligible for PCS or CDPAS, the district must promptly notify the recipient of the amount and duration of PCS or CDPAS to be authorized and issue an authorization for, and arrange for the provision of such services, which must be provided as expeditiously as possible. <u>For recipients who are not exempt or excluded from enrollment in a managed care entity, the district would authorize services to be provided until the person is enrolled in such an entity</u>**. Recipients who are determined to be ineligible for PCS or CDPAS must also be notified of the denial of services and of their right to request a fair hearing to review the denial.

Nursing assessments may be performed by additional registered professional nurses. Nursing assessments may be performed by a certified home health agency nurse; a nurse employed by a voluntary or proprietary agency under contract with the district for the provision of services; as well as a nurse employed by, or under contract with, the district.

A person who is sixty-five years of age or older, blind or disabled who is not in receipt of Public Assistance and has income or resources which exceed the standards of the Federal Supplemental Security Income Program (SSI) but who otherwise is eligible for SSI may be eligible for Medical Assistance, provided that such person meets certain financial and other eligibility requirements under the Medical Assistance Program.  Social Services Law Section 366.1(c)(2).

To determine eligibility, an applicant's or recipient's net income must be calculated.  In addition, resources are compared to the applicable resource level.  Net income is derived from gross income by deducting exempt income and allowable deductions.  The result - net income - is compared to the statutory "standard of need" set forth in Social Services Law Section 366.2(a)(7) and 18 NYCRR Subpart 360-4.  If an applicant's or recipient's net income is less than or equal to the applicable monthly standard of need, and resources are less than or equal to the applicable standard, full Medical Assistance coverage is available.

FH# 8419213H

The amount by which net income exceeds the standard of need is considered "excess income". If the applicant or recipient has any excess income, he/she must incur bills for medical care and services equal to or greater than that excess income to become eligible for Medical Assistance. In such instances Medical Assistance coverage may be available for the medical costs which are greater than the excess income. If a person has expenses for in-patient hospital care, the excess income for a period of six months shall be considered available for payment. For other medical care and services the excess income for the month or months in which care or services are given shall be considered available for payment of such care and services. 18 NYCRR 360-4.1, 360-4.8.

Administrative Directive 87 ADM-4 provides detailed instructions regarding the appropriate application of medical bills to offset excess income so that an individual can become eligible for Medical Assistance. This offsetting process is called "spenddown". Said Directive further provides that whenever a spenddown is indicated, the Agency is required to include a copy of the letter "Explanation of the Excess Income Program" along with the Notice to the recipient whenever an acceptance, intended change, denial, or discontinuance indicates a spenddown liability situation. Administrative Directive 87 ADM-4 provides that some over-the-counter drugs and medical supplies such as bandages and dressings may be applied to offset determined excess income if they have been ordered by a doctor or are medically necessary. Bills for cosmetics and other non-medical items may not be so applied.

## **DISCUSSION**

The Agency was duly notified of the date and time of this fair hearing. Despite this, , the Agency failed to submit an Agency Packet and/or Fair Hearing Representative to appear at this hearing.

Eugene Doyle, the Appellant's representative asserted that the Agency's failure to act on the 2/17/22 Immediate Needs for Medical Assistance is a constructive denial of that application.

Prior to this hearing, the Appellant relied on the "advocate inquiry process" of the Agency to resolve this matter through an approval of MA coverage with community based long term care effective 11/1/2021 (three months prior to the 2/17/22 application) and an authorization for personal care services after the appropriate nursing, social and medical assessments.

By e-mail dated 3/4/22, the Agency's Supervisor of the Advocate/Liaison/Rivera notified the Appellant that the Brooklyn CASA would contact the Appellant to resolve this matter to withdraw the hearing.

As of this hearing, the Appellant has not received any further notifications from the Agency.

Mr. Doyle asserted that the Agency has failed to comply with the mandatory timelines for the Appellant's 2/17/22 Immediate Needs application. The Agency is required by 16

11

FH# 8419213H

OHIP/ADM-02 to advise an applicant within 4 calendar days after the receipt of signed Medical Assistance application, Attestation of Immediate Needs and physician's order if the application is complete. No later than 7 days after the receipt of the application and documents, the agency must determine if the applicant is eligible for Medicaid including community based long term care coverage.  A completed social/medical/nursing assessment must be completed no later than 12 days after the submission of these documents.

The Agency should have computed the Appellant's spenddown, based on her eligibility as an SSI-related individual using the income figures cited in her application of $795.00 per month in SSA and $51.06 TIAA without additional verification and the assertion that she had no resources.

General Information System (GIS) GIS 20 MA/04, whose purpose is to inform local departments of social services (LDSS) of several changes to support Medicaid eligibility and enrollment during the Coronavirus (COVID-19) outbreak. These changes are effective immediately and shall remain in effect for the duration of the COVID-19 public health emergency, states in part:

MEDICAID APPLICATIONS
•         • Self-attestation - Districts must allow self-attestation for all eligibility criteria, except for immigration/identity status (see below for citizenship and immigration status). This includes when processing an initial application, a request for increased coverage and redeterminations.

