UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

------------------------------------------------------------------------X

MARGARET M. BUCKLEY, CSJ,
individually and on behalf of all
others similarly situated,

Plaintiff,

**<u>MEMORANDUM & ORDER</u>**
22-cv-01436 (JMA) (ARL)

-against-

MARY T. BASSETT, M.D., as
Commissioner of the New York
State Department of Health; and
DANIEL W. TIETZ, as Commissioner
of the Office of Temporary and
Disability Assistance of the New York
State Department of Family Assistance,

**FILED**
**CLERK**

4:32 pm, Mar 01, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Defendants.

------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

This putative class action lawsuit takes aim at New York State's administrative fair hearing system for Medicaid appeals.  In challenging the State's fair hearing operations, Plaintiff Margaret M. Buckley, CSJ, ("Plaintiff") seeks declaratory and injunctive relief against Defendants Mary T. Bassett, M.D., in her official capacity as Commissioner of the New York State Department of Health ("DOH"), and Daniel W. Tietz, in his official capacity as Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA") (collectively, "Defendants").

Before the Court is (i) Defendants' motion to dismiss Plaintiff's Complaint, and (ii) Gloria Agnese, CSJ's ("Movant") motion to intervene in the action.  For the below reasons, Defendants' motion to dismiss is GRANTED and Movant's motion to intervene is DENIED.

# I.  BACKGROUND

## A.  Statutory and Regulatory Framework.

Medicaid is a cooperative federal-state program designed to assist needy individuals and families "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1.  States opt into the program, but once a state chooses to participate, it must comply with the requirements of Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396 et seq., and with regulations promulgated by the Secretary of the United States Department of Health and Human Services ("HHS"), 42 C.F.R. pts. 430–56.  HHS has published a State Medicaid Manual interpreting the requirements.  See Lisnitzer v. Zucker, 983 F.3d 578, 580 (2d Cir. 2020).

To receive federal funding for Medicaid, a state must submit a Medicaid state plan ("MSP") to HHS for approval.  See 42 U.S.C. §§ 1396-1, 1396a(b), 1396b; 42 C.F.R. §§ 430.10–.25.  That plan must designate "a single State agency to administer or to supervise the administration of the plan." 42 U.S.C. § 1396a(a)(5).  If a state chooses—as it may—to administer Medicaid through its various political subdivisions, a single state agency has the responsibility to ensure local conformity with state and federal rules, regulations, and policies.  See id. § 1396a(a)(1); 42 C.F.R. § 431.10.

New York State administers Medicaid through 58 local social services districts, one for the New York City Human Resources Administration ("HRA") and one for each of the 57 counties outside of New York City.  See N.Y. Soc. Serv. Law §§ 61, 365(1).  In its MSP, New York designates the state Department of Health ("DOH") as the single state agency responsible for supervising the administration of Medicaid in New York.  See N.Y. Office of Mgmt. & Budget, State Plan Under Title XIX of the Social Security Act: Medicaid Assistance Program 2 (1991); see also N.Y. Soc. Serv. Law §§ 363-a, 365(1).  DOH may establish Medicaid eligibility standards,

2

promulgate regulations, maintain a system of hearings for Medicaid applicants adversely affected by actions of local districts/agencies, and issue final decisions about those matters. See id. §§ 363-a, 364(2).

### 1.      Medicaid Eligibility.

Before an applicant may receive Medicaid benefits, the applicant must satisfy Medicaid's eligibility requirements.  The Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A)(i), requires participating states to provide medical assistance to the "categorically needy," a group including those whose modified adjusted gross income falls below specified standards; aged, blind, or disabled individuals; individuals eligible for specified public assistance programs; and other low-income groups.  Roach v. Morse, 440 F.3d 53, 59 (2d Cir. 2006).  A state may also—but is not required to—provide medical assistance to those deemed "medically needy," i.e., those whose income or resources exceed the financial threshold for categorical coverage, but whose medical costs bring those income and resources within the categorical threshold, and who otherwise meet the eligibility requirements that define the categorically needy.  42 U.S.C. § 1396a(a)(10)(A)(ii); see also Davis v. Shah, 821 F.3d 231, 238 (2d Cir. 2016).

As relevant here, Medicaid eligibility determinations are made by local districts, which must apply complex federal and state criteria to each applicant's individual circumstances.  See 42 C.F.R. §§ 435.911, 435.940-956; see also N.Y. Soc. Serv. Law § 366.  Applicants for Medicaid bear the burden of providing complete and accurate information for the local district to make an eligibility determination.  But the local district must notify the applicant if necessary information is missing and, upon the applicant's request, conduct an investigation to obtain that information.  See 42 C.F.R. § 435.908; see also 18 N.Y.C.R.R. §§ 360-2.3(a)(2)–(3).

Ordinarily, local districts are required to determine Medicaid eligibility within 45 days (90 days for eligibility based on disability).  See 42 C.F.R. § 435.912(c)(3).  Local districts may exceed

3

this time limit in "unusual circumstances," including when the applicant—or an examining physician—delays or fails to take a required action, or when there is an administrative or other emergency beyond the district's control.  Id. § 435.912(e).  If the local district determines that an applicant is eligible for Medicaid, it will issue a notice of acceptance.  See 18 N.Y.C.R.R. § 360-2.5(a).  If the applicant is found to be ineligible, the district will issue a notice of denial.  See id. § 360-2.5(b); 42 C.F.R. §§ 431.210(b)–(c) (specifying contents of denial notice).  A denial notice must explain that the applicant has the right to appeal the denial by requesting an administrative fair hearing.  See 42 C.F.R. §§ 431.206(b); 431.210(d).

## 2.    Personal Care Services.

The Medicaid Act requires state plans to "include reasonable standards . . . for determining eligibility . . . and the extent of medical assistance under the plan." 42 U.S.C. § 1396a(a)(17). Furnishing Medicaid to an individual "thus requires a state to make two separate determinations: (1) whether an individual is 'eligible for' Medicaid and, if so, (2) the 'extent of' benefits to which he is entitled." Wong v. Doar, 571 F.3d 247, 251 (2d Cir. 2009) (quoting 42 U.S.C. § 1396a(a)(17)). The Medicaid Act specifies benefits and services that states are required to provide to categorically needy individuals, and benefits and services that a state may provide at its option.  See 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a) (listing 27 categories of medical assistance).   One category of Medicaid benefits and services that New York opted to provide is personal care services ("PCS"). See N.Y. Soc. Serv. Law § 365-a(2)(e).  These are services:

> [F]urnished to an individual who is not an inpatient or resident [in an institutional setting] that are (A) authorized for the individual by a physician in accordance with a plan of treatment or (at the option of the State) otherwise authorized for the individual in accordance with a service plan approved by the state, (B) provided by an individual who is qualified to provide such services and who is not a member of the individual's family, and (C) furnished in a home or other location.

42 U.S.C. § 1396d(a)(24); see also 42 C.F.R. § 440.167.

4

New York defines PCS as "assistance with nutritional and environmental support functions and personal care functions" that are "medically necessary for maintaining an individual's health and safety in his or her own home." 18 N.Y.C.R.R. § 505.14(a)(1); see id. §§ 505.14(a)(5)(i)(a), (ii)(a) (listing functions).

Before a local district can authorize PCS for a Medicaid beneficiary, several required steps must be completed.[1]  At the time Plaintiff applied, these steps included: (i) a physician's order describing the individual's need for assistance with personal care functions; (ii) a social assessment of the individual's circumstances and potential informal caregivers; (iii) a nursing assessment of the individual's needs; (iv) a development of a plan of care in collaboration with the individual or a representative; (v) an assessment of the appropriateness and cost-effectiveness of PCS as compared to other forms of assistance; and (vi) an independent medical review for cases involving the provision of "continuous" or "live-in 24-hour" PCS.[2]  Id. §§ 505.14(b)(3)(i)–(iv), (4) (eff. July 6, 2016).  Only after these fact-intensive assessments and the individual's plan of care are completed can the local district authorize a particular level, amount, frequency, and duration of PCS.  The local district must provide a written notice of its decision to authorize or deny PCS, with an explanation of the applicant's right to an administrative fair hearing.  See id. § 505.14(b)(5)(iv)(b); see also 42 C.F.R. § 431.206(b).

---

[1]     PCS may also be authorized by Medicaid managed care organizations, which are not at issue in this lawsuit. See N.Y. Soc. Serv. Law § 364-j(31).