Based on the above, the Agency's failure to determine Medicaid eligibility based on  the Appellant's 2/17/22 Immediate Needs application is not correct and reversed.

The Appellant is also seeking a directive to the Agency to authorize  an interim temporary personal care services authorization for eight hours  seven days per week  to maintain her health and safety pending the Agency's nursing/medical/social assessment for these services. The Appellant resides in a residence shared by six other Sisters of St. Joseph.  Two of these sisters are in receipt of Medical Assistance and receive the services of a "shared aide".  The Appellant is willing to accept the assistance of this "shared aide" that is already in place.

Several prior Fair Hearing Decisions (FH #2763833N, 3250386Y, 3448691L, 427889R and 4691096K were attached as Exhibits in support of the directive for a temporary interim authorization.

However, the above decisions with directives for interim personal care services pertain to Medicaid recipients, not applicants.  16 OHIP/ ADM-02, which governs the procedures for Immediate Needs for Medical Assistance states that a referral should be made for medical/social/ nursing assessment should be made once the appropriate documentation is received.  A temporary interim assistance authorization is not mentioned in 16 ADM-02 as a remedy for non-compliance.  The Appellant's representative  urged that this temporary authorization is required because the Appellant is at risk for falls, which is standalone supervision or safety monitoring not an identified personal care task.

FH# 8419213H

Mr. Doyle urged that the Appellant is alert but hard of hearing and that she would be able to participate in a hearing pursuant to Varshavsky v. Perales, if necessary. As of this hearing, this case has not been coded as requiring a home hearing by the Office of Administrative Hearings.

At this hearing and confirmed in a Memorandum of Law, the Appellant cited a 5/4/21 revised Judgement for Lisnitzer v. Zucker 11-CV-04641 (E.D.N.Y.) that states : When an appellant contests the denial of adequacy of eligibility for Medicaid benefits (Medicaid) and requests a fair hearing concerning a Medicaid eligibility determination rendered by a local social services district or agency, a "final administrative action" as described in 42 CFR Section 431.244(f) entails a final determination of Medicaid eligibility and must be made ordinarily within 90 days of the fair hearing request. The failure to do so violates 42 USC Section 1396a(a)(3) as construed and implemented by 42 CFR section 431.244(f). The 90 days deadline shall not apply to members of the certified class in Varshavsky v. Perales 202 AD 2d. 155 (1st Department 1994) who have been awarded aid continuing Medicaid benefits pending the outcome of their fair hearings appeals. Such final determinations may be included in the decision after fair hearing or *issued by the local district or agency after further administrative action as directed by the fair hearing decision*.

Accordingly, the Agency is directed to process the Appellant's 2/17/22 Immediate Needs application for Medical Assistance, which includes determining eligibility for Medical Assistance and community long term care, evaluating the need for personal care services and advising the Appellant in writing of its determination, forthwith pursuant to 16 OHIP/ ADM-02 and render a final administrative determination pursuant to the the revised judgement for Lisnitzer v.Zucker as cited in the Appellant's Memorandum of Law..

**DECISION AND ORDER**

The Agency's failure to process the Appellant's 2/17/22 Immediate Needs for Medical Assistance was not correct and is reversed.

1.  The Agency is directed to take "final administrative action" pursuant to Lisnitzer v. Zucker 11-CV-04641 (E.D.N.Y.) and process the 2/17/22 Immediate Needs application pursuant to 16 OHIP/ADM 02 forthwith.

DATED:  Albany, New York
        03/11/2022                     NEW YORK STATE
                                       DEPARTMENT OF HEALTH

                             By

                                Commissioner's Designee

# EXHIBIT F

OAH-4482/30B (Rev. 6/10)

From:  **New York State Office of Temporary and Disability Assistance**          **TRANSMITTAL OF FAIR HEARING DECISION**
      **P.O. Box 1930**                                                                                          **TO SOCIAL SERVICES AGENCY**
      **Albany, NY 12201 - 1930**

---

Fair Hearing #: **8419223R**                    Primary Agency: **New York City OHC**
Hearing Date:  **03/08/22**                        Appellant: **MARGARET BUCKLEY**
Decision Date: **03/11/22**                                    **1725 BRENTWOOD RD, BLDG 4, 2ND FL**
Case #:        **00022260368A**                                **BRENTWOOD, NY 11717-7558**
Category/Subcategory: **MA/HOLD**               Representative: **P. O. O. R.**
                                                               **EUGENE DOYLE**
                                                               **102-12 164TH AVENUE**
                                                               **HAMILTON BEACH, NY 11414-4401**
                                               Other Agencies: **NYS6**

---

```
*************************************
*                                   *
* ENCLOSED IS THE DECISION RENDERED *
*     IN THE ABOVE FAIR HEARING     *
*                                   *
*************************************
```

    If this decision reverses or does not affirm the action intended to be taken by your Agency and directs your Agency to take certain other action, you must do so and so notify the Appellant forthwith (as quickly as possible). The Appellant has been advised to contact the state's Compliance Unit if compliance is not effected within ten (10) days after receipt of this decision.