[2]     Pursuant to recent amendments to 18 N.Y.C.R.R. § 505.14, all initial assessments for individuals seeking PCS must now be conducted by a New York Independent Assessor under contract with DOH. See N.Y. Reg. Vol. XLII, Issue 28 (July 15, 2020), at 16–19, https://regs.health.ny.gov/sites/default/files/proposedregulations/Personal%20Care%20Services%20and%20Consumer%20Directed%20Personal%20 Assistance%20Program_0.pdf (Notice of Revised Rulemaking).  However, Plaintiff applied for Medicaid and PCS before May 16, 2022, the effective date of the regulatory amendment.  So, her application was processed pursuant to the previous version of the regulation. See Letter from Susan Montgomery, Director, Div. of Long Term Care, N.Y. State Dep't of Health (Apr. 15, 2022), https://health.ny.gov/health_care/medicaid/redesign/mrt2/recommends/2022-04-15_nyia_dates_ltr.htm.   Therefore, the former process for PCS authorization under § 505.14 is described here.

3.      New York's "Immediate Need" Procedures.

New York State provides accelerated procedures for Medicaid applicants and beneficiaries with an "immediate need for personal care . . . services." See N.Y. Soc. Serv. Law § 366-a(12); see also Administrative Directive 16-OHIP/ADM-02, Immediate Need for Personal Care Services and      Consumer      Directed      Personal      Care      Services      (July      1,      2016), https://www.health.ny.gov/health_care/medicaid/publications/adm/16adm2.htm.  A PCS applicant who does not currently receive Medicaid must submit a physician's order for PCS, a signed "attestation of immediate need," and a complete Medicaid application—which includes all documentation necessary for the local district to determine the applicant's Medicaid eligibility. See 18 N.Y.C.R.R. §§ 505.14(b)(7)(i)(a)(2), (b) (eff. July 6, 2016).  Current Medicaid recipients must submit only a physician's order and a signed attestation of immediate need.  See id. § 505.14(b)(8)(i)(b)(2).

The state regulation also provides an accelerated timeline for processing "immediate need" PCS applications. If the local district determines that an initial applicant's Medicaid application is incomplete, it must notify the applicant within four calendar days of any additional required documentation.  See id. § 505.14(b)(7)(ii).  Within seven calendar days of receiving a complete Medicaid application, the local district must determine whether the applicant is eligible for Medicaid and notify the applicant.  See id. § 505.14(b)(7)(iii).  Finally, within twelve calendar days, the local district is required to obtain the social assessment, nursing assessment, and assessment of other services.  See id. § 505.14(b)(7)(iv).  It must then "determine whether the applicant, if determined eligible for Medicaid, would be eligible for personal care services and, if so, the amount and duration of the personal care services that would be authorized."  Id. § 505.14(b)(7)(iv)(b).  That said, no PCS may be authorized unless the applicant is first found eligible for Medicaid.  See id.

### 4.    Administrative Fair Hearings.

A state participating in Medicaid must grant "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."   42 U.S.C. § 1396a(a)(3).   So in New York, a Medicaid applicant who is denied benefits by a local district may appeal to DOH for a fair hearing to contest the denial.  See N.Y. Soc. Serv. Law § 22(1).  DOH has, however, delegated its authority to conduct fair hearings to the Office of Temporary and Disability Assistance's ("OTDA") Office of Administrative Hearings ("OAH").[3]  See N.Y. Comp. Codes R. & Regs. tit. 18, § 358-2.30(b). That said, in accordance with state and federal regulations, DOH remains responsible "for making final administrative determinations and issuing final decisions," N.Y. Soc. Serv. Law § 364(2)(h), and for ensuring the fair hearing system's compliance with federal law.  See 42 C.F.R. § 431.205; see also Lisnitzer, 938 F.3d at 581.

Within OTDA's OAH, an administrative law judge ("ALJ") acts as the hearing officer.  See Lisnitzer, 938 F.3d at 581.  This individual is directed to develop a complete evidentiary record, to review and evaluate evidence, to make findings of fact and conclusions of law, to prepare an official report containing the substance of what happened at the hearing, and to render a recommended decision to the DOH Commissioner or to the Commissioner's designee.  See N.Y. Comp. Codes R. & Regs. tit. 18, § 358-5.6(b).  That designee—an official within OTDA—then issues a final fair hearing "appeals decision," known as a "decision after fair hearings" ("DAFH"). 42 C.F.R. § 431.10(a)(2); see also N.Y. Comp. Codes R. & Regs. tit. 18, § 358-6.1.  The DAFH must be "based exclusively on evidence introduced at the hearing," 42 C.F.R. § 431.244(a), and must identify the evidence and regulations that support the decision, 18 N.Y.C.R.R. § 358-6.1(a).

---

[3]        The parties to a fair hearing typically are the local district—here, HRA—and the appellant or their representative.  See 18 N.Y.C.R.R. § 356-5.9(a).

Final administrative action must ordinarily be taken no more than 90 days from the date the fair hearing is requested.  See 42 C.F.R. § 431.244(f)(1).  But at the same time, federal regulations require states to provide expedited fair hearings when "the time otherwise permitted for a hearing under § 431.244(f)(1) could jeopardize the individual's life, health or ability to attain, maintain, or regain maximum function."  Id. § 431.224(a)(1).  If the appellant meets these criteria, there is a shorter window within which final administrative action must be taken.  If the claim is "related to eligibility," nursing facilities, or preadmission and annual resident review determinations, final administrative action must be taken within seven business days from the date the hearing is requested.  Id. § 431.244(f)(3)(i).  If the claim is "related to services or benefits," final administrative action must be taken within three working days.  Id. §§ 431.244(f)(3)(ii)–(iii).  Federal regulations also provide for an exception to these time limits if "the appellant requests a delay or fails to take a required action, or [t]here is an administrative or other emergency beyond the agency's control."  Id. § 431.244(f)(4)(i).

As the Second Circuit has held, final administrative action ordinarily "entails a final determination of Medicaid eligibility and must be made within 90 days of a fair hearing request."  Lisnitzer, 983 F.3d at 589.  But the state agency need not make this determination as part of the fair hearing decision.  See id. at 586.  It may, "after deciding the matters raised by the applicant . . . issue a fair hearing decision that remands the case to the local district to resolve the ultimate question of Medicaid eligibility.  The local district must then decide eligibility consistent with whatever the hearing authority decided.  And . . . it must do so within the applicable time limit for final administrative action."  Id.

Additionally, judicial review of adverse fair hearing decisions is available in state court under New York Civil Practice Law & Rules ("C.P.L.R.") article 78.  Should the appellant prevail, the state court will annul the erroneous fair hearing decision and remand to the state agency for

8

further administrative proceedings.  See C.P.L.R. 7806.  An applicant ultimately determined to be eligible for Medicaid will receive benefits retroactive to the date of initial application.  See 18 N.Y.C.R.R. § 360-2.4(c).

## B.   Plaintiff's Expedited Fair Hearing.[4]

As alleged, Plaintiff submitted an "immediate need" application for Medicaid and PCS to the local district—HRA—on February 17, 2022.  (Compl. ¶ 61, ECF No. 1.)  Plaintiff was not a Medicaid recipient at that time.  HRA was thus required to inform Plaintiff within four days if her Medicaid application was incomplete, to determine whether she was eligible for Medicaid within seven days, and to conduct the required assessments and determine her need for PCS within twelve days.  Yet Plaintiff alleges that HRA failed to process her application by March 1, 2022, twelve calendar days after she submitted the application.  (See Compl. ¶ 62, ECF No. 1.)  Plaintiff alleges that HRA's failure to act constituted a "constructive denial of her Medicaid application and request for personal care services," and that HRA failed to issue a notice explaining her right to request an expedited fair hearing.  (Id. ¶ 63.)

On March 3, 2022, Plaintiff nonetheless requested an expedited fair hearing.  (See id. ¶ 64.)  Because her claim related to Medicaid eligibility, the regulatory deadline for final administrative action was seven business days after the fair hearing request, or March 14, 2022.  (See id. ¶ 67.)  On March 8, 2022, the third business day after her request, an OAH ALJ conducted a telephonic fair hearing.  (See id. ¶ 65.)  HRA did not appear at the hearing or submit evidence.