    In accordance with the provisions of Title 18 NYCRR, if this decision indicates that the social services official has misapplied provisions of the law, State regulation, or such official's own state-approved policy, the social services official is required to review other cases with similar facts for conformity with the principles and findings in the decision.

    If you have questions about directions contained in this decision, please contact:

             New York State Office of Temporary and Disability Assistance
             Office of Administrative Hearings
             Compliance Unit
             P. O. Box 1930
             Albany NY 12201 - 1930

The following agencies have been notified of the issuance of this fair hearing decision:

HRA MAP FAIR HEARINGS,ANN MARIE SCALIA
HRA MAP FAIR HEARINGS,
HRA MAP FAIR HEARINGS,DIRECTOR NADINE LOPEZ-FLORES
HRA MAP FAIR HEARINGS,DAVID SPEGAL
HRA MAP FAIR HEARINGS,HRA MAP FAIR HEARINGS
LISA FARLEY, NYS DOH,BUREAU OF MANAGED LONG TERM CARE

**STATE OF NEW YORK**
**DEPARTMENT OF HEALTH**

**REQUEST:** March 3, 2022
**CASE #:** 00022260368A
**CENTER #:** HCSP
**FH #:** 8419223R

_____

|  |  |
|---|---|
| In the Matter of the Appeal of | : |
|  | :   **DECISION** |
| Margaret Buckley | **AFTER** |
|  | :   **FAIR** |
|  | **HEARING** |
| from a determination by the New York City | : |
| Department of Social Services | |
|  | : |

_____

## JURISDICTION

Pursuant to Section 22 of the New York State Social Services Law (hereinafter Social Services Law) and Part 358 of Title 18 NYCRR (hereinafter Regulations), a fair hearing was held on March 8, 2022, in New York City, before Thelma Lee, Administrative Law Judge.  The following persons appeared at the hearing:

For the Appellant

Gene Doyle, Appellant's representative (via telephone).
Karina Palmieri, LMSW (via telephone)

For the Social Services Agency

No appearance or Waiver of Appearance

## ISSUE

Was the Agency's   failure to act on the Appellant's   2/17/22 application for  an Immediate Need of Medical Assistance correct?

## FINDINGS OF FACT

An opportunity to be heard having been afforded to all interested parties and evidence having been taken and due deliberation having been had, it is hereby found that:

1.        The Appellant, age 88, is a single individual and a member of the religious congregation of the Sisters of St. Joseph.  She is currently residing at St. Joseph College Convent, located in Brooklyn, New York along with six other sisters of  this religious order.

FH# 8419223R

    2.      On 2/17/22 an application for an Immediate Need for Medical Assistance was submitted on the Appellant's behalf to the Agency .

    3.      A Medical Request for Home Care (M-11q) signed on 2/14/22 by Dr. Nga Yu Cheung was submitted to the Agency.  The doctor stated that the Appellant suffers from interstitial lung disease, frailty, hypothyroidism, osteoporosis and macular degeneration and required PCS assistance with her activities of daily livings (ADLs) due to her severe fragility and age- related debility.  The Appellant can ambulate with a rollator with decreased endurance.

    4.      The application indicated that the Appellant's monthly income was $795.00 from Social Security, $51.06 per month from the Teachers Insurance and Annuity Association of America (TIAA)  She was not in receipt of any resources and has coverage under the Medicare Savings Program as a Qualified Medicare Beneficiary.

    5.      The following documentation  was also provided on 2/17/22: the Immediate Need Transmittal to the Home Care Services for the Appellant, the Medicaid application and Supplemental A signed by the Appellant on 2/3/22, the Attestation for Immediate Need signed by the Appellant on 2/17/22 and authorization for the release of Health Information pursuant to HIPPA.

    6.       The cover letter to the application   requested that the Agency determine the Appellant's MA eligibly as soon as possible but no later than 2/24/22 that is seven days from the receipt   of the accompanying documents.  There was  a request for the Agency to evaluate and determine the PCS eligibility and scope of care as soon as possible but no later than 3/2/22 or 12 days from receipt of these documents.

    7.      The Agency did not notify the Appellant that the 2/17/22 Immediate Needs application was incomplete within four days of the receipt of the application and eligibility documents as required by the regulations governing expedited Medical Assistance applications..

    8.      The Agency has not commenced or completed a medical/nursing/social assessment of the Appellant's personal care needs within 12 days of the receipt of the 2/17/22 application as described at 16 OHIP/ ADM 02 pertaining to Immediate Need for Medical Assistance.