---

[4]      The facts set forth in this Opinion are drawn from the Plaintiff's complaint ("Complaint"), the parties' submissions in connection with Defendants' motion to dismiss, and the parties' submissions in response to the Court's August 31, 2023, Electronic Order.  For ease of reference, the Court refers to Defendants' brief in support of its motion to dismiss as "Defs.' Br." (ECF No. 25-1), to Plaintiff's opposition brief as "Pl.'s Opp." (ECF No. 25-3), and to Defendants' reply brief as "Defs.' Reply Br." (ECF No. 25-4.)  The Court refers to Defendants' letter brief in response to the Court's August 31, 2023 Order as "Defs.' Letter" (ECF No. 32), to Plaintiff's opposition letter brief as "Pl.'s Opp. Letter" (ECF No. 33), to Defendants' reply letter brief as "Defs.' Rep. Letter" (ECF No. 34), and to Defendants' response to the Court's February 22, 2024, Order as "Defs.' Mootness Letter" (ECF No. 35).

(See id.)  On March 11, 2022, six business days after the hearing request, Defendants issued two Decisions After Fair Hearing reversing HRA's failure to act on Plaintiff's "immediate need" application and ordering HRA to process the application forthwith.  (See id. ¶ 66.)  Plaintiff alleges, however, that at the close of business on March 14, 2022, she had not yet received a determination of her Medicaid eligibility or an authorization for PCS.  (See id. ¶ 67.)

## C.   Procedural History.

The next day, on March 15, 2022, Plaintiff began this putative class action under 42 U.S.C. § 1983.  (See Compl. ¶ 68, ECF No. 1.)  In relevant part, the Complaint asserts ten causes of action. The first through fifth causes of action challenge Defendants' alleged failure to provide adequate written notice of the right to an expedited fair hearing ("Notice Claims"); the sixth through tenth causes of action challenge Defendants' alleged failure to take timely final administrative action ("Final Administrative Action Claims").[5]  (See id. ¶¶ 80–99.)

For both the Notice Claims and the Final Administrative Action Claims, Plaintiff asserts violations of: constitutional due process (1st and 6th Causes of Action); the Medicaid Act and implementing regulations (2nd and 7th Causes of Action); New York's Medicaid State Plan and 42 U.S.C. § 1396a(a)(1) (3rd and 8th Causes of Action); the Supremacy Clause (4th and 9th Causes of Action); and the New York State Constitution (5th and 10th Causes of Action).[6]  (See id.)

Plaintiff seeks declaratory and injunctive relief, including an order requiring Defendants to: (i) identify all Medicaid applicants and recipients since March 15, 2019 who were not given

---

[5]     Plaintiff brings an eleventh cause of action, alleging that Defendants deprived Plaintiff and the two proposed Plaintiff classes of "rights, privileges, or immunities secured by the Constitution and laws," which are "cognizable and enforceable under 42 U.S.C. § 1983."  (Compl. ¶¶ 100–101, ECF No. 1.)

[6]     In her Opposition Brief, Plaintiff withdrew "her claims related to violations of 42 U.S.C. § 1396(a)(1), the Supremacy Clause and her state constitutional and state law claims."  (Pl.'s Opp. at 2–3.)  Accordingly, Plaintiff submits "that her federal due process claim and her federal statutory claim pursuant to 42 USC §1396a(a)(3) and its implementing federal regulations are meritorious, and that she has standing to assert them."  (Id. at 2.)

adequate notice of their right to an expedited fair hearing; (ii) provide those individuals with written notice; (iii) identify all Medicaid appellants since March 15, 2019 who received expedited fair hearings but did not receive timely final administrative action; (iv) provide those individuals with the opportunity to reopen their expedited fair hearings; and (v) develop a comprehensive training and oversight plan alongside Plaintiff's counsel.  (See id. ¶¶ A–G.)

On December 2, 2022, Defendants filed a fully briefed motion to dismiss Plaintiff's Complaint—pursuant to the Court's individual bundling rule—under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (See ECF No. 25.)  The same day, Movant filed a motion to intervene in the action.  (See ECF No. 24.)  Movant alleges she can intervene in this action as of right because she asserts an interest identical to that of Plaintiff, her interest would be impaired if intervention is denied, and Plaintiff does not adequately represent that interest.  (See ECF No. 10-4, at 8–12.)  On June 23, 2023, Counsel for Plaintiff (who also represented Movant) informed the Court that Movant passed away on June 16, 2023.  (See ECF No. 29.)

After reviewing Defendants' motion to dismiss, the Court filed the following Order on the docket on August 31, 2023:

> Upon review of Defendants' Rule 12(b)(1) motion to dismiss, it appears that Plaintiff may lack Article III standing.  Exhibit A to the Sbrana Declaration, (ECF No. 25-2), is a document titled "Notice of Acceptance of Your Medicaid Application," which purportedly shows that Plaintiff's Medicaid application was accepted by the New York City Human Resources Administration ("HRA") on March 11, 2022.  As Plaintiff herself implicitly concedes, if a final eligibility determination was in fact made on her Medicaid application within seven business days of her fair hearing request—i.e., by March 14, 2022—then she did not "suffer a cognizable injury sufficient to convey standing for her to bring this litigation." (Pl.'s Opp'n at 15, ECF No. 25-3.)  Accordingly, to aid the Court in determining whether Plaintiff has standing, Defendant shall produce by 9/14/2023: (1) an affidavit from the relevant HRA decisionmaker attesting to the date the final eligibility determination was made on Plaintiff's Medicaid application; and (2) any other information, including electronic information, indicating when the determination was made.

(ECF 8/31/2023 Order.)

On September 14, 2023, Defendants filed a letter brief in response to the Court's August 31, 2023 Order.  (See ECF No. 32.)  Plaintiff filed her response letter on September 21, 2023.  (See ECF No. 33.)  On October 6, 2023, Defendants replied to Plaintiff's September 21, 2023 letter.  (See ECF No. 34.)

On February 22, 2024, the Court directed Defendants to submit a letter, no longer than three pages, describing the legal effect that the Movant's death has on her pending motion to intervene.  (See 2/22/2024 Order.)  Defendants timely responded on February 29, 2024.  (See ECF No. 35.)

## II.    DISCUSSION

### A.    Motion to Dismiss Standard.

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it ....'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  "A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under [Rule] 12(b)(1)."  SM Kids, LLC v. Google LLC, 963 F.3d 206, 210 (2d Cir. 2020) (citing Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  Carter, 822 F.3d at 56; see also Katz v. Donna Karan Co., 872 F.3d 114, 119 (2d Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  Id.  A plaintiff opposing such a motion bears "no evidentiary burden," id., and the Court's task is to determine whether the complaint and its exhibits allege facts that "affirmatively and plausibly suggest" that the plaintiff has standing to sue.  Amidax

12

Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam).  In making that determination, the court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff."  Carter, 822 F.3d at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the" complaint and its exhibits.  Carter, 822 F.3d at 57; see also MMA Consultants 1, Inc. v. Rep. of Peru, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction").  "In opposition to such a motion, [the plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing."  Katz, 872 F.3d at 119 (cleaned up).  If a defendant supports its fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to" subject matter jurisdiction.  Carter, 822 F.3d at 57.  Defendants have raised a fact-based challenge here.

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first." Bellocchio v. Garland, 614 F. Supp. 3d 11, 17 (S.D.N.Y. 2022); see Mahon v. Ticor Title Ins., 683 F.3d 59, 62 (2d Cir. 2012) (noting that standing is the "threshold question in every federal case" (citation omitted)).

### B.   **Article III Standing**.

Federal courts have limited jurisdiction "and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  <u>Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.</u>, 943 F.3d 613, 616 (2d Cir. 2019) (internal quotation marks and citation omitted).  "Under Article III of the U.S. Constitution, '[t]he judicial Power of the United States' extends only to certain 'Cases' and 'Controversies.'"  <u>Lacewell v. Off. of Comptroller of Currency</u>, 999 F.3d 130, 141 (2d Cir. 2021) (quoting U.S. Const. art. III §§ 1–2).  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 408 (2013) (internal citation and quotation marks omitted).  Satisfying the cases and controversies requirement, including standing, is the "threshold question in every federal case."  <u>Mahon</u>, 683 F.3d at 62 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)).  To establish standing a plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[7]  <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 423 (2021) (citing <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).  "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve."  <u>Id.</u> (internal quotations and citation omitted).  The burden of establishing standing falls on the plaintiff since the plaintiff is the party "invoking federal jurisdiction."  <u>Id.</u> at 430.