    9.      The Appellant requested this fair hearing on March 3, 2022.

## APPLICABLE LAW

    Regulations at 18 NYCRR 358-3.7(a) provide that an appellant has the right to examine the contents of the case record at the fair hearing.  At the fair hearing, the agency is required to provide complete copies of its documentary evidence to the hearing officer.  In addition, such documents must be provided to the appellant and appellant's authorized representative where such documents were not provided otherwise to the appellant or appellant's authorized representative in accordance with 18 NYCRR 358-3.7.  18 NYCRR 358-4.3(a).  In addition, a

FH# 8419223R

representative of the agency must appear at the hearing along with the case record and a written summary of the case and be prepared to present evidence in support of its determination. 18 NYCRR 358-4.3(b). Except as otherwise established in law or regulation, in fair hearings concerning the discontinuance, reduction or suspension of Medical Assistance or Services, the Agency must establish that its actions were correct. 18 NYCRR 358-5.9(a).

Section 358-3.3(a)(1) of the Regulations provides that, except as provided in subdivision (d) a recipient has a right to a timely and adequate notice when a social services agency:

(i)    proposes to take any action to discontinue, suspend, or reduce a Public Assistance grant, Medical Assistance Authorization or services.

An adequate notice is a notice of action, an adverse action notice or an action taken notice which sets forth the action that the Agency proposes to take or is taking, and if a single notice is used for all affected assistance, benefits or services, the effect of such action, if any, on a recipient's other assistance, benefits or services.

Section 505.14(a)(1) of the Regulations defines "Personal Care Services" to mean assistance with nutritional and environmental support functions and personal care functions, as specified in 18 NYCRR §§ 505.14(a)(5)(i)(a) and 505.14(a)(5)(ii)(a). Such services must be essential to the maintenance of the patient's health and safety in his or her own home, as determined by the social services district in accordance with Section 505.14; ordered by the attending physician; based on an assessment of the patient's needs and of the appropriateness and cost-effectiveness of services specified in 18 NYCRR § 505.14(b)(3)(iv); provided by a qualified person in accordance with a plan of care; and supervised by a registered professional nurse.

Immediate Needs Personal Care Services. 16 OHIP/ADM-02 provides the following:

I.    Purpose:  The purpose of this Office of Health Insurance Programs Administrative Directive (OHIP ADM) is to advise local departments of social services (LDSS) of the requirements to provide expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for Personal Care Services (PCS) or Consumer Directed Personal Assistance Services (CDPAS). The directive also advises local districts of expedited procedures for determining PCS or CDPAS eligibility for Medicaid applicants and recipients with an immediate need for either service. The directive defines an applicant/recipient (A/R) with an immediate need for PCS or CDPAS, outlines the requirements that need to be met in order for local districts to perform an expedited eligibility determination and details the time frame for the assessment for PCS or CDPAS.

II.    Background:  Social Services Law Section 366-a(12) requires the Department to develop expedited procedures for social services districts' determinations of Medicaid eligibility for applicants with an immediate need for PCS or CDPAS. The statute requires that the final Medicaid eligibility determination be made within seven days of the date of a complete Medicaid application. For Medicaid applicants with immediate needs for PCS or CDPAS who are determined eligible for Medicaid and PCS or CDPAS, such services are required to be provided

FH# 8419223R

pending the individual's enrollment in a managed care plan or managed long-term care plan. For individuals who are either exempt or excluded from enrollment in a managed care or managed long-term care plan, personal care services are provided under the Personal Care Services Program. Department regulations at 18 NYCRR Sections 505.14(b) and 505.28 were amended to set forth the requirements for an expedited determination of Medicaid eligibility for Medicaid applicants with an immediate need for PCS or CDPAS and expedited procedures for PCS or CDPAS assessments for Medicaid applicants and recipients with immediate needs for either service.

These new regulations do not establish a new "immediate needs" program. As noted above, they instead require expedited Medicaid eligibility determinations and expedited PCS and CDPAS assessment determinations for Medicaid applicants and recipients with immediate needs for either service.

III.    Program Implications:

A.    Medicaid Applicants:

Pursuant to the provisions of the newly adopted regulations, districts are required to perform expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for PCS or CDPAS [18 NYCRR Sections 505.14(b)(7), for PCS, and 505.28(k), for CDPAS]. A Medicaid applicant with an immediate need for PCS or CDPAS may be either an individual not currently authorized for any type of Medicaid coverage, or an individual authorized only for community-based coverage that does not include coverage for long-term care services such as personal care services. These individuals must provide the district with a physician's order for PCS or CDPA and a signed attestation, on a form required by the Department, attesting that: they have an immediate need for PCS or CDPAS; they have no informal caregivers; they are not receiving needed assistance from a home care services agency; they have no third party insurance or Medicare benefits available to pay for needed assistance; and adaptive or specialized equipment or supplies are not in use to meet, or cannot meet, their need for assistance.