### C.   **Intervention**.

A non-party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) must demonstrate that: "(1) the motion is timely; (2) the applicant asserts an interest relating to the

---

[7]      "For purposes of Article III standing, an 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized[ ] and (b) actual or imminent, not conjectural or hypothetical.'"  <u>Lacewell</u>, 999 F.3d at 141 (quoting <u>Lujan</u>, 504 U.S. at 560)).

property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig., 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006)). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." In re Bank of New York Deriv. Litig., 320 F.3d 291, 300 (2d Cir. 2003) (citation omitted).

Unlike intervention as of right, "[p]ermissive intervention pursuant to Rule 24(b) 'is discretionary with the trial court.'" Citizens Against Casino Gambling in Erie Cnty. v. Hogen, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)).  Permissive intervention is within the Court's discretion when an applicant "has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).  If the proposed intervenor demonstrates that its claim and the main action have a question of law or fact in common, the "principal consideration . . . is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties . . . . Other relevant factors include the nature and extent of the intervenor's interest, whether the interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191–92 (2d Cir. 1978) (cleaned up).

But critically, "if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim."  Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co., 700 F.2d 889, 893 (2d Cir. 1983) (cleaned up); see also Town of W. Hartford v. Operation Rescue, 915 F.2d 92, 95 (2d Cir. 1990) ("[I]t is fundamental that

an intervening claim cannot confer subject matter jurisdiction over the action it seeks to join."); 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1917 (3d ed. 2005) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action.").  When an original plaintiff lacks constitutional standing to assert a claim, there is no justiciable action, "and that defect may not be cured by later intervention."  Police & Fire Retirement Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 111 (2d Cir. 2013).

**D.   Analysis.**

**1.   Plaintiff Does Not Have Article III Standing.**

Plaintiff argues that she has Article III standing to bring this action.  (See Pl's. Opp. at 13–18; see also Pl.'s Opp. Letter at 1–3.)  To support her position, she advances two main arguments. First, Plaintiff contends she has standing to sue because the local district (HRA) did not timely determine her Medicaid eligibility.  (See id. at 13–15.)  Second, Plaintiff claims she has Article III standing because "the denial of a constitutionally protected interest"—here, the alleged failure by HRA to provide adequate notice explaining Plaintiff's right to an expedited fair hearing—"is itself sufficient injury."  (Id. at 16–17.)

Defendants disagree, marshaling three arguments in response.  First, Defendants argue that Plaintiff fails to allege an injury in fact related to HRA's alleged failure to issue a notice explaining Plaintiff's right to an expedited fair hearing.  (See Defs.' Br. 15–16.)  Second, Defendants contend that Plaintiff received a timely determination of her Medicaid eligibility and, as such, did not suffer any injury.  (See id. at 16–18; see also Defs.' Rep. Letter at 1–4.)  Third, to the extent that Plaintiff alleges that she did not receive timely adjudication of her concurrent request for PCS, Defendants argue that her claim fails to establish standing because any delay in PCS authorization was not traceable to Defendants, but to the independent action of a non-party, HRA.  (See id. at 18–20.)

For the below reasons, the Court agrees with Defendants on all three scores: Plaintiff lacks Article III standing.  Accordingly, the Court need not reach the merits of Plaintiff's claims.

### a)   *Plaintiff Fails to Allege an Injury in Fact Related to Inadequate Notice.*

Plaintiff has not shown that HRA's alleged failure to issue a notice explaining her right to an expedited fair hearing resulted in a concrete and particularized injury.  "[E]ven where . . . Congress has statutorily conferred legal interests on [individuals], a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest."  Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016).  To be concrete, an alleged harm need not be tangible, but it must at a minimum be "'real,' and not 'abstract.'"  Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (internal citation omitted).  A "bare procedural violation, divorced from any concrete harm" or "the risk of real harm" cannot satisfy the concreteness requirement in the context of this case.  Id. at 341.  To be particularized, an injury "must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1.  Moreover, "the 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured."  Sierra Club v. Morton, 405 U.S. 727, 734–35 (1972).

Plaintiff alleges that when HRA failed to take timely action on her Medicaid application, it also failed to provide a notice that adequately explained the availability of an expedited hearing. (See Compl. ¶ 63, ECF No. 1.)   But she has not demonstrated that this procedural violation manifested in concrete harm or posed a "sufficient risk of real harm to the underlying interest" protected by the Medicaid Act.  Strubel, 842 F.3d at 189 (internal quotations omitted).  Plaintiff did, in fact, request and receive an expedited fair hearing from Defendants, notwithstanding HRA's alleged failure to supply this information.  (See Compl. ¶¶ 64–65, ECF No. 1.)  As such, she has not shown any actual injury resulting from the lack of notice.

Even if the regulatory notice requirements of 42 C.F.R. § 431.206 are "procedural rights" that "Congress has accorded . . . to protect a concrete interest" in Medicaid fair hearings, Plaintiff fails to allege a particularized "material risk of harm to that underlying interest." Strubel, 842 F.3d at 190.  Plaintiff availed herself of the right to an expedited fair hearing.  And so, she cannot now "assert that the allegedly flawed notice caused her . . . behavior to be different from what it would have been" had HRA issued an adequate notice to the availability of an expedited fair hearing. Id. at 193.  Speculation that other Medicaid applicants in Plaintiff's shoes might have been injured by HRA's failure to provide information about expedited fair hearings is irrelevant if Plaintiff herself suffered no injury.  See Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 336 (7th Cir. 2019) (Barrett, J.) ("It is not enough that the [procedural violation] risked harming someone—it must have risked harm to the plaintiffs.") (emphases in original)).

As Defendants point out, Plaintiff appears to concede that she suffered no concrete injury because of HRA's alleged failure to notify her of the availability of an expedited fair hearing.[8] (See Pl.'s Opp. at 17 ("Sister Buckley obtained an expedited fair hearing notwithstanding lack of notice.").)  She contends that she has Article III standing nonetheless because "the denial of a constitutionally protected interest"—the receipt of Medicaid benefits—"is itself sufficient injury." (Id. at 16–17.)  But Plaintiff's argument conflates the merits of her due process claim with the necessary threshold showing of injury a plaintiff must make to establish standing, and she misstates the import of the cases she cites to support her position.  In any event, Plaintiff has not alleged the actual or imminent deprivation of a property interest.

---

[8]     Plaintiff's statement that Defendants "remain silent" on her due process notice claim is incorrect.  (See Pl's Br. at 16.)  The Complaint's regulatory and constitutional causes of action stem from an identically worded factual allegation: that New York "fails to provide adequate written notice of the right to an expedited fair hearing." (Compl. ¶¶ 81, 83, ECF No. 1.)  Defendants argue that Plaintiff has not demonstrated a concrete injury resulting from this factual predicate, regardless of the merits of her legal claims.  (See Defs.' Reply Br. at 6 n.8.)

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. The analysis a court must undertake focuses not on the merits of a claim, but on "the party seeking to get his complaint before a federal court." Simon v. Eastern Ky. Welfare Rts. Org., 426 U.S. 26, 38 (1976). Whether a plaintiff asserts injury to a statutory or constitutional right, the injury must be concrete, particularized, and actual or imminent. See Lujan, 504 U.S. at 560, 573 n.8. To be sure, Lujan acknowledged that a plaintiff "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." Id. at 572 n.7. It does not follow, though, that a plaintiff asserting a procedural violation may establish standing in the absence of any actual or imminent threat to the underlying interest. See id. at 573 n.8 (holding that a plaintiff's "interest in having the procedure observed" is not enough to confer standing "without any showing that the procedural violation endangers a concrete interest of the plaintiff"); see also Spokeo, Inc., 578 U.S. at 341.

The caselaw Plaintiff relies on to support her argument that any procedural due process violation suffices to create standing is inapt. In Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59 (1978), the Supreme Court held that plaintiffs need not show a causal nexus "between the injuries they claim and the constitutional rights being asserted." 438 U.S. at 78. But the Court did not abrogate the injury-in-fact requirement, and the facts of Duke Power Co. bear this out: the alleged injury arose from the effects of a nuclear power plant operating near the plaintiffs' living and working environment. See id. at 72–73. No such concrete injury is alleged by Plaintiff here. Duke Power Co. does not stand for the principle that any constitutional violation is per se injurious.