As soon as possible, but no later than four calendar days after receipt of a Medicaid application or request for an increase in Medicaid coverage to include community-based long-term care, together with the physician's order and signed attestation of immediate need, the district is required to determine whether the Medicaid applicant has submitted a complete Medicaid application. The four-day period starts the day after receipt of the three documents (application/request, physician's order, and signed attestation form). A complete Medicaid application means a signed Medicaid application and all documentation necessary for the district to determine the applicant's Medicaid eligibility. If the applicant has not submitted a complete Medicaid application, the district must notify the applicant of the additional documentation that the applicant must provide and the date by which the applicant must provide the documentation.

5

FH# 8419223R

Once a complete Medicaid application is received, the district must determine Medicaid eligibility within seven calendar days and send notification to the applicant. The seven-day period starts the day after all documentation is received.

For purposes of the eligibility determination, an applicant who would otherwise be required to document his or her accumulated resources may attest to the current value of any real property and to the current dollar amount of any bank accounts. After the determination of Medicaid eligibility, if the district has information inconsistent with the information attested to by the applicant, and the inconsistency is material to the individual's Medicaid eligibility, the district will request documentation adequate to verify resources.

Concurrent with the determination of Medicaid eligibility for a Medicaid applicant with an immediate need for PCS or CDPAS, the district must determine whether the applicant would be eligible for PCS or CDPAS, if determined financially and otherwise eligible for Medicaid [505.14(b)(7)(iv); 505.28(k)(4)].

As soon as possible but no later than twelve calendar days after receipt of a complete Medicaid application, the district must obtain or complete a social assessment and nursing assessment and determine whether the Medicaid applicant, if determined eligible for Medicaid, would be eligible for PCS or CDPAS and, if so, the amount and duration of services that would be authorized. To perform the PCS or CDPAS assessment, the district must follow the applicable regulatory requirements in Section 505.14, for PCS, or 505.28, for CDPAS, except that no referral to the local professional director ("LPD") is required in 24-hour cases or in any other case in which the regulations otherwise require such referrals to the LPD. In no event shall PCS or CDPAS be authorized unless the Medicaid applicant is determined to be eligible for Medicaid, including Medicaid coverage of community-based long-term care services.

Administrative Directive 16 ADM-02 - Immediate Need for Personal Care Services and Consumer Directed Personal Assistance Services - provides expedited procedures for social services districts' determinations of Medicaid eligibility for applicants with an immediate need for PCS or CDPAS, in pertinent part:

III. PROGRAM IMPLICATIONS

A. Medicaid Applicants Pursuant to the provisions of the newly adopted regulations, districts are required to perform expedited Medicaid eligibility determinations for Medicaid applicants who have an immediate need for PCS or CDPAS [18 NYCRR Sections 505.14(b)(7), for PCS, and 505.28(k), for CDPAS]. A Medicaid applicant with an immediate need for PCS or CDPAS may be either an individual not currently authorized for any type of Medicaid coverage, or an individual authorized only for community-based coverage that does not include coverage for long-term care services such as personal care services. These individuals must provide the district with a physician's order for PCS or CDPA and a signed attestation, on a form required by the Department, attesting that: they have an immediate need for PCS or CDPAS; they have no informal caregivers; they are not receiving needed assistance from a home care services agency; they have no third party

FH# 8419223R

insurance or Medicare benefits available to pay for needed assistance; and adaptive or specialized equipment or supplies are not in use to meet, or cannot meet, their need for assistance………

 For purposes of the eligibility determination, an applicant who would otherwise be required to document his or her accumulated resources may attest to the current value of any real property and to the current dollar amount of any bank accounts. After the determination of Medicaid eligibility, if the district has information inconsistent with the information attested to by the applicant, and the inconsistency is material to the individual's Medicaid eligibility, the district will request documentation adequate to verify resources…….

 IV. REQUIRED ACTION

 A. Attestation of Immediate Need and Information Regarding Expedited Procedures to be Provided to Medicaid Applicants

Written information regarding the expedited Medicaid eligibility determination process and expedited PCS or CDPAS assessment process must be provided to Medicaid applicants. A new informational notice entitled "Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services: Informational Notice and Attestation Form" (OHIP-0103) (see the Attachment to this directive), is to be used for this notification and includes the required attestation of immediate need form. The OHIP-0103 must be provided with the Access NY Health Insurance Application (DOH4220) and also when Access NY Supplement A (DOH-4495A or DOH-5178A, for local districts using the Asset Verification System) is required to be completed for a Medicaid recipient requesting Medicaid coverage of community-based long-term care. The Department will include information about immediate need for PCS or CDPAS on its website along with information about the procedures and forms for requesting these services. Individuals completing the combined Temporary Assistance and Medicaid application (LDSS-2921) are instructed to complete the Access NY Health Insurance Application (DOH-4220) if they are in need of PCS or CDPAS services.