Plaintiff's other case, Island Online, Inc. v. Network Solutions, Inc., 119 F. Supp. 2d 289 (E.D.N.Y. 2000), is similarly inapposite. There too, the plaintiff asserted a concrete injury: "IOL's

applications for domain names were directly denied . . ., and IOL's fiscal interest was harmed thereby." Island Online, Inc., 119 F. Supp. 2d at 297.  Contrary to what Plaintiff contends, the court did not find that IOL had Article III standing "even if it alleged no actual injury."  (Pl's Br. at 17–18 n.42.)  Rather, it held that IOL could be awarded nominal damages for a constitutional violation, despite its inability to prove that the violation caused a compensable injury.  Island Online, Inc., 119 F. Supp. 2d at 298–99.[9]  See also Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 650–51 (2d Cir. 1998) (plaintiff had standing based on reputational injury even if it could not establish actual damages).

The underlying principle of Island Online, like Duke Power Co., is that a plaintiff need not show that the defendant's unconstitutional conduct was the but-for cause of the alleged injury.  But to reach that stage of the analysis, there must first be an injury-in-fact giving the plaintiff a "concrete stake" in the litigation.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 191 (2000).  Plaintiff here, who suffered no impairment in her ability to request and participate in an expedited fair hearing to challenge HRA's alleged failure to process her Medicaid application, cannot overcome this preliminary hurdle.

As Defendants point out, Plaintiff's argument fails even on her own terms.  (See Defs.' Reply Br. at 9.)  Assuming that Plaintiff asserted a "legitimate claim of entitlement" to Medicaid benefits, she possessed a constitutionally protected property interest in them.  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Bellin v. Zucker, 6 F.4th 463, 475 (2d Cir. 2021) (affirming that applicants for Medicaid benefits may possess a property interest in their receipt).  And in that case, the state government may not terminate that property interest without providing

---

[9]      Island Online relied on Carey v. Piphus, in which the Supreme Court held that nominal damages could be awarded for a procedural due process violation absent proof of actual injury.  435 U.S. 247, 267 (1978).  At issue in Carey was not the plaintiffs' standing to sue, but instead whether the defendants could be found liable for damages under 42 U.S.C. § 1983.

notice and an opportunity for a hearing.  See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 786–87 (1980); see also Goldberg v. Kelly, 397 U.S. 254, 261 (1970).

Critically, though, Plaintiff has not been deprived of Medicaid benefits.  (See Defs.' Reply Br. at 9.)  Plaintiff also does not claim she was deprived of the opportunity for a constitutionally adequate hearing to contest HRA's "constructive denial" of her application for benefits.  (Compl. ¶¶ 63–64, ECF No. 1.)  Instead, she challenges the alleged failure by HRA to provide constitutionally adequate notice.  (See Pl's. Opp. at 17.)  It is axiomatic that due process requires notice that is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  But the gravamen of Plaintiff's notice claim is not that HRA failed to apprise her of its intent to deny her application for Medicaid benefits and PCS.  By Plaintiff's telling, HRA's failure to decide her "immediate need" application within twelve days constituted "constructive notice" of denial.  (See Compl. ¶¶ 62–63, ECF No. 1; see also 18 N.Y.C.R.R. § 505.14(b)(7) (eff. July 6, 2016) (providing accelerated timeline for applicants in "immediate need" of personal care services)).  Her only grievance is with the lack of information about a specific hearing procedure required by regulation.  That Plaintiff availed herself of an expedited fair hearing—notwithstanding HRA's alleged failure to notify her of its availability—is probative of her lack of actual injury to a protected property interest.  Cf. Brody v. Vill. of Port Chester, 345 F.3d 103, 111–12 (2d Cir. 2003) (plaintiff who alleged that adequate notice would have caused his actions to change had standing to bring due process claim).[10]  Accordingly, the Court concludes Plaintiff's notice claims should be dismissed for lack of Article III standing.

---

[10]     While the Court need not reach the merits of Plaintiff's due process claim, it is not clear that information about expedited fair hearings is constitutionally required to be provided on a denial notice.  See City of West Covina v. Perkins, 525 U.S. 234, 241 (1999) (holding that due process does not require "individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law"); see also Brody v. Vill. of Port Chester, 434 F.3d 121, 132 (2d Cir. 2005) (notice not constitutionally required "to inform its reader of the procedures for challenging" a property deprivation).

b)   *Plaintiff Received a Timely Determination of Her Medicaid Eligibility.*

Plaintiff's claim that Defendants did not render a timely Medicaid eligibility determination similarly fails to establish standing.  That's because Plaintiff was, in fact, found to be eligible for Medicaid coverage within the applicable regulatory time limit.  The Declaration of Charrise Andrews dated September 14, 2023 ("Andrews Decl.") confirms that the New York City HRA determined Plaintiff's eligibility for Medicaid on March 11, 2022, within seven working days of her expedited fair hearing request.  (See Andrews Decl. ¶¶ 4–5 (ECF No. 32-1)).  Also on March 11, HRA issued a notice entitled "Notice of Acceptance of Your Medicaid Application," which referenced Plaintiff's fair hearing.  (See Sbrana Decl. ¶¶ 13–14, Ex. A, ECF No. 25-2.)  The notice states: "We are sending you this notice to tell you that the Medical Assistance Program has: ACCEPTED your Medicaid application for FULL medical coverage from: 12/1/21." (Id.)  In other words, Plaintiff received a final administrative decision on her application for Medicaid and was determined to be eligible for full Medicaid coverage within the regulatory time frame.  And as the Court indicated in its August 31, 2023, Order, a timely and final eligibility determination on Plaintiff's Medicaid application suffices to deprive Plaintiff of Article III standing.

As Defendants contend, this outcome is compelled by a straightforward reading of federal Medicaid regulations and Lisnitzer v. Zucker, 983 F.3d 578 (2d Cir. 2020).  (See Defs.' Rep. Letter at 1, ECF No. 34.)  As an applicant for Medicaid, Plaintiff sought a determination from HRA that she was categorically and financially eligible for New York State's Medicaid program, see 42 C.F.R. § 435.911, which would entitle her to Medicaid coverage of medically necessary services and benefits, including personal care services, see N.Y. Soc. Serv. Law § 365-a(2)(e).  On March 3, 2022, Plaintiff requested an expedited fair hearing under 42 C.F.R. § 431.224(a) to challenge what she considers HRA's "constructive denial" of her Medicaid application.  (See Compl. ¶¶ 63–64, ECF No. 1.)  Plaintiff's demand for final administrative action within seven working days of

the expedited fair hearing request reflects her (correct) understanding that the hearing concerned "a claim related to eligibility."[11]  42 C.F.R. § 431.244(f)(3)(i).

By rendering a final determination that Plaintiff was eligible for Medicaid within that timeframe, HRA took timely and final administrative action, as defined by the Second Circuit in Lisnitzer.  Like Plaintiff, Lisnitzer requested a fair hearing to challenge a local district's denial of his Medicaid application.  See Lisnitzer, 983 F.3d at 582.  The Circuit held that final administrative action in Lisnitzer's fair hearing consisted of "a final determination of Medicaid eligibility," which "need not be made at the hearing decision level."  Id. at 589.  Notably, the Circuit did not disturb its prior holding that final administrative action does not include the "'implementation of relief ordered in fair hearings,'" which Lisnitzer distinguished as "the ultimate relief to which an applicant is entitled, that is, Medicaid benefits."  Id. at 584 (quoting Shakhnes v. Berlin, 689 F.3d 244, 257 (2d Cir. 2012) (emphases omitted)).

HRA's timely Medicaid eligibility determination satisfies the requirements for final administrative action set forth in 42 C.F.R. § 431.244(f)(3), Lisnitzer, and Shakhnes.  It was not a "tentative or interlocutory" decision, as Plaintiff suggests.  (Pl.'s Opp. Letter at 2.)  Rather, it was a conclusive action "from which 'legal consequences will flow,'" in the form of Medicaid benefits.  Shakhnes, 689 F.3d at 260 (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).  As such, Plaintiff cannot establish the "invasion of a legally protected interest" required for Article III standing.  Lujan, 504 U.S. at 560.