 The informational notice entitled "Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services: Informational Notice and Attestation Form" (OHIP-0103) includes the A/R's attestation that there is an immediate need for Personal Care Services or Consumer Directed Personal Assistance Services and that:

• no voluntary informal caregivers are available, able and willing to provide or continue to provide needed assistance to the applicant;
• no home care services agency is providing needed assistance to the applicant;
• adaptive or specialized equipment or supplies including but not limited to bedside commodes, urinals, walkers or wheelchairs, are not in use to meet, or cannot meet the applicant's need for assistance; and
• third party insurance or Medicare benefits are not available to pay for needed assistance.

FH# 8419223R

The attestation of immediate need must be signed by either the Medicaid A/R, the A/R's spouse or a legal representative of the A/R……..

B. Expedited Medicaid Eligibility Determination Procedures for Medicaid Applicants with an Immediate Need for Personal Care Services/Consumer Directed Personal Assistance Services

When an applicant with an immediate need for PCS or CDPAS submits a signed Access NY Health Insurance Application (DOH-4220), or Access NY Supplement A (DOH4495A or DOH-5178A, as applicable) for recipients not currently authorized for Medicaid coverage of community-based long-term care services, together with a signed attestation of immediate need form (OHIP-0103) and a physician's order, the applicant meets the criteria for an expedited eligibility determination for Medicaid coverage of PCS or CDPAS and an expedited assessment for PCS or CDPAS, as appropriate.

For Medicaid applicants with an immediate need for PCS or CDPAS, the district must first determine the Medicaid category of the individual…….

For applicants in the SSI-related category of assistance (age 65 and older, certified blind and certified disabled), resource documentation is required to determine Medicaid eligibility for long-term care services. For purposes of expediting the eligibility determination process, an SSI-related applicant with an immediate need for PCS or CDPAS may attest to the current value of any real property (including the equity value of the homestead) and the current value of any bank accounts. All other resource documentation requirements for Medicaid coverage of long-term care services remain the same.

Married applicants with a community spouse who is not applying for or in receipt of services through a managed long term care plan, waiver services under section 1915(c) of the Social Security Act, or nursing home care, and who may qualify for services through a managed long term care plan, shall have eligibility determined under the spousal impoverishment provisions pending the outcome of the assessment for managed long term care and enrollment into a managed long term care plan. If an assessment subsequently determines the individual ineligible for managed long term care, the district must re-determine the individual's Medicaid eligibility and send a timely notice of any change in eligibility.

Based on the applicant's category, the district must determine if the application and documentation submitted with the application, includes all the information and documentation necessary for a complete eligibility determination. As soon as possible, but no later than four calendar days after the receipt of the application and accompanying documentation, the district must notify the applicant of any additional documentation that the applicant must provide and the date by which the applicant must provide the documentation……..

Once a complete Medicaid application is submitted, including all information and

FH# 8419223R

documentation necessary for a complete eligibility determination, the local district must make a Medicaid eligibility determination and send the appropriate eligibility notice as soon as possible, but no later than seven calendar days after receipt of the complete application. The seven-day period starts the day after receipt of the complete application…….

If after an eligibility determination is made, the local district has information that is inconsistent with the attested information and the inconsistency is relevant to the individual's Medicaid eligibility, the local district shall request documentation to verify the inconsistency in question. If upon further review of the provided information, the individual is determined to be ineligible for Medicaid or the individual does not provide the requested documentation within the required time period, proper notice regarding the individual's ineligibility must be sent with 10-day notice of the change. The district may pursue any Medicaid incorrectly paid back to the date of the expedited eligibility determination. This includes situations where following an assessment for managed long term care, a married individual is determined to not qualify for managed long term services and the change from spousal impoverishment budgeting to SSI-related budgeting no longer qualifies the individual for Medicaid. Timely notice must be provided to the individual. If the individual remains eligible for Medicaid but with a spenddown liability, such coverage change is to be made prospectively following 10-day notification of the change (the first day of the month following the 10-day notice period). In this situation, when pursuing a recovery for Medicaid incorrectly paid back to the date of the expedited eligibility determination, the recovery amount is limited to the amount of the individual's spenddown liability.

Upon submission of a Medicaid application by an individual with an immediate need for personal care, a referral for a PCS/CDPAS assessment is to be made immediately. The usual district procedures are followed to refer the individual for a PCS/CDPAS assessment……..

B.   **Medicaid Recipients**:

Department regulations at 18 NYCRR Section 505.14(b)(8), for PCS, and 505.28(l), for CDPAS, also provide for expedited procedures for Medicaid recipients with an immediate need for PCS or CDPAS. **A Medicaid recipient with an immediate need for PCS or CDPAS includes** an individual who is exempt or excluded from enrollment in a managed long term care plan or managed care entity, or **an individual who is not exempt or excluded from enrollment in such a plan or provider but who has not yet been enrolled**.