In response, Plaintiff appears to backtrack from her concession that HRA's March 11, 2022, determination of Medicaid eligibility—if authenticated—would defeat Article III standing.  (See Pl.'s Opp. at 15 ("If discovery reveals that defendants' local agent did not render a final eligibility

---

[11]      The fair hearing request did not, in other words, concern "a claim related to services or benefits," which would have entitled Plaintiff to final administrative action within three working days.  See 42 C.F.R. §§ 431.244(f)(3)(ii)–(iii).

determination by March 14, 2022—the seventh business day after Sister Buckley's fair hearing request—then she did suffer a cognizable injury sufficient to convey standing for her to bring this litigation.").)  She now contends that HRA was not only required to determine whether she was eligible for Medicaid, but it was also required to conduct a comprehensive series of assessments and issue an authorization for a specific amount of PCS, all within the seven-day window for final administrative action.  (See Pl.'s Opp. Letter at 2.)  But Plaintiff's argument inaccurately conflates a Medicaid applicant's "eligibility"—as that term is used in federal regulations and Lisnitzer— with a Medicaid recipient's entitlement to specific services and benefits.[12]

Plaintiff asserts that in her case, "eligibility" is a "two-phase . . . process" that encompasses both her eligibility for Medicaid and her entitlement to a specific Medicaid-funded service, PCS. (Pl.'s Opp. Letter at 1.)  But this is not how "eligibility" is generally understood in the Medicaid context, where it refers to the categorical and financial criteria for acceptance into a state's Medicaid program.  See, e.g., 42 C.F.R. pt. 435 (setting forth requirements and procedures for state determinations of Medicaid eligibility); N.Y. Soc. Serv. Law § 366 (setting forth New York State's Medicaid eligibility criteria).  Medicaid eligibility is distinct from—and a condition precedent to— the authorization and provision of specific medically necessary services and benefits included in a state Medicaid plan, such as PCS.  See 42 U.S.C. § 1396d(a); N.Y. Soc. Serv. Law § 365-a(2) (listing services covered by New York State's Medicaid program).  The regulations governing the timeframes for expedited fair hearings reflect this distinction.  Compare 42 C.F.R. §

---

[12] Plaintiff also observes that the New York State Welfare Management System printout appended to the Andrews Declaration contains an entry dated March 17, 2022.  (See Andrews Decl., Ex. B, ECF No. 32-1.).  However, she fails to provide any reason why this entry "may be probative on the issue of standing."  (Pl.'s Opp. Letter at 1.) And indeed, her own supporting declaration contradicts her, confirming that the March 17, 2022, entry reflects a recalculation of the dates of Plaintiff's Medicaid coverage, not a final determination of Medicaid eligibility.  (See Declaration of Eugene Doyle dated September 21, 2023, ¶ 30, ECF No. 33-1).

431.244(f)(3)(i) (claims "related to eligibility") with id. §§ 431.244(f)(3)(ii)–(iii) (claims "related to services or benefits").

What Plaintiff refers to as the "determination of her PCS eligibility," Pl.'s Opp. Letter at 3, is in fact a multi-step assessment process that examines a Medicaid recipient's living circumstances, medical history, and specific needs for assistance with activities of daily living.[13] (See Defs.' Br., at 4–6.)  This process concludes with the local district's development of an individualized plan of care and the authorization of a specific number of PCS hours.  (See id.) Critically, the local district must typically determine an applicant's Medicaid eligibility before beginning the PCS assessment and authorization process.  See 18 N.Y.C.R.R. § 505.14(b)(4)(i). Fair hearings by Medicaid applicants challenging Medicaid eligibility determinations are thus distinct from fair hearings by Medicaid recipients challenging the denial, reduction, or discontinuance of PCS.[14]  At the time Plaintiff requested an expedited fair hearing, she was not yet a Medicaid recipient, and as such her hearing concerned a challenge to a denial of Medicaid eligibility.  Accordingly, any challenge to the denial of PCS—a specific Medicaid service—was premature until the threshold question of Plaintiff's Medicaid eligibility was resolved.

To be sure, the "immediate need" application procedure used by Plaintiff required HRA to simultaneously evaluate both her Medicaid application and her PCS request.  (See Defs.' Br. at 6–7 (describing the procedures in effect at the time Plaintiff applied for Medicaid and PCS)).  But this accelerated timeline does not alter the fact that HRA could not issue an authorization for PCS until—and unless—it had made a final determination that she was eligible for Medicaid.

---

[13]     The fact that a New York State regulation makes a handful of references to "personal care services eligibility," see 18 N.Y.C.R.R. § 505.14, has no bearing on the meaning of "eligibility" in federal Medicaid regulations and Lisnitzer, which use the term in the more limited sense described above.  See Lisnitzer, 983 F.3d at 582–83 (describing the financial Medicaid eligibility determination at issue).

[14]     As Defendants acknowledge, "[i]n Lisnitzer, the Second Circuit did not have occasion to consider fair hearings challenging denials, reductions, or discontinuances of specific Medicaid services and benefits."  (Defs.' Rep. Letter at 3 n.6.)

Plaintiff's insistence that HRA was required to make both determinations within the seven working days provided for final administrative action on "a claim related to eligibility," 42 C.F.R. § 431.244(f)(3)(i), is inconsistent with the regulatory framework for expedited hearings.   Under that framework, HRA was required only to render a decision on Plaintiff's Medicaid eligibility within seven working days of her expedited fair hearing request, and it did so.   (See Andrews Decl. ¶¶ 4–5, ECF No. 32-1.)   Plaintiff was not further entitled to have HRA issue a service authorization for a specific amount of PCS within that period.   The dates on which HRA completed its assessments of Plaintiff and authorized her PCS are therefore irrelevant to whether she has suffered a cognizable injury to a legally protected interest.   Because she has not shown such an injury— much less a concrete and particularized injury arising from her Medicaid eligibility determination—Plaintiff lacked the requisite personal interest at the time she commenced this litigation.[15]   Lujan, 504 U.S. at 560; see also U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980).

---

[15]    Accordingly, jurisdictional discovery is not necessary to determine whether Plaintiff was injured by an untimely Medicaid eligibility determination.   (See Pl.'s Opp. at 15.)   A plaintiff seeking jurisdictional discovery "bears the burden of showing necessity."   Molchatsky v. United States, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011).   "A party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion."   Haber v. United States, 823 F.3d 746, 753 (2d Cir. 2016) (quoting Freeman v. United States, 556 F.3d 326, 342 (5th Cir. 2009)); see also Gualandi v. Adams, 385 F.3d 236, 244–45 (2d Cir. 2004) (affirming denial of jurisdictional discovery at the motion to dismiss stage where plaintiffs "were unable to demonstrate that additional discovery was needed in order to decide the jurisdictional issue").

Plaintiff here has not met her burden.   She has not shown that Defendants' jurisdictional evidence is genuinely in dispute, or that additional discovery would shed any light on the timing of HRA's eligibility determination.   The Andrews Declaration confirms that the HRA determined Plaintiff's eligibility for Medicaid on March 11, 2022, within seven working days of her expedited fair hearing request.   (See Andrews Decl. ¶¶ 4–5, ECF No. 32-1).   Also on March 11, HRA issued a notice entitled "Notice of Acceptance of Your Medicaid Application," which referenced Plaintiff's fair hearing.   (See Sbrana Decl. ¶¶ 13–14, Ex. A, ECF No. 25-2.)   The notice states: "We are sending you this notice to tell you that the Medical Assistance Program has: ACCEPTED your Medicaid application for FULL medical coverage from: 12/1/21."   (Id.)

The Andrews Declaration, on its face, contains no indicia of unreliability that would warrant further discovery on the March 11, 2022, Notice.   (See Andrews Decl. ¶¶ 4–5, ECF No. 32-1).   As in Haber, Plaintiff has not identified any internal inconsistencies on the March 11, 2022, Notice, has not adduced "facts and circumstances plausibly calling the [notice] into doubt," and offers no more than speculation that the notice is not credible.   Haber, 823 F.3d at 754– 55.   Further, the incorrect spelling of Plaintiff's home address, and the apparent failure by HRA to mail the notice to

      c)     *Any Other Administrative Delays are Not Traceable to Defendants.*

To the extent that Plaintiff alleges that she did not receive timely adjudication of her concurrent request for personal care services, her claim fails because any delay in PCS authorization was not traceable to Defendants, but to the independent action of a non-party to this action (HRA).  See Spokeo, 578 U.S. at 338.  To satisfy the traceability requirement of standing, a plaintiff must show "a causal connection between the injury and the defendant's conduct." Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013).