The Medicaid recipient could be an individual who was formerly a Medicaid applicant in immediate need of PCS or CDPAS and who was determined, pursuant to the expedited Medicaid eligibility determination and PCS or CDPAS assessment procedures outlined above, to be eligible for Medicaid as well as PCS or CDPAS. **The district must promptly notify such recipients of the amount and duration of PCS or CDPAS to be authorized and** <u>issue an authorization for, and arrange for the provision of such services, which must be provided as expeditiously as possible.</u> **For recipients who are not exempt or excluded from enrollment in a managed care entity, the district would authorize services to be provided until the recipient is enrolled in such an entity.**

FH# 8419223R

The Medicaid recipient could also be any other Medicaid recipient who is eligible for Medicaid coverage of community-based long-term care services and who seeks an expedited PCS or CDPAS assessment because the recipient believes he or she is in immediate need of such services. Such individuals must present a physician's order for services and a signed attestation on the Department required form that they have an immediate need for PCS or CDPAS. **The local district is required, as soon as possible but no later than twelve calendar days after receipt of the physician's order and the signed attestation form, to assess the recipient's eligibility for PCS or CDPAS and determine whether the recipient is eligible for services and, if so, the amount and duration of services to be authorized**.

To perform the PCS or CDPAS assessment, the district must follow the applicable regulatory requirements in Section 505.14, for PCS, or 505.28, for CDPAS, except that no referral to the local professional director ("LPD") is required in 24-hour cases or in any other case in which the regulations otherwise require such referrals to the LPD.

**If the recipient is determined to be eligible for PCS or CDPAS, the district must promptly notify the recipient of the amount and duration of PCS or CDPAS to be authorized and issue an authorization for, and arrange for the provision of such services, which must be provided as expeditiously as possible. <u>For recipients who are not exempt or excluded from enrollment in a managed care entity, the district would authorize services to be provided until the person is enrolled in such an entity</u>**. Recipients who are determined to be ineligible for PCS or CDPAS must also be notified of the denial of services and of their right to request a fair hearing to review the denial.

Nursing assessments may be performed by additional registered professional nurses. Nursing assessments may be performed by a certified home health agency nurse; a nurse employed by a voluntary or proprietary agency under contract with the district for the provision of services; as well as a nurse employed by, or under contract with, the district.

A person who is sixty-five years of age or older, blind or disabled who is not in receipt of Public Assistance and has income or resources which exceed the standards of the Federal Supplemental Security Income Program (SSI) but who otherwise is eligible for SSI may be eligible for Medical Assistance, provided that such person meets certain financial and other eligibility requirements under the Medical Assistance Program.  Social Services Law Section 366.1(c)(2).

To determine eligibility, an applicant's or recipient's net income must be calculated.  In addition, resources are compared to the applicable resource level.  Net income is derived from gross income by deducting exempt income and allowable deductions.  The result - net income - is compared to the statutory "standard of need" set forth in Social Services Law Section 366.2(a)(7) and 18 NYCRR Subpart 360-4.  If an applicant's or recipient's net income is less than or equal to the applicable monthly standard of need, and resources are less than or equal to the applicable standard, full Medical Assistance coverage is available.

FH# 8419223R

The amount by which net income exceeds the standard of need is considered "excess income". If the applicant or recipient has any excess income, he/she must incur bills for medical care and services equal to or greater than that excess income to become eligible for Medical Assistance. In such instances Medical Assistance coverage may be available for the medical costs which are greater than the excess income. If a person has expenses for in-patient hospital care, the excess income for a period of six months shall be considered available for payment. For other medical care and services the excess income for the month or months in which care or services are given shall be considered available for payment of such care and services. 18 NYCRR 360-4.1, 360-4.8.

Administrative Directive 87 ADM-4 provides detailed instructions regarding the appropriate application of medical bills to offset excess income so that an individual can become eligible for Medical Assistance. This offsetting process is called "spenddown". Said Directive further provides that whenever a spenddown is indicated, the Agency is required to include a copy of the letter "Explanation of the Excess Income Program" along with the Notice to the recipient whenever an acceptance, intended change, denial, or discontinuance indicates a spenddown liability situation. Administrative Directive 87 ADM-4 provides that some over-the-counter drugs and medical supplies such as bandages and dressings may be applied to offset determined excess income if they have been ordered by a doctor or are medically necessary. Bills for cosmetics and other non-medical items may not be so applied.

## **DISCUSSION**

The Agency was duly notified of the date and time of this hearing. Despite this**,** the Agency failed to submit an Agency Packet and there was no appearance by a Fair Hearing Representative.

Eugene Doyle, the Appellant's representative asserted that the Agency's failure to act on the 2/17/22 Immediate Needs for Medical Assistance is a constructive denial of that application.

Prior to this hearing, the Appellant relied on the "advocate inquiry process" of the Agency to resolve this matter through an approval of MA coverage with community based long term care effective 11/1/2021 (three months prior to the 2/17/22 application) and an authorization for personal care services after the appropriate nursing, social and medical assessments.

By e-mail dated 3/4/22, the Agency's Supervisor of the Advocate/Liaison/Rivera notified the Appellant that the Brooklyn CASA would contact the Appellant to resolve this matter to withdraw the hearing.

As of this hearing, the Appellant has not received any further notifications from the Agency.