As mentioned, state and federal law in effect at the time Plaintiff submitted her "immediate need" request required Medicaid recipients to undergo a series of comprehensive assessments before their entitlement to PCS could be determined and a plan of care authorized.  See N.Y. Soc. Serv. Law § 365-a(2)(e); see also 18 N.Y.C.R.R. § 505.14; 42 C.F.R. § 440.167.  These assessments were intended, in part, to ensure that the individual's health could be safely maintained at home with PCS.  See 18 N.Y.C.R.R. §§ 505.14(a)(3)(i) (requiring the patient's medical condition to be "stable"); 505.14(a)(3)(ii) (requiring the patient to be "self-directing" without needing continuous supervision).  Notably, the regulations specified who was responsible for completing each step. For example, the social assessment needed to "be completed by professional staff of the social services district," 18 N.Y.C.R.R. § 505.14(b)(3)(ii) (eff. July 6, 2016), and the nursing assessment (including a recommended plan of care) needed to be "completed by a nurse" meeting minimum professional qualifications, id. § 505.14(b)(3)(iii).  The local district was also instructed to assess whether other Medicaid-funded services would be more appropriate and cost-effective before authorizing PCS.  See id. § 505.14(b)(3)(iv).

---

Plaintiff's social worker and mailing address, are irrelevant to whether HRA determined Plaintiff was Medicaid-eligible on March 11, 2022.  (Compare Pl.'s Opp. at 14–15, with Defs.' Reply Br. at 5.)

In the end, the entire process for determining Plaintiff's "immediate need" entitlement to PCS could be conducted only by prescribed individuals at the local district level.  Defendants' fair hearing personnel had neither the legal authority nor the expertise to complete the necessary assessments.  See Kuppersmith v. Dowling, 93 N.Y.2d 90, 97 (1999) ("A home care assessment . . . requires complementary analyses and opinions from individuals with different fields of expertise.").  In the absence of an evidentiary submission by HRA, Defendants could not substitute their own judgment and render a determination as to Plaintiff's need for PCS.  Because HRA— and only HRA—was responsible for determining Plaintiff's entitlement to PCS and authorizing a plan of care, any injury resulting from a delayed authorization of services is solely attributable to HRA.[16]  Plaintiff cannot show that "the asserted injury was the consequence of the defendants' actions," even indirectly, Warth, 422 U.S. at 504–05, and therefore fails to plead that the alleged delay is "fairly traceable" to the expedited fair hearing, Lujan, 520 U.S. at 560 (cleaned up).

*     *     *

For all these reasons, the Court concludes that Plaintiff lacks Article III standing to maintain this putative class action.

### 2.    Movant Cannot Intervene in This Action.

For two principal reasons, the Court denies Movant's motion to intervene and dismisses her Class Action Complaint.  (See ECF Nos. 10, 24).  First, Movant's claims for injunctive and declaratory relief were extinguished by her death.  Second, no successor or representative has sought to be substituted for her within the period required by Federal Rule of Civil Procedure 25(a).

---

[16]    As mentioned supra, in Lisnitzer, the plaintiff requested a fair hearing to contest a local district's denial of Medicaid eligibility.  983 F.3d at 581–82.  The Second Circuit did not have occasion to consider Medicaid fair hearings involving denials of service authorizations.  So on the merits, it is uncertain whether "final administrative action," as construed by Lisnitzer, required a determination of Plaintiff's entitlement to PCS within the regulatory time limit if the necessary medical assessments and plan of care had not been completed prior to the fair hearing.  However, this Court need not reach that question because Plaintiff has failed to satisfy the threshold requirement of traceability.

Even if the Court considered Movant's motion, intervention would not have been warranted for the threshold reason that the original plaintiff lacks Article III standing.  Even if the Court found that Plaintiff had standing and subject-matter jurisdiction existed, Movant did not satisfy the requirements for intervention of right, and permissive intervention would have been futile.

<blockquote>a)   <em>Movant's Death Extinguishes Her Motion and No Successor or Representative Sought Substitution.</em></blockquote>

On June 23, 2023, Counsel for Plaintiff informed the Court that Movant passed away.  (<u>See</u> ECF No. 29.)  The Court denies Movant's motion to intervene and dismisses her Class Action Complaint because her death extinguished her claims for injunctive and declaratory relief, and no successor or representative has sought to be substituted for her within the period required by Federal Rule of Civil Procedure 25(a).

When a "plaintiff dies . . . before [her] request for prospective injunctive relief is resolved, [her] claims may in some circumstances become moot."  <u>ABN Amro Verzekeringen BV v. Geologistics America, Inc.</u>, 485 F.3d 85, 94 (2d Cir. 2007).  Courts in this District have dismissed claims seeking only injunctive and declaratory relief in similar circumstances.  <u>See, e.g.</u>, <u>Grinblat v. Nulife of Brooklyn, LLC</u>, 2021 WL 1193147, at *1 (E.D.N.Y. Mar. 30, 2021) ("Title III ADA claims become moot when the plaintiff dies because the only relief available is injunctive relief, and injunctive relief cannot benefit a deceased plaintiff."); <u>Boddie v. Evans</u>, 2011 WL 1085159, at **2–3 (E.D.N.Y. Mar. 21, 2011) (dismissing constitutional claims against parole board for prospective declaratory and injunctive relief because "[a]fter plaintiff's death, it is no longer feasible to order a new hearing or to order his release").

Likewise, as Defendants point out, Movant's claims for prospective relief are moot because she can no longer benefit from a favorable injunction or declaration.  (<u>See</u> Defs.' Mootness Letter, at 2, ECF No. 35.)  Her status as a putative class representative cannot shield her claims from

dismissal where, as here, no class has been certified.  See Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.").  Indeed, nearly two years since this case commenced, no class certification motion has been filed, and counsel for the putative class has not sought to intervene new named plaintiffs despite Movant's death.  Cf. T.C. v. N.Y. State Dep't of Health, 2024 WL 689503, at *8–9 (S.D.N.Y. Feb. 20, 2024) (denying motion to intervene in putative class action when named plaintiffs' claims were moot and no class certification motion had yet been filed).

Even if Movant's claims survived her death, dismissal is still required because no motion for substitution has been made within the required period.  Federal Rule of Civil Procedure 25(a) states:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

FED. R. CIV. P. 25(a)(1).

As mentioned, Counsel for Plaintiff (who also represented Movant) notified all parties of the Movant's death in a letter filed on June 23, 2023.  (See ECF No. 29.)  In the eight ensuing months, no motion for substitution has been filed by any party or by Movant's successor or representative.  Accordingly, Rule 25(a)(1) mandates dismissal of Movant's Class Action Complaint.  See Whitty v. Cnty. of Suffolk, 2023 WL 1929781, at *2 (E.D.N.Y. Feb. 10, 2023) (dismissing action by deceased plaintiff where "the 90-day window to file a motion for substitution has long since closed"); see also Boddie, 2011 WL 1085159, at *3.

For these reasons alone, the Court could deny Movant's motion to intervene.

b)  *Intervention Would Be Denied Because the Court Lacks Jurisdiction.*

Even if the Court considered her motion, intervention would not be warranted for the threshold reason that the original plaintiff, Margaret Buckley, CSJ, lacks Article III standing to bring this action.  In this putative class action, Plaintiff alleges that Defendants (1) failed to provide adequate notice of her right to an expedited fair hearing under 42 C.F.R. § 431.224(a), and (2) failed to take timely final administrative action on her Medicaid appeal within seven business days of her request for an expedited fair hearing, as required by 42 C.F.R. § 431.244(f)(3)(i).  (See Compl. ¶¶ 62–67, ECF No. 1.)  But, as discussed, Plaintiff cannot demonstrate that she suffered a "concrete, particularized, and actual or imminent" injury caused by Defendants.  See TransUnion, 594 U.S. at 423.  The Complaint fails to allege actual harm resulting from any absent notice, see Defs.' Br. at 15–16, and Plaintiff received a conclusive determination that she was eligible for full Medicaid coverage within seven business days of her appeal, id. at 16–18.  Because Plaintiff was never injured in fact, she lacked standing at the time she commenced this action.[17]  Movant could not use Rule 24 intervention to circumvent the Court's lack of jurisdiction.  See Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675 F.3d 149, 160–61 (2d Cir. 2012).

c)  *Intervention of Right is Inappropriate.*

Even if the Court found that Plaintiff has Article III standing and subject-matter jurisdiction exists, Movant would not have satisfied the requirements for intervention of right because she failed to assert "an interest relating to the property or transaction that is the subject of the action."