Mr. Doyle asserted that the Agency has failed to comply with the mandatory timelines for the Appellant's 2/17/22 Immediate Needs application. The Agency is required by 16

FH# 8419223R

OHIP/ADM-02 to advise an applicant within 4 calendar days after the receipt of signed Medical Assistance application, Attestation of Immediate Needs and physician's order if the application is complete. No later than 7 days after the receipt of the application and documents, the agency must determine if the applicant is eligible for Medicaid including community based long term care coverage.  A completed social/medical/nursing assessment must be completed no later than 12 days after the submission of these documents.

The Agency should have computed the Appellant's spenddown, based on her eligibility as an SSI-related individual using the income figures cited in her application of $795.00 per month in SSA and $51.06 TIAA without additional verification and the assertion that she had no resources.

General Information System (GIS) GIS 20 MA/04, whose purpose is to inform local departments of social services (LDSS) of several changes to support Medicaid eligibility and enrollment during the Coronavirus (COVID-19) outbreak. These changes are effective immediately and shall remain in effect for the duration of the COVID-19 public health emergency, states in part:

MEDICAID APPLICATIONS
•        • Self-attestation - Districts must allow self-attestation for all eligibility criteria, except for immigration/identity status (see below for citizenship and immigration status). This includes when processing an initial application, a request for increased coverage and redeterminations.

Based on the above, the Agency's failure to determine Medicaid eligibility based on  the Appellant's 2/17/22 Immediate Needs application is not correct and reversed.

The Appellant is also seeking a directive to the Agency to authorize  an interim temporary personal care services authorization for eight hours  seven days per week  to maintain her health and safety pending the Agency's nursing/medical/social assessment for these services. The Appellant resides in a residence shared by six other Sisters of St. Joseph.  Two of these sisters are in receipt of Medical Assistance and receive the services of a "shared aide".  The Appellant is willing to accept the assistance of this "shared aide" that is already in place.

Several prior Fair Hearing Decisions (FH #2763833N, 3250386Y, 3448691L, 427889R and 4691096K were attached as Exhibits in support of the directive for a temporary interim authorization.

However, the above decisions with directives for interim personal care services pertain to Medicaid recipients, not applicants.  16 OHIP/ ADM-02, which governs the procedures for Immediate Needs for Medical Assistance states that a referral should be made for medical/social/ nursing assessment should be made once the appropriate documentation is received.  A temporary interim assistance authorization is not mentioned in 16 ADM-02 as a remedy for non-compliance.  The Appellant's representative  urged that this temporary authorization is required because the Appellant is at risk for falls, which is standalone supervision or safety monitoring not an identified personal care task.

12

FH# 8419223R

Mr. Doyle urged that the Appellant is alert but hard of hearing and that she would be able to participate in a hearing pursuant to Varshavsky v. Perales, if necessary. As of this hearing, this case has not been coded as requiring a home hearing by the Office of Administrative Hearings.

At this hearing and confirmed in a Memorandum of Law, the Appellant cited a 5/4/21 revised Judgement for Lisnitzer v. Zucker 11-CV-04641 (E.D.N.Y.) that states : When an appellant contests the denial of adequacy of eligibility for Medicaid benefits (Medicaid) and requests a fair hearing concerning a Medicaid eligibility determination rendered by a local social services district or agency, a "final administrative action" as described in 42 CFR Section 431.244(f) entails a final determination of Medicaid eligibility and must be made ordinarily within 90 days of the fair hearing request. The failure to do so violates 42 USC Section 1396a(a)(3) as construed and implemented by 42 CFR section 431.244(f). The 90 days deadline shall not apply to members of the certified class in Varshavsky v. Perales 202 AD 2d. 155 (1st Department 1994) who have been awarded aid continuing Medicaid benefits pending the outcome of their fair hearings appeals. Such final determinations may be included in the decision after fair hearing or *issued by the local district or agency after further administrative action as directed by the fair hearing decision*.

Accordingly, the Agency is directed to process the Appellant's 2/17/22 Immediate Needs application for Medical Assistance, which includes determining eligibility for Medical Assistance and community long term care, evaluating the need for personal care services and advising the Appellant in writing of its determination, forthwith pursuant to 16 OHIP/ ADM-02 and render a final administrative determination pursuant to the the revised judgement for Lisnitzer v.Zucker as cited in  the Appellant's Memorandum of Law..

## DECISION AND ORDER

The Agency's failure to process the Appellant's 2/17/22 Immediate Needs for Medical Assistance was not correct and is reversed.

1.   The Agency is directed to take  "final administrative action" pursuant to Lisnitzer v. Zucker 11-CV-04641 (E.D.N.Y.)  and process the 2/17/22 Immediate Needs application pursuant to 16 OHIP/ADM 02 forthwith

DATED:   Albany, New York
03/11/2022                              NEW YORK STATE
                                                DEPARTMENT OF HEALTH

                                   By

                                   Commissioner's Designee