---

[17]      Plaintiff's lack of standing at the outset of the litigation distinguishes this case from class actions in which putative class members intervened after the named plaintiff's claims became moot.  See, e.g., Gaddis v. Wyman, 304 F. Supp. 713, 716 (S.D.N.Y. 1969).  Unlike those cases, Plaintiff here has not moved for class certification.  Even if she had, though, "[w]here the named plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action."  Crosby v. Bowater Inc. Retirement Plan for Salaried Emps. of Great Northern Paper, Inc., 382 F.3d 587, 597 (6th Cir. 2004) (internal quotations omitted) (emphasis added).

FED. R. CIV. P. 24(a)(2).  "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'"  Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010) (quoting Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)); see also United States v. AT&T, 642 F.2d 1285, 1292 (D.C. Cir. 1980) ("[T]he interest must be a legal interest as distinguished from interests of a general and indefinite character.") (internal quotations omitted).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."  Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001).

Movant did not, and could not, assert a legally protectable interest in Plaintiff's fair hearing or receipt of Medicaid benefits.  Instead, she argued that like Plaintiff, she "relie[d] on her Medicaid coverage to obtain requisite medical care and services, and has a strong interest in obtaining a final and definitive determination of her entitlement to personal care services." (Movant's Br. at 10, ECF No. 10-4.)  But Movant's circumstances were distinct from Plaintiff's: while Plaintiff's fair hearing concerned an initial Medicaid application, Movant was already a Medicaid recipient receiving skilled nursing services when she applied for PCS.

Even if that were not the case, Movant's own arguments undermined her purported interest in this litigation.  Claiming that she "ha[d] been subjected to the same challenged policy and practice of defendants which terminates Medicaid appeals by non-conclusive remand," Movant stated that "she ha[d] a strong and palpable interest in the eradication of the same remand policy." (Movant's Br. at 10, ECF No. 10-4.)  This sweeping assertion goes well beyond the Complaint, which alleges only that Defendants fail to take timely final administrative action on expedited fair hearing requests.  (See Compl. ¶¶ 74–75, ECF No. 1.)  Moreover, to the extent Defendants have a "policy and practice" of remanding Medicaid fair hearings to the local district for final

32

administrative action, Movant's challenge was rejected by the Second Circuit in <u>Lisnitzer</u>.  983 F.3d 578 (2d Cir. 2020).  As mentioned, <u>Lisnitzer</u> held that a Medicaid state agency may conclude fair hearings by "remand[ing] to local districts to make final eligibility determinations . . . so long as the agency meets the deadlines for final administrative action." <u>Id.</u> at 587.  Movant had no legally protectable interest in attacking a practice that was upheld in <u>Lisnitzer</u>, and intervention was an inappropriate vehicle to revive that challenge.

Movant also failed to show that any interest she shared with Plaintiff would have been impaired if intervention was denied.  The <u>stare</u> <u>decisis</u> effect of a decision against Plaintiff would have been slight at best.  See <u>In re Penn Cent. Com. Paper Litig.</u>, 62 F.R.D. 341, 347 (S.D.N.Y. 1974), <u>aff'd sub nom.</u> <u>Shulman v. Goldman, Sachs, & Co.</u>, 515 F.2d 505 (2d Cir. 1975) ("While it is true that a decision of one district court may be of some persuasive value in another, a holding that this constitutes an interest sufficient to justify intervention would expand the scope of Rule 24(a)(2) to such an extent that the interest requirement would essentially be read out of the rule."). Moreover, unlike <u>N.Y. Public Int. Rsch. Group, Inc. v. Regents</u>, 516 F.2d 350 (2d Cir. 1975), Plaintiff does not seek to enjoin the enforcement of a state regulation.  516 F.2d at 351.  A decision by this Court dismissing the Complaint without a ruling on the merits, as Defendants argue, would not have hindered Movant from bringing a constitutional or statutory challenge related to her own fair hearing.  See <u>In re Ivan F. Boesky Sec. Litig.</u>, 129 F.R.D. 89, 95 (S.D.N.Y. 1990) (finding no impairment of interest by <u>stare</u> <u>decisis</u> principles "given the preliminary procedural nature" of an earlier ruling).[18]  Therefore, the Court would have denied intervention as of right.

---

[18]     To the extent Plaintiff seeks injunctive relief on behalf of a class of Medicaid appellants—of which Movant claimed to be a member, <u>see</u> Plaintiff's Br. at 11—any decision adverse to the class would affect Movant, regardless of whether she intervened as a named plaintiff.  <u>See</u> <u>Cooper v. Fed. Reserve Bank of Richmond</u>, 467 U.S. 867, 874 (1984) (judgment in class action has preclusive effect on subsequent litigation by class members).  In those circumstances, Movant's "ability to protect [her] interest will not be impaired or impeded <u>because</u> [she] is denied intervention in this case."  <u>MasterCard Int'l Inc.</u>, 471 F.3d at 390 (emphasis in original).

d)     *Permissive Intervention Would Be Futile.*

Finally, the Court would have exercised its discretion to deny Movant's request for permissive intervention under Rule 24(b) because it would have been futile.  The "[f]utility of a proposed intervention … is reason to deny such a motion." New York Life Ins. Co. v. Singh, 2017 WL 10187670, at *7 (E.D.N.Y. Mar. 8, 2017) (citing United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 855 (2d Cir. 1998) (collecting cases)).  Like a motion to amend a pleading under Federal Rule of Civil Procedure 15, a motion to intervene under Rule 24 will be denied on grounds of "legal futility." Ceribelli v. Elghanayan, 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994); see also Floyd v. City of N.Y., 302 F.R.D. 69, 116 (S.D.N.Y. 2014), aff'd in part, appeal dismissed in part, 770 F.3d 1051 (2d Cir. 2014).  "In determining whether the proposed intervention is futile, the court must view the application 'on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits.'" In re Merrill Lynch & Co., Research Reports Securities Litig., 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008) (quoting Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd., 840 F.2d 72, 75 (D.C. Cir. 1988)).

Intervention would have been futile because Movant, like Plaintiff, sought to enforce regulatory deadlines that were not in effect at the time she sought to intervene.  As detailed in Defendants' motion to dismiss, throughout the COVID-19 pandemic, the federal Centers for Medicare and Medicaid Services ("CMS") approved state Medicaid agencies' use of various regulatory flexibilities.  (See Defs.' Br. at 12–14.)  One such flexibility permitted states to delay taking final administrative action in Medicaid fair hearings beyond the regulatory time limits due to an "emergency beyond the agency's control."  42 C.F.R. § 431.244(f)(4)(i)(B).  On May 27, 2020, CMS concurred with Defendants that during the pendency of the federal COVID-19 Public

Health Emergency, New York may delay taking final administrative action.  (See Sbrana Decl. ¶¶ 9–11, ECF No. 25-2.)

When Movant requested an expedited fair hearing on April 28, 2022, Defendants were not required to take final administrative action within three business days.  Like Plaintiff, she had no entitlement to relief on the theory that Defendants failed to take timely administrative action.  (See Defs.' Br. at 14; see also Defs.' Opp. at 9, ECF No. 24-1.)  By interposing a new plaintiff whose Complaint suffers from an identical fatal flaw, permissive intervention would have served only to "unduly complicate and further delay the litigation."  Washington Elec. Co-op., 922 F.2d at 98; see also Greer v. Blum, 462 F. Supp. 619, 625 (S.D.N.Y. 1978) ("Surely the intervenors cannot have a claim common to one that does not exist.").  It would not have aided the "development of the underlying factual issues in the suit" or the "just and equitable adjudication of the legal questions presented."  U.S. Postal Serv., 579 F.2d at 192.  Accordingly, the Court would have declined Movant's request for permissive intervention too.

### III.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and Movant's motion to intervene is DENIED.

**SO ORDERED.**

Dated:   March 1, 2024
         Central Islip, New York

                                              /s/ JMA
                                        _____
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE